**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. STEPHEN A. VADEN, JUDGE**

```
-------------------------------------------------------------- X
NATURE'S TOUCH FROZEN FOODS (WEST)              :
INC.,                                           :
                                                :
        Plaintiff,                              :
                                                :
        v.                                      :        No. 20-cv-00131
                                                :
UNITED STATES,                                  :
                                                :
        Defendant.                              :
-------------------------------------------------------------- X
```

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

NEVILLE PETERSON LLP

John M. Peterson
Richard F. O'Neill
Patrick B. Klein
One Exchange Plaza
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

Dated:  April 18, 2022

## TABLE OF CONTENTS

TABLE OF CONTENTS..............................................................................................i

TABLE OF AUTHORITIES ......................................................................................ii

SUMMARY OF ARGUMENT ..................................................................................2

STATEMENT OF FACTS ..........................................................................................4

I.      Plaintiff's Subject Entries, Protest Filing, Protest Denial, Commencement of 28 U.S.C.
        § 1581(a) Action. ..........................................................................................6

II.     Relevant Tariff Provisions ............................................................................7

STANDARD OF REVIEW ........................................................................................8

ARGUMENT ...............................................................................................................9

I.      The Frozen Fruit Mixtures are Not Properly Classified in Heading 0811, HTSUS. ..........9

II.     The HTSUS Contains Specific Classifications for Fruit or Vegetable Mixtures in
        Headings Other Than 0811. .........................................................................13

III.    Statistical Subheading 0811.90.8085, HTSUS Should Not be Considered in This
        Court's GRI 1 Analysis................................................................................15

I.      The Frozen Fruit Mixtures Fall Within the Plain Language of Heading 2106. ...............16

II.     The Goods Should Not be Classified Pursuant to GRI 3(b) or (c). ...............21

III.    The Subject Mixtures Qualify for Duty-Free Entry as NAFTA "Originating."...............23

CONCLUSION..........................................................................................................24

## **TABLE OF AUTHORITIES**

**Cases**

*Airflow Tech., Inc. v. United States*, 35 C.I.T. 1540 (2011) ...................................................... 3

*Amcor Flexibles Kreuzlingen AG v. United States*, 2022 Ct. Intl. Trade LEXIS 15 (2022) .......... 9

*Amoco Oil Co. v. United States*, 749 F.2d 1576, (Fed. Cir. 1984) ............................................. 14

*Arbor Foods, Inc. v. United States*, 30 C.I.T. 670 (2006)......................................................... 18

*BASF Corp. v. United States*, 482 F.3d 1324 (Fed. Cir. 2007)..................................................... 3

*Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363 (Fed. Cir. 1998) ................................. 8, 9

*Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, (Fed. Cir. 1999).............................................. 10

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .......................................................................... 8

*Chemtall, Inc. v. United States*, 878 F.3d 1012 (Fed. Cir. 2017)................................................. 15

*Chevron Chem. Co. v. United States*, 59 F. Supp. 2d 1361 (Ct. Int'l Tr. 1999) ............................ 9

*Cummins Inc. v. United States*, 454 F.3d 1361 (Fed. Cir. 2006) .................................................. 9

*Drygel Inc. v. United States,* 541 F.3d 1129 (Fed. Cir. 2007) .................................................... 17

*Franklin v. United States*, 289 F.34 753 (Fed. Cir. 2002). ........................................................ 18

*Home Depot U.S.A., Inc. v. United States*, 915 F.3d 1374 (Fed Cir. 2019)................................ 21

*Jarvis Clark Co. v. United States*, 733 F.2d 873 (Fed. Cir. 1984)................................................ 8

*Jewelpak Corp. v. United States*, 24 C.I.T. 249 (2000) ............................................................ 12

*La Crosse Technology, Ltd. v. United States*, 723 F.3d 1353 (Fed. Cir. 2013). .......................... 16

*LeMans Corp. v. United States,* 660 F.3d. 1311 (Fed. Cir. 2011). ............................................. 22

*Matsushita Elecs. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ................................. 9

*May Food Mfg. v. United States*, 33 C.I.T. 430 (2009) ............................................................ 18

*Mita Copystar America v. United States,* 160 F.3d 710 (Fed. Cir. 1998)..................................... 3

*Mondelez Global LLC. v. United States,* 253 F. Supp. 3d 1329  (Ct. Int'l Tr. 2017) .................. 18

*Nissan Motor Mfg. Corp U.S.A.  v. United States,* 693 F. Supp. 1183 (Ct. Int'l Tr. 1988)......... 14

*Orlando Food Corp. v. United States*, 140 F.3d 1437 (Fed. Cir. 1998). ............................. 10, 18

*Otter Products LLC v. United States*, 70 F. Supp 3d 1281 (Ct. Int'l Tr. 2015)............................ 16

*Pillowtex Corp. v. United States*, 171 F.3d 1370 (Fed. Cir. 1999)......................................... 9, 16

*Porsche Motorsport N. Am., Inc. v. United States*, 2021 Ct. Intl. Trade LEXIS 178 (2021) ....... 12

*Processed Plastic Co. v. United States*, 29 C.I.T. 1129 (2005)..................................................... 8

*Processed Plastic Co. v. United States*, 473 F.3d 1164 (Fed. Cir. 2006) .................................... 8

*Pustet & Co., v. United States*, 13 Ct. Cust. 530 (1926)........................................................... 14

*Quong Yuen Shing Co. v. United States*, 31 C.C.P.A. 43 (1943).............................................. 14

*R.T. Food, Inc. v. United States*, 36 C.I.T. 1637 (2012) ........................................................... 16

*Sabritas v. United States*, 22 C.I.T. 59, 67 (1998).................................................................... 18

*Simon Mktg. v. United States*, 29 C.I.T. 1111 (2005) ................................................................. 8

*Standard Chlorine Chemical Co. v. United States*, 13 C.I.T. 198 (1989) ............................. 12, 15

*Stone & Downer Co. v. United States,* 17 C.C.P.A. 34 (1929)................................................... 19

*Texport Petroleum Inc. v. United States* 185 F.3d 1291 (Fed. Cir. 1999) .................................. 19

*Third Nat'l Bank in Nashville v. Impac Ltd.*, 432 U.S. 312 (1977) .......................................... 12

*U.S.R. Optonix Inc. v. United States*, 29 C.I.T. 229 (2005)...................................................... 15

*United States v. Pan Pac. Textile Group Inc.*, 27 C.I.T. 925 (2003) ............................................ 9

*Universal Electronics Inc. v. United States*, 112. F.3d 488 (Fed. Cir. 1997) ............................... 8

**Statutes**

19 U.S.C. § 3004 ..................................................................................................... 10

28 U.S.C. § 2640 ....................................................................................................... 8

**Other Authorities**

Explanatory Notes to Heading 2106, HTSUS .......................................................... 17

General Rule of Interpretation 1, HTSUS ...................................................... 2, 3, 17

General Rules of Interpretation 3, HTSUS ....................................................... passim

*New York Customs Ruling J88542 of September 8, 2003* ......................................... 23

*New York Customs Ruling N061157 of May 26, 2009* ............................................ 22

*New York Customs Ruling N196616 of January 6, 2012* ......................................... 22

United States Note 12(t), HTSUS ............................................................................ 24

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. STEPHEN A. VADEN, JUDGE

```
------------------------------------------------------------------  X
NATURE'S TOUCH FROZEN FOODS (WEST)           :
INC.,                                        :
                                             :
         Plaintiff,                          :
                                             :
         v.                                  :              No. 20-cv-00131
                                             :
UNITED STATES,                               :
                                             :
         Defendant.                          :
------------------------------------------------------------------  X
```

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

In accordance with Rule 56 of the Rules of the United States Court of International Trade ("USCIT R."), plaintiff, Nature's Touch Frozen Foods (West) Inc. ("Nature's Touch" or "Plaintiff"), respectfully moves this Court for an order granting summary judgment in its favor, and awarding the relief sought in the Complaint. *See* ECF No. 5. Specifically, Plaintiff submits that Defendant, United States, though the United States Customs and Border Protection ("CBP or Customs"), improperly classified Plaintiff's imported frozen fruit mixtures in liquidation under Heading 0811 of the Harmonized Tariff Schedule of the United States ("HTSUS"), which provides for "Fruit and nuts, uncooked or cooked by steaming or boiling in water, frozen, whether or not containing added sugar or other sweetening matter." Plaintiff's fourteen (14) frozen fruit mixtures were classified by CBP in liquidation under various subheadings of the tariff—*e.g.*, 0811.90.10, HTSUS ("Bananas and plantains,"), dutiable at 3.4% *ad valorem*; 0811.90.52, HTSUS ("Mangoes"), dutiable at 10.9% *ad valorem*; and 0811.90.80, HTSUS ("Other" fruits), dutiable at 14.5% *ad valorem*.

Plaintiff seeks a summary judgment determination that all fourteen of the subject frozen fruit mixtures ("the Subject Merchandise")—which are imported into the United States directly

from Canada—are properly classified under subheading 2106.90.98, HTSUS, as "Food preparations not elsewhere specified or included: Other: Other"; and when so classified, the subject merchandise is eligible for duty free treatment under the North American Free Trade Agreement ("NAFTA").

## SUMMARY OF ARGUMENT

The issue presented in this case is the proper classification of imported mixtures of frozen fruits according to the HTSUS – and the proper method for classifying such mixtures. General Rule of Interpretation 1 to the HTSUS indicates that "for legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter notes" and, "provided such headings or notes do not otherwise require," according to the subsequent General Rules of Interpretation ("GRI").

The HTSUS contains a number of subheadings which specifically provide for "mixtures" of vegetables or fruits, allowing such mixtures to be classified using GRI 1.[1] However, in the case of frozen fruits, no provision for "mixtures" exists. It appears that, in classifying mixtures of frozen fruits, Customs has instead turned to General Rules of Interpretation 3(b) and (c) to the HTSUS,

---

[1] *See, e.g.,* subheading 0710.90, HTSUS, which provides for "Mixtures of [fresh] vegetables" and which precedes eight-digit tariff rate headings which provide for "Mixtures of pea pods and water chestnuts, other than Chinese water chestnuts" (0710.90.11), and "other" mixtures (0710.90.91); 0711.90, providing for "Other [preserved] vegetables"; mixtures of vegetables, and tariff item 0711.90.65 ("Other vegetables; mixtures of vegetables"); 0711.90, providing for "Other [dried] vegetables; mixtures of vegetables" and tariff item 0712.90.85 ("Other vegetables; mixtures of vegetables"); 0714.90 providing for "Frozen [vegetables], including tariff items 0714.90.40 (Mixtures of pea pods and Chinese water chestnuts"); 0714.90.42 ("Other mixtures of Chinese water chestnuts"); 0812.90.10 ("Fruit & nuts, provisionally preserved or prepared; Mixtures of fruits"); Heading 0813 ("Fruit, dried, other than that of headings 0801 to 0806; mixtures of nuts or dried fruits of this chapter: subheading 0813.50 ("Mixtures of nuts or dried fruits of this chapter); subheading 2004.90 ("Other vegetables prepared or preserved otherwise than by vinegar or acetic acid, frozen, other than products of heading 2006: Other vegetables and mixtures of vegetables"); subheading 2004.90 ("Other vegetables prepared or preserved otherwise than by vinegar or acetic acid, not frozen, other than products of heading 2006: Other vegetables prepared or preserved otherwise than by vinegar or acetic acid, not frozen, other than products of heading 2006); subheading 2006.00.50  ("Vegetables, fruit, nuts, fruit-peel and other parts of plants preserved by sugar (drained, glaced or crystallized):  Other, including mixtures: Mixtures"); subheading 2008.19 ("Fruit, nuts and other edible parts of plants, otherwise prepared or preserved, whether or not containing added sugar or other sweetening matter or spirit, not elsewhere specified or included: Other, including mixtures").

classifying them as if they consisted solely of the single component which imparts their "essential character" (GRI 3(b)) or, if no "essential character" component can be determined, classifying the mixtures under the component classification which occurs last in numerical order in the tariff (GRI 3(c)).

"When an imported item is classifiable based on application of GRI 1, recourse to the subsequent GRIs and the ARIs is unnecessary and inappropriate." *Airflow Tech., Inc. v. United States*, 35 C.I.T. 1540, 1546 (2011), citing *BASF Corp. v. United States*, 482 F.3d 1324, 1325-26 (Fed. Cir. 2007). Only if the headings and Section and Chapter Notes do not determine classification does one look to the subordinate GRIs. See *Mita Copystar America v. United States,* 160 F.3d 710, 712 (Fed. Cir. 1998).

In this regard, while the drafters of the HTSUS did not create a specific provision covering mixtures of frozen fruits, there is a provision of the tariff under which the imported products which are the subject of this action may be classified using GRI 1. Specifically, subheading 2106.90.98, HTSUS provides for "Food preparations not elsewhere specified or included: Other: Other." Plaintiff contends that this provision describes the frozen fruit mixtures at bar, and that the subject merchandise should be classified thereunder. There is no need – indeed, it is inappropriate – to attempt to classify frozen fruit mixtures by resort to GRIs 3(b) or 3(c).

Once classification under subheading 2106.90.98, HTSUS is established, it is evident that the imported mixtures all satisfy the tariff-shift rules of origin to be considered as "originating" goods for purposes of NAFTA.

## STATEMENT OF FACTS

As required by USCIT R. 56.3, a Statement of Material Facts Not in Dispute has been submitted herewith.[2] The essential facts recited in that statement are summarized herein.

The merchandise which is the subject of this action consists of various imported frozen fruit mixtures, packaged in distinct proportions according to specific recipes, and package for retail sale. There are fourteen (14) frozen fruit mixtures at issue in this case. The specific compositions of the frozen fruit mixtures can be found at ¶¶ 11-24 of Plaintiff's Rule 56.3 Statement of Material Facts Not in Dispute.

Plaintiff's creation of the imported frozen fruit preparations is detailed in Plaintiff's Rule 56.3 Statement of Material Facts Not in Dispute. The various frozen fruits contained in the subject mixtures are derived from fresh fruits grown and harvested in numerous countries, including the United States and Canada, as well as certain countries which are not signatories to NAFTA or its successor the United States-Mexico-Canada Agreement ("USMCA").[3]

Most of the fruits contained in the subject mixtures arrive at Nature's Touch's Canadian facility already frozen and packed in bulk. Some of the frozen fruits may be whole (*e.g.*, berries); while others are in small pieces or otherwise reduced in size (*e.g.,* chopped pineapples or melons) prior to receipt at the Abbotsford, B.C. facility. Some fruits grown in the United States and Canada arrive at Nature's Touch's plant in a fresh, non-frozen, natural state,[4] and these are frozen at the Nature's Touch facility after either being imported into Canada from the United States, or after

---

[2] Citations and support for the facts asserted herein are specifically included as exhibits to Plaintiff's Rule 56.3 Statement of Material Facts Not in Dispute.

[3] The specific origins of the frozen fruit mixtures is identified at ¶¶ 11-24 of Plaintiff's Rule 56.3 Statement of Material Facts Not in Dispute.

[4] For example, the regions of Canada and Washington State near Nature's Touch's Abbotsford B.C. facility grow significant amounts of blueberries. Nature's Touch receives most of the blueberries it uses in its mixtures from those areas in a fresh, non-frozen form.

transiting Canada and arriving at Nature's Touch facility. Upon arrival at Plaintiff's Abbotsford plant, the fresh fruits are frozen while transiting a conveyor belt in a freezing tunnel—which requires only 1-2 minutes to freeze the fruit—after being cleaned and then sorted with a laser.

Nature's Touch then combines the various frozen fruits into specific mixtures, pursuant to recipes prepared by the company's Innovation Team, or by its customers.

To prepare the mixtures, frozen fruits housed in 30-pound crates are dumped into large hoppers, which typically hold roughly 1,000 pounds of material; and from these onto scales attached to the company's specialized filling machinery. The various fruits forming the mixtures are then emptied in precise quantities[5] from their respective hoppers into plastic retail bags. The printed bags are then sealed, before being laser printed with lot numbers for traceability, and prepared for importation and shipment directly to United States customers or for very short storage at refrigerated distribution facilities in the United States.

During the course of preparing the mixtures, Nature's Touch performs extensive quality control and phytosanitary testing. Individual fruits, and fruit pieces, are required to be of specific size, ripeness, and quality (*e.g.,* free of bruises and signs of deterioration). Detecting particular bacterial or other conditions likely to affect the particular fruits in the mixture is key. Packaged mixtures are then tested to ensure they contain no metals or foreign materials. The bagged product mixtures are then shipped to a third-party warehouse in the U.S. From this third-party warehouse, the products are distributed to various supermarkets across the United States, where they are purchased by the end customers for consumption. The specific details of the production process are included in Plaintiff's Rule 56.3 Statement of Material Facts Not in Dispute, at ¶¶ 36-44.

---

[5] Plaintiff's Rule 56.3 Statement of Material Facts Not in Dispute discusses the tight and exacting measurement tolerances for filling the retail bags with the specific fruit mixtures. *See id.* at ¶ 7.

Details concerning Plaintiff's research and development of its specific mixture and apportioning of individual fruits within a given recipe mix, as well as the mixtures' post-importation uses, is included in Plaintiff's Rule 56.3 Statement of Material Facts Not in Dispute, at ¶¶ 25-35.

**I.      Plaintiff's Subject Entries, Protest Filing, Protest Denial, Commencement of 28 U.S.C. § 1581(a) Action.**

Between June 2018 and November 2018 Plaintiff imported into the United States the entries subject to this action. The entries liquidated between May and October 2019. CBP improperly classified Plaintiff's imported frozen fruit mixtures in liquidation under various subheadings of Heading 0811 of the Harmonized Tariff Schedule of the United States ("HTSUS"). Heading 0811 provides for "Fruit and nuts, uncooked or cooked by steaming or boiling in water, frozen, whether or not containing added sugar or other sweetening matter." CBP classified the fourteen frozen fruit mixtures in liquidation under various subheadings of the tariff—*e.g.,* 0811.90.10, HTSUS ("Bananas and plantains,"), dutiable at 3.4% *ad valorem*; 0811.90.52, HTSUS ("Mangoes"), dutiable at 10.9% *ad valorem*; and 0811.90.80, HTSUS ("Other" fruits), dutiable at 14.5% *ad valorem*.

Plaintiff filed timely protests with CBP asserting that all fourteen of the subject frozen fruit mixtures are properly classified under subheading 2106.90.98, HTSUS, as "Food preparations not elsewhere specified or included: Other: Other"; and when so classified, the goods are NAFTA-eligible and duty free.

Plaintiff's protests were denied on July 4, 2020.

Plaintiff commenced this action by the filing of a summons on July 15, 2020 (ECF 1) and Complaint on that same day (ECF 5).

## II.    Relevant Tariff Provisions

### Harmonized Tariff Schedule of the United States ("HTSUS")

### General Rules of Interpretation

Classification of goods in the tariff schedule shall be governed by the following principles:

[1]The table of contents, alphabetical index, and titles of sections, chapters and sub-chapters are provided for ease of reference only; for legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter notes and, provided such headings or notes do not otherwise require, according to the following provisions:

***

[3] When, by application of rule 2(b) or for any other reason, goods are, prima facie, classifiable under two or more headings, classification shall be effected as follows:

(a) The heading which provides the most specific description shall be preferred to headings providing a more general description. However, when two or more headings each refer to part only of the materials or substances contained in mixed or composite goods or to part only of the items in a set put up for retail sale, those headings are to be regarded as equally specific in relation to those goods, even if one of them gives a more complete or precise description of the goods.

(b) Mixtures, composite goods consisting of different materials or made up of different components, and goods put up in sets for retail sale, which cannot be classified by reference to 3(a), shall be classified as if they consisted of the material or component which gives them their essential character, insofar as this criterion is applicable.

(c) When goods cannot be classified by reference to 3(a) or 3(b), they shall be classified under the heading which occurs last in numerical order among those which equally merit consideration.

| Heading/ Subheading | Stat. Suffix | Article Description |
|---|---|---|
| 0811 | | Fruit and nuts, uncooked or cooked by steaming or boiling in water, frozen, whether or not containing added sugar or other sweetening matter: |
| 0811.90 | | Other |
| 0811.90.10 | | Bananas and plantains |

| 0811.90.52 | | Mangoes |
|---|---|---|
| 0811.90.80 | | Other |
| | * | * | * |
| **Heading/ Subheading** | **Stat. Suffix** | **Article Description** |
| 2106 | | Food preparations not elsewhere specified or included: |
| 2106.90 | | Other |
| 2106.90.98 | | Other |

## STANDARD OF REVIEW

Customs' classification is subject to *de novo* review pursuant to 28 U.S.C. § 2640. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See* USCIT R. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

This Court may resolve a classification issue by means of summary judgment. *See Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363, 1365 (Fed. Cir. 1998) (reviewing CBP's classification decision *de novo* on the record made before it, 28 U.S.C. § 2640(a)(1)); *see also, Processed Plastic Co. v. United States*, 29 C.I.T. 1129, 1130 n.4 (2005), *aff'd*, 473 F.3d 1164 (Fed. Cir. 2006). Where there is no genuine dispute as to any material fact, on a motion for summary judgment, CBP will not receive the benefit of a presumption of correctness. *Id*. at 1131, n.5; *see also Universal Electronics Inc. v. United States*, 112. F.3d 488, 491 (Fed. Cir. 1997).

As with all classification issues, fundamentally "[t]he court's duty is to find the *correct* result," *Jarvis Clark Co. v. United States*, 733 F.2d 873, 878 (Fed. Cir. 1984) (emphasis in original), and thus, the ultimate question is "whether the merchandise is properly classified under one or another classification heading." *Simon Mktg. v. United States*, 29 C.I.T. 1111, 1117 (2005) (citation omitted).

Determining the correct classification of merchandise entails a two-step process where the court first construes the relevant classification headings—a purely legal question—and second, the court determines under which of the properly construed tariff terms the merchandise at issue falls. *Bausch & Lomb*, 148 F.3d at 1365; *Pillowtex Corp. v. United States*, 171 F.3d 1370, 1373 (Fed. Cir. 1999). Where the nature of the merchandise is not at issue, the question collapses entirely into a question of law ripe for disposition on summary judgment. *Cummins Inc. v. United States*, 454 F.3d 1361, 1363 (Fed. Cir. 2006) (citations omitted).

In determining whether a genuine issue of fact exists, the court reviews the evidence submitted and draws all inferences against the nonmoving party. *United States v. Pan Pac. Textile Group Inc.*, 27 C.I.T. 925, 927 (2003); *see also, Matsushita Elecs. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). But even if there are "differences in the factual positions advanced by each party," summary judgment remains appropriate unless there are "genuine issues of material fact in dispute." *Chevron Chem. Co. v. United States*, 59 F. Supp. 2d 1361, 1363 (Ct. Int'l Tr. 1999).

## **ARGUMENT**

## I.     **The Frozen Fruit Mixtures are Not Properly Classified in Heading 0811, HTSUS.**

The imported fruit mixtures are not classifiable in Heading 0811, HTSUS, and CBP erred in so classifying them in liquidation under that Heading.

"To determine the meaning of an HTSUS provision, the court applies the GRIs in numerical order, beginning with GRI 1 and reaching subsequent GRIs if analysis under the preceding GRI does not yield proper classification of the subject merchandise." *Amcor Flexibles Kreuzlingen AG v. United States*, 2022 Ct. Intl. Trade LEXIS 15 at *4 (2022). Under GRI 1, "classification shall be determined according to the terms of the headings and any relative section

or chapter notes." "A court first construes the language of the heading, and any section or chapter notes in question." *Orlando Food Corp. v. United States*, 140 F.3d 1437, 1440 (Fed. Cir. 1998). "Absent contrary legislative intent, HTSUS terms are to be construed according to their common and commercial meanings, which are presumed to be the same." *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999). In interpreting the terms of a tariff provision "[a] court may rely upon its own understanding of the terms used and may consult lexicographic and scientific authorities, dictionaries, and other reliable information sources." *Id.*

As noted above, Heading 0811, HTSUS (which covers "frozen fruits") does not contain any language at the international (4-digit) heading level, international (6-digit) subheading level, nor national tariff-rate (8-digit) subheading level, which provide for "mixtures" of such fruits.[6] Rather, it contains a number of provisions which describe individual fruits and a provision, at subheading 0811.80, HTSUS, which provides for "other" fruits, not previously enumerated.

Application of the GRIs indicates that frozen fruit mixtures do fall within the plain meaning of Heading 0811, HTSUS. "GRI 1 … requires that goods be classified according to the language of the headings," *Orlando Food Corp. v. United States,* 140 F.3d, 1337, 1440 (Fed. Cir. 1998), and a classification analysis "begins, as it must, with the language of the headings." *Id.*  Here,

---

[6] The HTSUS consists of 4-digit headings and 6-digit headings, devised by the Brussels-based World Customs Organization ("WCO"), which all nations employing the Harmonized System ("HS") nomenclature are required to use. The United States Congress also adds 8-digit "national" tariff rate subheadings, which may further describe particular goods. The 4- 6-, and 8-digit provisions, together with the Section and Chapter Notes, General Rules of Interpretation and United States notes, **constitute the official legal text of the tariff schedule**. Indeed, 19 U.S.C. § 3004(c), provides:

(c) Status of Harmonized Tariff Schedule

(1) The following shall be considered to be statutory provisions of law for all purposes:

(A) The provisions of the Harmonized Tariff Schedule as enacted by this chapter.

(B) Each statutory amendment to the Harmonized Tariff Schedule.

(C) Each modification or change made to the Harmonized Tariff Schedule by the President under authority of law (including section 604 of the Trade Act of 1974. [19 U.S.C. 2483]).

Heading 0811, HTSUS, provides for "Fruit and nuts, uncooked or cooked by steaming or boiling in water, frozen, whether or not containing added sugar or other sweetening matter." (Emphasis added). Thereafter, the various 6-digit international, and 8-digit national tariff rate, subheadings of Heading 0811, HTSUS, describe individual fruits, or groups of specific fruits, but there is no mention of "mixtures" of frozen fruits falling in two or more different subheadings.

The structure of Heading 0811, HTSUS, may be summarized as follows:

| Heading 0811, HTSUS:<br>6 or 8 Digit Code | Covered Merchandise |
| --- | --- |
| 0811.10 | Strawberries |
| 0811.20 | Raspberries, blackberries, mulberries, loganberries, black, white or red currants and gooseberries (other than kiwi fruit) |
| 08.11.90 | Other |
| 08.11.90.10 | Bananas and plantains |
| 0811.90.20 | Blueberries |
| 0811.90.22 | Boysenberries |
| 0811.90.25 | Cashew apples, mameyes colorados, sapodillas, soursops and sweetsops |
| 0811.90.30 | Coconut meat |
| 0811.90.35 | Cranberries (*Vaccinium macrocarpum*) |
| 0811.90.40 | Papayas |
| 0811.90.50 | Pineapples |
| 0811.90.52 | Mangoes |
| 0811.90.55 | Melons |
| 0811.90.80 | Other |

Each of these tariff breakdowns include individually identified fruits. Nowhere at the 4-, 6- or 8-digit level are frozen fruit "mixtures" specified or included.[7] Frozen Fruit mixtures are simply not described by the plain meaning of the 4-digit language of Heading 0811, HTSUS, providing for "Fruit … Frozen"[8]. Under the legally binding, 4-, 6-, and 8-digit classifications, frozen fruit mixtures do not meet the plain language requirements for classification in Heading 0811, HTSUS.

Since the various subheadings of Heading 0811, HTSUS include only single fruits, "other" frozen fruits of subheading 0811.90.80, HTSUS, similarly fails to describe the instant goods. The settled rule of statutory construction, *noscitur a sociis*, provides that the meaning of a tariff terms should be judged with reference to the tariff terms which surround it. The canon holds that "words grouped 'in a list should be given related meanings.'" *Porsche Motorsport N. Am., Inc. v. United States*, 2021 Ct. Intl. Trade LEXIS 178 at *35 (2021) (citing *Third Nat'l Bank in Nashville v. Impac Ltd.*, 432 U.S. 312, 322 (1977)). In *Jewelpak Corp. v. United States*, 24 C.I.T. 249, 253 (2000) the Court used this statutory cannon to determine whether a box was properly classified as a jewelry box, reasoning:

> The items listed in subheading 4202 are all intended for reuse. Suitcases, briefcases, cigarette cases, musical instrument cases, and all the others listed therein are items which are used repeatedly. In order for the boxes at issue here to be classified as jewelry boxes in this heading, fitting with the rest of the items in the list, the boxes must be usable on a repeated basis.

*Id.* All of the subheadings falling under Heading, 0811, HTSUS, include only a single fruit in their plain text. Just as the Court did in *Jewlpak—i.e.,* applying *noscitur a sociis* to hold that a jewelry

---

[7] Statistical headings 0811.80.40, HTSUS, and 0811.80.60, HTSUS, provide for sweet and tart cherries, respectively, but these statistical enumerations are not part of the legal text of the HTSUS.

[8] Subheading 0811.20, HTSUS, provides for several types of berries, and subheading 0811.90.25, HTSUS, covers several varieties of cashew apples; however, in order for goods to be considered "mixtures" for tariff purposes, the good must consist of items which would be classifiable individually in different provisions. Standard Chlorine Chemical Co. v. United States, 13 C.I.T. 198, 201 (1989).

box must be reusable—this Court should use the statutory cannon and examine the word "other" in Subheading 0811.90.80, HTSUS, as only encompassing a signal fruit not previously or specifically mentioned.

## II.   The HTSUS Contains Specific Classifications for Fruit or Vegetable Mixtures in Headings Other Than 0811.

The canon *noscitur a sociis* can also be used in conjunction with the plain language of the provisions contained in Chapters 7 and 8 of the HTSUS. Where the HTSUS intends to include mixtures of frozen food in tariff classifications, the plain language of the headings clearly provides for mixtures. For example, subheading 0710.90, HTSUS, specifically identifies mixtures of frozen vegetables, providing: "Vegetables (uncooked or cooked by steaming or boiling in water), frozen: **Mixtures of vegetables**:[.]" (Emphasis added). The tariff includes an indentation beneath the subheading, providing for two additional 8-digit "national tariff rate-level" classifications: (i) subheading 0710.90.11, HTSUS, which provides for "**Mixtures** of pea pods and water chestnuts, other than Chinese water chestnuts" (emphasis added); and (ii) subheading 0710.90.91, HTSUS, which provides for "Other" mixtures (by virtue of the language in the superior subheading).

The Chapter 7 frozen vegetable provisions include two of the same qualifications as the frozen fruit provision—*i.e.,* requiring that the fruit or vegetable may be "uncooked or cooked by steaming or boiling in water" or frozen. The Chapter 8 fruit provisions provide for one additional qualification—*i.e.,* "whether or not containing added sugar or other sweetening matter[.]" Thus, the drafters of the tariff intentionally included much of the same language in Chapters 7 and 8 of the HTSUS in the subheadings dealing with frozen fruit and vegetables (as detailed in footnote 1, *supra*). It logically follows that the differences between the chapters were also intentionally

13

included by the drafters who included a frozen mixed vegetable provision but did not include a frozen mixed fruit provision in Heading 0811.

As amply demonstrated in footnote 1, *supra,* where Congress wishes to provide for the classification of vegetable and fruit "mixtures" in one of the headings of Chapters 7, 8 or 20, HTSUS, it knows precisely how to do so. It did not create a heading, subheading or national-level tariff rate subheading, providing for "mixtures" of frozen fruits.

Also germane to the instant discussion is the canon of statutory construction "*expressio unius est exclusio alterius*" (*i.e.,* the expression of one thing implies the exclusion of all others). Where, in constructing Heading 0811, HTSUS, which covers frozen fruits, the drafters of the tariff expressly provided for individual frozen fruits, while declining to create a provision for "mixtures" of such fruits. This omission must be deemed intentional, since the drafters obviously did see fit to create provisions for "mixtures" of fruits and vegetables in various other places in Chapters 7, 8 and 20, HTSUS. Where Congress specifies the things which fall within the scope of an enactment, and fails to include others, the exclusion must be presumed intentional and respected. *See Pustet & Co., v. United States*, 13 Ct. Cust. 530, 532 (1926); see also *Nissan Motor Mfg. Corp U.S.A. v. United States,* 693 F. Supp. 1183, 1186 (Ct. Int'l Tr. 1988), aff'd, 884 F.2d 1375 (Fed. Cir. 1989).

There is no possible reading of the tariff which would permit classification of frozen fruit mixtures in any of the subheadings of Chapter 8, HTSUS, based on GRI 1.

Historically, whenever Congress has wanted a tariff provision to embrace "mixtures," it has expressly so provided by including the word "mixtures" in the tariff heading or provision. *See, e.g., Amoco Oil Co. v. United States*, 749 F.2d 1576, 1581-1582 (Fed. Cir. 1984); *Quong Yuen Shing Co. v. United States*, 31 C.C.P.A. 43, 48 (1943); *Standard Chlorine Chemical Co. v. United*

*States*, 13 C.I.T. 198, 201 (1989); *see also U.S.R. Optonix Inc. v. United States*, 29 C.I.T. 229, 240 (2005) (Heading 2846, HTSUS, in a chapter that normally covered only separately-identified chemical compounds, specified that certain *mixtures* were classified thereunder). We have found no instance where "mixtures" were found to be included by implication in a tariff provision which only names individual goods.

### III.   Statistical Subheading 0811.90.8085, HTSUS Should Not be Considered in This Court's GRI 1 Analysis.

In mid-2019, the United States International Trade Commission ("ITC") inserted a non-statutory statistical subheading at item 0811.90.8095, HTSUS, enumerating "Frozen mixes only of combinations of strawberries, blueberries, red raspberries or blackberries." Relying on this *statistical* subheading, CBP has improperly classified certain entries of Plaintiff's berry mixtures under subheading 0811.90.80, HTSUS, and has assessed such entries with a 14.5% *ad valorem* duty.[9] As the 10-digit statistical enumeration is not part of the legal language of the tariff, this language does not convert subheading 0811.90.80, HTSUS, into a provision covering "mixtures."

That statistical subheading 0811.90.8095, HTSUS, mentions "mixes" does not transform Heading 0811, HTSUS or any subheading thereof into one covering "mixtures." It is well-established that "[t]he tenth-digit statistical suffixes … are not statutory." *Chemtall, Inc. v. United States*, 878 F.3d 1012, 1026 (Fed. Cir. 2017) (emphasis added) ("The statistical suffixes 'are not included among the appropriate references listed in GRI 1 and in the legislative history of the HTSUS.'"). The legal provisions of the HTSUS include the Section and Chapter Notes, Additional United States Notes, four-digit Headings, six-digit international subheadings and eight-digit national tariff rate subheadings. 19 U.S.C. § 3004(c).

---

[9] Plaintiff has petitioned the Section 484(f) Committee—which is chaired by the ITC and which is responsible for adding statistical subheadings to the tariff—in an effort to remove statistical subheading 0811.90.8095 from the annotated tariff; but to this date, the Committee has declined to do so.

Statistical annotations, by contrast, do not form part of the legal text of the tariff, and may not be taken into account in resolving tariff classification issues; and hence, this statistical subheading must be disregarded in determining the classification of the instant mixture. *See e.g., Pillowtex Corp. v. United States*, 171 F.3d 1374 (Fed. Cir. 1990) ("[C]lassification of merchandise should not be based upon the wording of statistical suffixes, because statistical annotations, including statistical suffixes, are not part of the legal text of the HTSUS.").

**I.**     **The Frozen Fruit Mixtures Fall Within the Plain Language of Heading 2106.**

By its plain language, Heading 2106, HTSUS, covers the fourteen different frozen fruit mixtures at issue in this action, providing for "Food preparations not elsewhere specified or included." As noted in *Otter Products LLC v. United States*, 70 F. Supp 3d 1281, 1285 (Ct. Int'l Tr. 2015), *aff'd* 834 F.3d 1369 (Fed. Cir. 2016), where "an imported article is described in whole by a single classification heading or subheading, then that single classification applies, and" the GRI's other than GRI 1 are "inoperative." *See also La Crosse Technology, Ltd. v. United States*, 723 F.3d 1353, 1358 (Fed. Cir. 2013).

To be classified "under heading 2016, HTSUS, two criteria must be met: the product must be (1) a food preparation; which is (2) not elsewhere specified or included." *R.T. Food, Inc. v. United States*, 36 C.I.T. 1637, 1644 (2012). "Heading 2106, HTSUS … is an expansive basket heading that only applies in the absence of another applicable heading." *Id.*

It is beyond question that a mixture of frozen fruits is a "food preparation." The frozen fruit mixtures are designed to be consumed as a food, have nutritional value, and are typically used as an ingredient in the making of other food products. *See* Plaintiff's Rule 56.3 Statement of Material Fact at ¶¶34-35, 45. As the frozen fruit mixtures are not specifically enumerated in any of the other provisions of subheading 2106, they are classified at the 6-digit level under subheading 2106.90,

HTSUS as "other food preparations," and at the 8-digit level, under subheading 2106.90.98, HTSUS, as "other food preparations, not elsewhere specified or included."

The Explanatory Notes to Heading 2106, HTSUS, provide that Heading 2106 covers:

(A)     Preparations for use, either directly or after processing (such as cooking, dissolving or boiling in water, milk, etc.), for human consumption.

(B)     Preparations consisting wholly or partly of foodstuffs, used in the making of beverages or food preparations for human consumption. The heading includes preparations consisting of mixtures of chemicals (organic acids, calcium salts, etc.) with foodstuffs (flour, sugar, milk powder, etc.), for incorporation in food preparations either as ingredients or to improve some of their characteristics (appearance, keeping qualities, etc.).

All of the mixtures at bar are readily recognizable as preparations "for use, either directly or after processing … for human consumption." The fruit mixtures may be removed from their retail bags, thawed and consumed directly. They also are (more frequently) processed, by cooking (for example when used to make a jam, chutney or baked good) or in other ways (being combined with water or milk and blended to make a smoothie). *See* Plaintiff's Rule 56.3 Statement of Material Fact at ¶ 45. As the frozen fruit mixtures at bar are not "elsewhere specified or included, they fall to be classified in subheading 2106.90.98. This classification occurs by operation of GRI 1.

By contrast, fruit mixtures of a kind provided for in Heading 2008, HTSUS, would not be classified in Heading 2106, HTSUS, since they are provided for elsewhere. *See e.g.*, *Drygel Inc. v. United States,* 541 F.3d 1129 (Fed. Cir. 2007) (reversing classification of certain "breath strips' as "food preparations" of HTSUS subheading 2106.90 based on determination that they were provided for in subheading 3306.90 as preparations for oral or dental hygiene).

As discussed, the first step in this classification analysis is determining whether the subject merchandise (1) is "food"; and then whether it (2) is "a preparation." Since the product consist of frozen fruit, it should be undisputed that the product is food.  "The common meaning of 'food' is that of a substance that is intended to be ingested." *Mondelez Global LLC. v. United States,* 253 F.

Supp. 3d 1329, 1335 (Ct. Int'l Tr. 2017), citing *Franklin v. United States*, 289 F.34 753, 760-761 (Fed. Cir. 2002). The "food" here consists of various types of fruit, ultimately intended for human consumption.[10]

The next term to analyze is "preparation." In *Arbor Foods, Inc. v. United States*, 30 C.I.T. 670, 677 (2006), this Court observed that:

> The Federal Circuit indicated that "[i]nherent in the term 'preparation' is the notion that the object involved is destined for a specific use. The relevant definition from *The Oxford English Dictionary* defines "preparation" as "a substance specially prepared, or made up for its appropriate use or application, *e.g.* as food or medicine, or in the arts or sciences."

*Id.* (citing *Orlando Food Corp. v. United States*, 140 F.3d at 1441 (Fed. Cir. 1998)). The subject frozen fruit mixtures are specially prepared for multiple appropriate uses and applications as food. In addition to being mixed to specific flavor templates, they are also combined for specific nutritional purposes—for example to provide antioxidants or energy to those consuming them. *See* Plaintiff's Rule 56.3 Statement of Material Fact at ¶ 35. Thus, in *Arbor Foods,* the Court found that an imported mixture consisting 98% of sugar, and 2% of gelatin, and used to make confectionery, fell within the definition of "preparation" for purposes of subheading 2106.90, HTSUS.

A *prepared* food article is not commercially interchangeable with an original raw food article. *May Food Mfg. v. United States*, 33 C.I.T. 430, 433 (2009). A "food preparation" is not classifiable in the same Heading as the raw form of the preparation if the "name, character and chemical composition are indisputably distinct from those of [the product] in … raw form." *Sabritas v. United States*, 22 C.I.T. 59, 67 (1998). "The word 'prepared,' in a tariff sense, means,

---

[10] As further evidence that the instant merchandise is "food," as required by law, all packages of the subject fruit products contain a disclosure of nutritional values.

ordinarily, that a commodity has been so processed as to be advanced in condition and made more valuable for its intended use." *Stone & Downer Co. v. United States,* 17 C.C.P.A. 34, 36 (1929).

Here, the fourteen frozen fruit mixtures at bar meet all of these tests. The fruit mixtures are not commercially interchangeable with individual frozen fruits because of the specifically developed recipes used to formulate the fruit mixtures.[11] All of the frozen fruit mixes possess a different name, character and chemical composition from any of the individual fruits in the mixture. A mixture of three frozen fruits cannot in any scenario share the same "name character and chemical composition" as any of the individual components of the mixture. Finally, the frozen fruit mixtures are advanced in condition to make them more valuable for their intended use because of their unique recipes and flavor profiles.

There is a considerable amount of "preparation" performed by Plaintiff in readying the instant fruits for mixture, packaging, and later for importation and sale to a United States customer. An apt comparison would be to a consumer who buys fresh vegetables and other ingredients to make a salad, versus a purchase of a "prepared" salad, in which the individual ingredients have been reduced in size and combined in specific proportions, according to recipe, and are ready-to-eat. For example, here, assume Plaintiff creates a product mixture that includes pineapple, mango, strawberry, and blueberry fruit and fruit pieces. The pineapple and mango ingredients would need to be reduced in size to edible, bite-sized portions. Meanwhile, inedible materials (*e.g.,* rinds and cores) must be sifted, removed, and disposed of. The strawberries would need to be examined and blended in the correct proportions to the other fruits. The blueberries would need to be examined

---

[11] In this regard, Plaintiff notes that it produces and imports retail-packaged products containing *individual* frozen fruits. A reasonable hypothetical purchaser seeking to purchase a single frozen fruit—*e.g.*, strawberries—would not accept as a substitute a mixture containing strawberries, applies, blueberries and mangoes. *See e.g.*, *Texport Petroleum Inc. v. United States* 185 F.3d 1291, 1295 (Fed. Cir. 1999) (discussing the concept of "commercial interchangeability" in connection with drawback substitution).

and quick-frozen. The four ingredients would eventually need to be cleaned and combined in proportions that meet a given recipe's exacting requirements. For a consumer to prepare such a mixture from individually purchased fresh fruits would entail considerable work and processing. Hence, a considerable amount of "preparation" is performed by Plaintiff.

At deposition, the Government asked Plaintiff's designated Rule 30(b)(6) witness, Christos Panagopoulos, Plaintiff's Vice President of Supply Chain, whether, with respect to a particular imported mixture, "[L]ooking at the organic mixed berry, do you want  strawberry--the taste of the strawberry to dominate in that mixture, or do you want it to all blend together?" Mr. Panagopoulos answered:

> [Y]ou're interested in is how it tastes … at the end of all of this . … [W]hen you're consuming all four of them [fruits] together, what taste do you want? And in this case, the better result was to have 35 percent strawberry so it's -- you're not looking at it in terms of individual fruit only. You're looking at it -- you know, when we put it  in a smoothie or we put it in our oatmeal and we take a scoop -- you know, what do we want it to taste like.

*See* Plaintiff's Rule 56.3 Statement, Exhibit A at pp. 156-157. This prompted the Government to ask "So you're looking at how each individual fruit contributes to the whole?" To which Mr. Panagopoulos responded "Yeah, that's right. So if you put too much strawberry and it tastes way too sweet, as an example, and you don't want that, you'd reduce the strawberry and you'd increase something else." *Id.* at pp. 157. This testimony is evidence that the frozen fruit mixes are not commercially interchangeable with the individual frozen fruits and that they are indisputably distinct articles from the product in its raw form. Plaintiff works tirelessly and constantly, internally, and with customers, to develop the best tasting mixtures of frozen fruits. *See* Plaintiff's Rule 56.3 Statement of Material Fact at ¶¶25-35.

There is an entire specialized Innovation Team within the Plaintiff Company solely dedicated to developing the best tasting mixtures of frozen fruits. Members of this team "have

university degrees in food science, food safety or regulatory affairs." *See* Plaintiff's Rule 56.3 Statement of Material Fact at ¶27 .Experience with how fruits taste, and perhaps complement or detract from one another, is also a major factor for members of this team. The team operates in conjunction with private label brands to develop recipes of fruit mixtures. The team utilizes product development kitchens to develop the mixes and to sample various recipes to see how they will perform in taste tests. Certain recipes will be more commonly used in various cooking applications. With all of the background work that goes into making a specific flavor profile for each of the frozen mixes at issue, it is indisputable that the "whole mixture" is different from any of individual fruits contained therein. A customer who buys a frozen fruit mix at a store has in mind the full flavor profile of the mix, not the flavor of any individual fruit, and each product mixture is therefore not commercially interchangeable with its individual fruit components.

Thus frozen fruit mixes are prima facie classified under subheading 2016.90.98, HTSUS, by application of GRI 1.

## II.     The Goods Should Not be Classified Pursuant to GRI 3(b) or (c).

While CBP has not explained the basis for its classification in liquidation of Plaintiff's imported frozen fruit mixtures, it seems evident that the agency has done so by application of GRI 3(b) and (c).

GRI 3 "provides that when goods are *prima facie* classifiable under two or more headings, classification shall be effected according to the three subsections of GRI 3: GRI 3(a), 3(b), and 3(c)." *Home Depot U.S.A., Inc. v. United States*, 915 F.3d 1374, 1380 (Fed Cir. 2019). GRI 3(b) provides that "Mixtures, composite goods consisting of different materials or made up of different components, and goods put up in sets for retail sale, which cannot be classified by reference to 3(a), shall be classified as if they consisted of the material or component which gives

them their essential character, insofar as this criterion is applicable." GRI 3(c) provides that '[w]hen goods cannot be classified by reference to 3(a) or 3(b), they shall be classified under the heading which occurs last in numerical order [.]"

However, it is well-established that if GRI 1 resolves the classification of a product, the Court is not to look to other GRIs. *LeMans Corp. v. United States,* 660 F.3d. 1311, 1316 (Fed. Cir. 2011). Accordingly, classifications which CBP derived using GRI 3 are incorrect as a matter of law because the classification of these mixtures is properly resolved by application of GRI 1, which classifies the goods under subheading 2016.90.98, HTSUS.

It appears that, in classifying the fruit mixtures at bar, CBP resorted to the use of GRI 3(b) or 3(c). Where a mixture contained an ingredient which accounted for over 40% of the mixture by weight, CBP appears to have deemed that ingredient the "essential character" component and classified the mixture under the subheading which describes said component, pursuant to GRI 3(b). This appears to be evident in the case of the frozen strawberry banana mix and the blueberry blitz frozen mixture. On the other hand, where no single component accounted for over 40% of the mixture, CBP appears to have selected the provision occurring last in numerical order, pursuant to GRI 3(c).[12] In addition, it appears that CBP erred in classifying the *Organic Triple Berry with Kale*

---

[12] In past rulings, CBP has not articulated the basis for its classification of frozen fruit mixtures, but appears to be following GRIs 3(b) and (c).

In *New York Customs Ruling N061157 of May 26, 2009,* CBP classified a mixture consisting 50% by weight of mangoes, 30% of blueberries and 20% of raspberries, under the subheading 0811.90.52, HTSUS, provisions for "mangoes." While CBP did not invoke GRI 3(b), it appears to have concluded that a component accounting for 50% of the mixture imparted its "essential character." In the same ruling, CBP classified a mixture containing 40% of strawberries, 30% of mangoes and 30% of peaches under the subheading 0811.90.80, HTSUS, provision for "other" fruits. Although strawberries predominated by weight in the mixture, CBP apparently did not consider 40% to be sufficient to impart "essential character." Because the mixture contained a fruit (peaches) not specifically enumerated in the earlier Headings, which had it been imported separately would have been classified in subheading 0811.90.80, HTSUS, it appears that CBP may perhaps have been applying GRI 3(c).

In *New York Customs Ruling N196616 of January 6, 2012,* CBP considered a mixture of 45% mango, 35% lambutan and 20% litchi. Apparently not considering the mangoes to impart the "essential character," CBP classified the product is subheading 0811.90.80. The agency's rationale was left unstated, but this too appears to be an application of GRI 3(c). *Id.; see also New York Customs Ruling R03540 of April 11, 2006.*

mix by applying GRI 3. This particular mixture was liquidated under subheading, 0811.90.5200, HTSUS, which provides for *mangos* with a duty rate of 10.9% *ad valorem*. Even if one accepted that the classification of these mixtures is guided by GRI 3 it would follow that this mixture should have been classified under Subheading 0811.90.20, HTSUS provision for blueberries, duty free. To the extent CBP classified the subject merchandise pursuant to GRIs 3(b) or 3(c), this was erroneous since the goods are properly classified in subheading 2106.90.98, HTSUS, by operation of GRI 1.

### III.    The Subject Mixtures Qualify for Duty-Free Entry as NAFTA "Originating."

To the extent the imported frozen fruit mixtures are properly classified under subheading 2106.90.98, HTSUS, they all also qualify as "originating" articles of Canada pursuant to NAFTA.[13]

All of the constituent fruits utilized in producing the mixtures are classified in Chapter 8, HTSUS. All of the constituent ingredients imported into Canada in frozen condition would have been classifiable under Heading 0811, HTSUS. Fresh blueberries from the United States and Canada would be classifiable under subheading 0810.40.00, HTSUS. Even assuming, *arguendo*, that all of these ingredients are treated as "non-originating"[14], the mixtures meet the requirements for being NAFTA "originating" goods.

---

In *New York Customs Ruling J88542 of September 8, 2003*, CBP considered some frozen fruit mixtures containing only fruits specifically mentioned in tariff headings. One mixture, consisting 33% of raspberries, 33% of blueberries, and 33% of blackberries, was classified in the subheading 0811.90.2028, HTSUS—a provision for blueberries, duty free. It appears that CBP employed GRI 3(c), or its principles, in reaching its determination. *Id.*; *see also New York Customs Ruling N216041 of June 1, 2012.*

[13] NAFTA was in force at all relevant times.

[14] United States and Canadian-origin blueberries would undoubtedly be "originating" and wholly grown or obtained in the territory of a NAFTA party, but their status as "originating" or "non-originating is not germane to the NAFTA analysis here.

The NAFTA preferential rule of origin for goods of Heading 2106, HTSUS, as set out in United States Note 12(t) to the HTSUS, requires that all non-originating materials undergo a tariff change, by reason of processing performed in a NAFTA country: "To heading 2106 from any other chapter."

Here, all of the ingredients in Plaintiff's products undergo a change from Chapter 8, HTSUS, classifications to Heading 2106, HTSUS. The requirement for NAFTA "originating" status is therefore met.

To the extent Plaintiff timely filed claims for NAFTA treatment for the mixtures at bar, they should be classified free of duty as NAFTA originating.

## <u>CONCLUSION</u>

For the reasons set forth herein, Plaintiff, Nature's Touch Frozen Foods (West) Inc., respectfully submits that summary judgment should be entered in its favor, classifying the subject frozen fruit mixtures under subheading 2106.90.98, HTSUS. We further submit that the goods should be reliquidated duty free, as NAFTA originating, to the extent timely claims for NAFTA treatment were filed.

Respectfully submitted,

/s/ John M. Peterson
John M. Peterson
Patrick B. Klein
NEVILLE PETERSON LLP
*Counsel for Plaintiff*
One Exchange Plaza
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

Dated:  April 18, 2022

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. STEPHEN A. VADEN**

---------------------------------------------------------------------- X

**NATURE'S TOUCH FROZEN FOODS (WEST)**
**INC.,**                                                               :
                                                                        :
         **Plaintiff,**                                                 :
                                                                        :
         *v.*                                                           :          **No. 20-cv-00131**
                                                                        :
**UNITED STATES,**                                                      :
                                                                        :
         **Defendant.**                                                 :

---------------------------------------------------------------- X


## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to the U.S. Court of International Trade Standard Chambers Procedures, and in reliance upon the word count feature of the word processing program used to prepare the instant Memorandum, I, Patrick B. Klein, of Neville Peterson LLP, who is responsible for the instant Memorandum, certify that it contains 7,641 words.


Respectfully submitted,

/s/ Patrick B. Klein
   Patrick B. Klein