UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. STEPHEN ALEXANDER VADEN, JUDGE

_____

|  |  |  |
|---|---|---|
| NATURE'S TOUCH FROZEN FOODS (WEST) INC., | : | |
| | : | |
| Plaintiff, | : | Court No. 20-00131 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |

_____ :

## ORDER

Upon reading plaintiff's motion for summary judgment, defendant's cross-motion for summary judgment, and the parties' responses thereto; and upon consideration of other papers and proceedings had herein, it is hereby

**ORDERED** that plaintiff's motion be, and hereby is denied, and it is further

**ORDERED** that defendant's cross-motion be, and hereby is granted, and it is further

**ORDERED** that the imported products are properly classified in the following provisions of the Harmonized Tariff Schedule of the United States (HTSUS):

(1) Frozen Strawberry/Banana in subheading 0811.90.10, HTSUS;

(2) Frozen Berry Mix in subheading 0811.90.20, HTSUS;

(3) Frozen Triple Berry in subheading 0811.90.20, HTSUS;

(4) Organic Mixed Berry in subheading 0811.90.20, HTSUS;

(5) Organic Very Berry Burst in subheading 0811.90.20, HTSUS;

(6) Organic Strawberry/Blueberry/Mango in subheading 0811.90.52, HTSUS;

(7) Organic Tropical Blend in subheading 0811.90.52, HTSUS;

(8) Antioxidant Blend Frozen in subheading 0811.90.80, HTSUS;

(9) Frozen Medley Mixed Fruit in subheading 0811.90.80, HTSUS;

(10) Organic Green Mango Medley in subheading 0811.90.52, HTSUS;

(11) Organic Tropical Fruit and Greens in subheading 0811.90.52, HTSUS;

(12) Blueberry Blitz in subheading 0811.90.80, HTSUS;

(13) Organic Strawberry/Cherry/Kale in subheading 0811.90.80, HTSUS; and

(14) Organic Triple Berry with Kale in subheading 0811.90.80, HTSUS; and it is further

**ORDERED** that summary judgment be, and hereby is, entered for defendant, the United States, and it is further

**ORDERED** that this action is dismissed.

_____
JUDGE


Dated: _____
       New York, New York

2

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. STEPHEN ALEXANDER VADEN, JUDGE

| | | |
|---|---|---|
| NATURE'S TOUCH FROZEN FOODS (WEST) INC., | : | |
| Plaintiff, | : | Court No. 20-00131 |
| v. | : | |
| UNITED STATES, | : | |
| Defendant. | : | |

## **DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Defendant, the United States, pursuant to Rule 56 of the Rules of the United States Court of International Trade, cross-moves this Court for summary judgment against plaintiff, Nature's Touch Frozen Foods (West).  Summary judgment in favor of defendant is appropriate because there are no genuine issues of material fact, and defendant is entitled to judgment in its favor as a matter of law, as explained in the accompanying memorandum of law.

WHEREFORE, defendant respectfully moves this Court to enter an order

granting defendant's cross-motion for summary judgment and dismissing this action.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

By:   /s/ Justin R. Miller
Justin R. Miller
Attorney-In-Charge
International Trade Field Office

/s/ Jamie L. Shookman
Jamie L. Shookman
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza – Suite 346
New York, New York 10278
(212) 264-2107
Attorneys for Defendant

Of Counsel:
FARIHA B. KABIR
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

Dated: May 23, 2022

2

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. STEPHEN ALEXANDER VADEN, JUDGE

| | | |
|---|---|---|
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ : | | |
| NATURE'S TOUCH FROZEN FOODS (WEST) INC., | : : : | |
| Plaintiff, | : : | Court No. 20-00131 |
| v. | : : | |
| UNITED STATES, | : : | |
| Defendant. | : : | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ : | | |

**MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT AND IN SUPPORT OF
<u>DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office

Jamie L. Shookman
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza – Suite 346
New York, New York 10278
(212) 264-2107
Attorneys for Defendant

Of Counsel:
FARIHA B. KABIR
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

Dated: May 23, 2022

**TABLE OF CONTENTS**

STATEMENT OF THE CASE ................................................................................2

   I.   Nature Of The Case ...............................................................................2

   II.   Nature Of The Merchandise.................................................................3

QUESTIONS PRESENTED ................................................................................8

SUMMARY OF ARGUMENT.............................................................................8

ARGUMENT ................................................................................................10

   I.   STANDARD OF REVIEW ................................................................10

   II.   THE PRODUCTS AT ISSUE ARE PROPERLY CLASSIFIABLE IN
       HEADING 0811, HTSUS.................................................................11

       A.  The All-Fruit Mixes Are Properly Classified Under Heading 0811, HTSUS,
           Which Covers Frozen Fruit...............................................12

       B.  The All-Fruit Mixes Are Properly Classified Pursuant To GRI 3
           At The Subheading Level ..................................................17

           a.   No Single Ingredient Imparts The Essential Character Of The
               All-Fruit Mixes .....................................................19

           b.   The All-Fruit Mixes Are Classified Pursuant To GRI 3(c) ...................20

       C.  Prior Rulings By CBP Regarding The Classification Of Fruit Products Under
           Subheading 0811.90, HTSUS Are Not Probative For This Case ...................24

       D.  The Products At Issue With Fruit and Vegetable Ingredients Are Properly
           Classified Pursuant to GRI 3...........................................25

           a.   No Single Ingredient Imparts The Essential Character Of The Fruit
               and Vegetable Mixes.................................................. 27

           b.   Classification Of The Fruit And Vegetable Mixes Must Be Determined
               Pursuant To GRI 3(c)...............................................27

III.   THE IMPORTED PRODUCTS DO NOT CONSTITUTE "FOOD
       PREPARATIONS" FOR TARIFF CLASSIFICATION PURPOSES ..................29

       A.  The Imported Products Are Not "Preparations" ...............................33

       B.  The All-Fruit Mixes Are More Specifically Provided For By Another
           HTSUS Heading ............................................................37

IV.    THE IMPORTED PRODUCTS ARE NOT ELIGABLE FOR DUTY-FREE
       TREATMENT UNDER NAFTA ........................................................38

CONCLUSION..........................................................................40

# TABLE OF AUTHORITIES

**<u>Cases</u>**

A.N. Deringer, Inc. v. United States,
  66 Cust. Ct. 378 (Customs Ct. 1971) ................................................................ 20

Anderson v. Liberty Lobby, Inc.,
  477 U.S. 242 (1986) ................................................................................................ 10

Arbor Foods, Inc. v. United States,
  30 C.I.T. 670 (2006) .............................................................................................. 31

Aromont USA, Inc. v. United States,
  34 C.I.T. 1014 (2010), *aff'd*, 671 F.3d 1310 (Fed. Cir. 2012) ......................... 31, 35, 37

Bausch & Lomb, Inc. v. United States,
  148 F.3d 1363 (Fed. Cir. 1998) ........................................................................... 10

CamelBak Prod., LLC v. United States,
  649 F.3d 1361 (Fed. Cir. 2011) ................................................................ 9, 14, 16, 18

Carl Zeiss, Inc. v. United States,
  195 F.3d 1375 (Fed. Cir. 1999) ........................................................................... 14

Casio, Inc. v. United States,
  73 F.3d 1095 (Fed. Cir. 1996) ............................................................................. 14

Conair Corp. v. United States,
  29 C.I.T. 888 (2005) .......................................................................................... 19, 20

Cormorant Shipholding Corp. v. United States,
  617 F. Supp. 2d 1270 fn 17 (Ct. Int'l Trade 2009) ................................... 23, 24

Dell Prods. LP v. United States,
  642 F.3d 1055 (Fed. Cir. 2011) ........................................................................... 12

Gen. Chain & Belt Co. v. United States,
  42 Cust. Ct. 115 (Cust. Ct. 1959) ....................................................................... 13

Home Depot, U.S.A., Inc. v. United States,
  427 F.Supp.2d 1278 (Ct. Int'l Trade 2006), *aff'd*, 491 F.3d 1334 (Fed. Cir. 2007). .... 19

Int'l Bus. Machs. Corp. v. United States,
  152 F.3d 1332 (Fed.Cir.1998) ............................................................................. 32

Jarvis Clark Co. v. United States,
      733 F.2d 873 (Fed. Cir. 1984) .................................................................. 23, 29

Kahrs Int'l, Inc. v. United States,
      713 F.3d 640 (Fed. Cir. 2013) ........................................................ 11, 14, 16

Link Snacks, Inc. v. United States,
      742 F.3d 962 (Fed. Cir. 2014) ................................................................ 14, 15

Maxcell Bioscience, Inc. v. United States,
      533 F.Supp.2d 1261 (Ct. Int'l Trade 2007) ...................................... 31, 35, 37

May Food Mfg. v. United States,
      33 C.I.T. 430 (2009) ................................................................................. 35

Mita Copystar Am. v. United States,
      21 F.3d 1079 (Fed. Cir. 1994) .................................................................... 11

Orlando Food Corp. v. United States,
      140 F.3d 1437 (Fed. Cir. 1998) ...................................................... 18, 30, 33

Phone-Mate, Inc. v. United States,
      690 F. Supp. 1048 (Ct. Int'l Trade 1988), *aff'd*, 867 F.2d 1404 (Fed. Cir. 1989) ........ 10

Pillowtex Corp. v. United States,
      171 F.3d 1370 (Fed. Cir. 1999) .............................................................. 11, 19

Pomeroy Collection, Ltd. v. United States,
      32 C.I.T. 526 (2008) ................................................................................. 12

R.T. Foods, Inc. v. United States,
      757 F.3d 1349 (Fed. Cir. 2014) ......................................... 15, 16, 32, 33, 37

R.T. Foods, Inc. v. United States,
      887 F. Supp. 2d 1351 (Ct. Int'l Trade 2012) ...................................... 29, 37

Rollerblade, Inc. v. United States,
      116 F.Supp.2d 1247 (Ct. Int'l Trade 2000), *aff'd*, 282 F.3d 1349 (Fed.Cir.2002). 32, 33

Sabritas v. United States,
      22 C.I.T. 59 (1998) ............................................................................... 35, 36

Stone & Downer Co. v. United States,
      17 C.C.P.A. 34 (1929) ......................................................................... 35, 36

iv

Structural Indus., Inc. v. United States
    360 F.Supp.2d 1330 (Ct. Int'l Trade 2005) ........................................................... 20, 27

Structural Indus., Inc. v. United States,
    356 F.3d 1366 (Fed. Cir. 2004) ..................................................................................... 19

Texas Apparel Co. v. United States,
    698 F. Supp. 932 (Ct. Int'l Tr. 1988), *aff'd*, 883 F.2d 66 (Fed. Cir. 1989),
    *cert. denied*, 493 U.S. 1024 (1990) ............................................................................. 10

United States v. Henry Greenberg & Bros. Export & Import Co.,
    44 C.C.P.A. 48 (1957) ..................................................................................................... 13

Universal Elecs. Inc. v. United States,
    112 F.3d 488 (Fed. Cir. 1997) ....................................................................................... 10

## Harmonized Tariff Schedule of the United States (HTSUS)

GN 12(a)(i) ................................................................................................................... 39

GN 12(b) ....................................................................................................................... 39

GN 12(t) ........................................................................................................................ 38

GRI 1 ...................................................................................................................... *passim*

GRI 2 ................................................................................................................. 18, 25, 26

GRI 2(a) .......................................................................................................................... 18

GRI 2(b) .......................................................................................................................... 19

GRI 3 ...................................................................................................................... *passim*

GRI 3(a) ............................................................................................................. 19, 25, 26

GRI 3(b) ........................................................................................................... 9, 19, 26

GRI 3(c) .................................................................................................................. *passim*

GRI 5 .............................................................................................................................. 18

GRI 6 .............................................................................................................................. 18

Heading 0710 ........................................................................................... 9, 16, 25, 26

    Subheading 0710.90 ................................................................................................. 16

Chapter 8 .............................................................................................................. 18, 38, 39

Heading 0811 ........................................................................................... *passim*

    Subheading 0811.90 ........................................................................... *passim*

    Subheading 0811.10.00 ............................................... 21, 22, 23, 27, 28

    Subheading 0811.20.20 ............................................... 21, 22, 25, 27, 28

    Subheading 0811.20.40 ............................................... 21, 22, 25, 27, 28

    Subheading 0811.90.10 ............................................................ 2, 3, 21, 28

    Subheading 0811.90.20 ....................................................................... *passim*

    Subheading 0811.90.50 ............................................... 21, 22, 23, 27, 28

    Subheading 0811.90.52 ....................................................................... *passim*

    Subheading 0811.90.80 ....................................................................... *passim*

    Subheading 0811.90.8085 ................................................................. 17

Heading 2004 .................................................................................................. 15

Heading 2006 .................................................................................................. 15

Heading 2106 .......................................................................................... *passim*

    Subheading 2106.90 ............................................................................. 3

    Subheading 2106.90.98 ................................................................. 3, 8, 29

**Statutes**

1 U.S.C. § 1 .................................................................................................... 13

19 U.S.C. § 1515(b) ....................................................................................... 2

28 U.S.C. § 1583 ............................................................................................ 23

**Rules & Regulations**

19 CFR § 177.7(b) .......................................................................................... 24

**Other Authorities**

Explanatory Note to GRI 3(b) ...................................................................... 19

Explanatory Note to Chapter 8 .................................................................... 11

Explanatory Note to Heading 0811 ................................................................ 11, 12, 13, 14

Explanatory Note to Heading 2106 ........................................................ 30, 31, 32, 36

HQ H295287, dated June 18, 2020 ............................................................................ 32

HQ H157219, dated March 18, 2020 ......................................................................... 32

HQ H307154, dated February 7, 2020 ....................................................................... 24

HQ H301529, November 27, 2019 ............................................................................. 32

HQ H295066, dated June 28, 2019 ............................................................................ 32

HQ H296462, dated July 21, 2018 ............................................................................. 32

Meriam Webster definition of "autolysis,"
   available at https://www.merriam-webster.com/dictionary/autolysis .................. 31, 35

NY N196616, dated January 6, 2012 ......................................................................... 24

NY N061157, dated May 26, 2009 ............................................................................. 24

NY R03540, dated April 11, 2006 .............................................................................. 24

NY J88542, dated September 8, 2003 ................................................................... 24, 25

Webster's New World Dictionary (Third College Edition 1988) definition of
   "fruit" ............................................................................................................. 12, 13

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. STEPHEN ALEXANDER VADEN, JUDGE

_____
                                                  :
NATURE'S TOUCH FROZEN FOODS                       :
(WEST) INC.,                                      :
                                                  :
                        Plaintiff,                :        Court No. 20-00131
                                                  :
                v.                                :
                                                  :
UNITED STATES,                                    :
                                                  :
                        Defendant.                :
_____          :

## MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

Defendant, the United States (the Government), respectfully submits this memorandum in opposition to plaintiff's, Nature's Touch Frozen Foods (West) Inc. (plaintiff or Nature's Touch), motion for summary judgment (Pl. Br.) and in support of our own cross-motion for summary judgment. We respectfully request that this Court enter judgment affirming the decision of U.S. Customs and Border Protection (CBP) classifying plaintiff's imported merchandise as "Fruit and nuts, uncooked or cooked by steaming or boiling in water, frozen, whether or not containing added sugar or other sweetening matter: . . . Other," under various 8-digit provisions within subheading 0811.90 of the Harmonized Tariff Schedule of the United States (HTSUS). Additionally, we request that the Court grant defendant's cross-motion for summary judgment, deny plaintiff's competing motion, and dismiss this action.

# STATEMENT OF THE CASE

## I.   Nature Of The Case

This case concerns the tariff classification of various frozen fruit mixes and frozen fruit and vegetable mixes imported into the United States from Canada.  The subject merchandise entered the United States through the port of Sumas, Washington between June 6, 2018 and November 21, 2018 under the cover of 67 entries.  Dkt. 1 (Summons). On October 30, 2019, plaintiff timely filed a protest covering all of the entries at issue. *Id*.  Plaintiff subsequently mailed a request for accelerated disposition by certified mail on June 4, 2020, and the protest at issue was deemed denied on July 4, 2020 pursuant to 19 U.S.C. § 1515(b).[1]  *Id.*

CBP liquidated the merchandise at issue "as entered" under four provisions within subheading 0811.90, HTSUS[2], which provide as follows:

---

[1]  19 U.S.C. § 1515(b) provides that a protest which has not been allowed or denied "within thirty days following the date of mailing by certified or registered mail of a request for accelerated disposition shall be deemed denied on the thirtieth day following mailing of such request."  Protest No. 3009-19-100055 was not allowed or denied within 30 days of the mailing of the request for accelerated disposition.

[2] The products at issue were classified at liquidation in the following provisions: (1) Frozen Strawberry/Banana (subheading 0811.90.10, HTSUS); (2) Frozen Berry Mix (subheading 0811.90.20, HTSUS); (3) Frozen Triple Berry (subheading 0811.90.20, HTSUS); (4) Organic Mixed Berry (subheading 0811.90.20, HTSUS); (5) Organic Very Berry Burst (subheading 0811.90.20, HTSUS); (6) Organic Strawberry/Blueberry/Mango (subheading 0811.90.52, HTSUS); (7) Organic Tropical Blend (subheading 0811.90.52, HTSUS); (8) Antioxidant Blend Frozen (subheading 0811.90.80, HTSUS); (9) Frozen Medley Mixed Fruit (subheading 0811.90.80, HTSUS); (10) Organic Green Mango Medley (subheading 0811.90.52, HTSUS); (11) Organic Tropical Fruit and Greens (subheading 0811.90.52, HTSUS); (12) Blueberry Blitz (subheading 0811.90.20, HTSUS for Entry No. MK8-53465690, and in subheading 0811.90.80, HTSUS for the remaining entries); (13) Organic Strawberry/Cherry/Kale (subheading 0811.90.80, HTSUS); (14) Organic Triple Berry with Kale (subheading 0811.90.52, HTSUS).

0811         Fruit and nuts, uncooked or cooked by steaming or boiling in water, frozen, whether or not containing added sugar or other sweetening matter:

0811.90         Other:

0811.90.10         Bananas and plantains………………3.4%

0811.90.20         Blueberries…………………………...free

0811.90.52         Mangoes……………………………10.9%

0811.90.80         Other……………………………..14.5%

In its motion for summary judgment, plaintiff alleges that the products at issue are properly classified under subheading 2106.90.98, HTSUS, which provides:

2106         Food preparations not elsewhere specified or included:

2106.90         Other:
                         Other:
                                Other:
                                           Other:

2106.90.98         Other…6.4%

Plaintiff further claims that the products at issue were combined in Canada to form the imported merchandise, and that the merchandise at issue is therefore entitled to duty-free treatment under the North American Free Trade Agreement (NAFTA).

## II.    <u>Nature Of The Merchandise</u>

The subject merchandise consists of 14 mixes of fruit and vegetables.  Pl. Ex. B at Response No. 2; Pl. Ex. E.  The imported products derive from fresh fruit and vegetables grown and harvested in the United States and Canada, as well as in countries that are not signatories to NAFTA: Argentina, Chile, Columbia, Costa Rica, Ecuador, Greece, Mexico, Morocco, Peru, Serbia, Spain and Turkey.  Ex. B at Response No. 2, 4.

Nine of the products at issue contain all-fruit ingredients, whereas five products contain both fruit and vegetable ingredients.  The nine products with all-fruit ingredients consist of the following ingredients, percentages, and countries of origin:

**Frozen Strawberry/Banana**

| Ingredient | Percentage | Country of Origin |
|---|---|---|
| Strawberry | 52% | Argentina, Chile, Mexico, Peru, USA, Morocco, Turkey |
| Banana | 48% | Colombia, Ecuador |

**Frozen Berry Mix**

| Ingredient | Percentage | Country of Origin |
|---|---|---|
| Blueberry | 22% | Canada, USA |
| Strawberry | 32% | Argentina, Chile, Mexico, Peru, USA, Turkey, Morocco |
| Blackberry | 28% | Chile, Mexico, Serbia |
| Raspberry | 18% | Chile, Canada, Serbia, USA |

**Frozen Triple Berry**

| Ingredient | Percentage | Country of Origin |
|---|---|---|
| Blueberry | 34% | Canada, USA |
| Blackberry | 33% | Chile, Mexico, Serbia |
| Raspberry | 33% | Chile, Canada, Serbia, USA |

**Organic Mixed Berry**

| Ingredient | Percentage | Country of Origin |
|---|---|---|
| Strawberry | 35% | Argentina, Chile, Mexico, Peru, USA, Morocco, Turkey |
| Blackberry | 25% | Chile, Serbia, USA |
| Blueberry | 25% | Canada, USA |
| Raspberry | 15% | Chile, Serbia USA |

**Organic Very Berry Burst**

| Ingredient | Percentage | Country of Origin |
|---|---|---|
| Strawberry | 30% | Argentina, Chile, Mexico, Peru, USA, Morocco, Turkey |
| Blackberry | 30% | Chile, Mexico, Serbia |
| Blueberry | 30% | Canada, USA |
| Raspberry | 10% | Chile, Serbia, USA |

**Organic Strawberry/Blueberry/Mango**

| Ingredient | Percentage | Country of Origin |
|---|---|---|
| Strawberry | 34% | Argentina, Chile, Mexico, Peru, USA, Morocco, Turkey |
| Blueberry | 33% | Canada. USA |
| Mango | 33% | Peru, Mexico |

**Organic Tropical Blend**

| Ingredient | Percentage | Country of Origin |
|---|---|---|
| Strawberry | 34% | Argentina, Chile, Mexico, Peru, USA, Morocco, Turkey |
| Mango | 33% | Peru, Mexico |
| Pineapple | 33% | Colombia, Costa Rica |

**Antioxidant Blend Frozen**

| Ingredient | Percentage | Country of Origin |
|---|---|---|
| Strawberry | 30% | Argentina, Chile, Mexico, Peru, USA, Morocco, Turkey |
| Cherry | 20% | Canada, Chile, USA, Greece, Turkey |
| Pomegranate | 20% | Chile, Peru, Spain, USA |
| Blueberry | 15% | Canada, USA |
| Raspberry | 15% | Chile, Serbia, Canada, USA |

**Frozen Medley Mixed Fruit**

| Ingredient | Percentage | Country of Origin |
|---|---|---|
| Strawberries | 35% | Argentina, Chile, Mexico, Peru, USA, Morocco, Turkey |
| Peaches | 25% | Greece, USA |
| Pineapple | 15% | Costa Rica, Colombia |
| Mango | 15% | Mexico, Peru |
| Grapes | 10% | Chile, Peru |

Pl. Ex. B at Response No. 2; Pl. Ex. E.

The products with both fruit and vegetable ingredients consist of the following

ingredients, percentages, and countries of origin:

**Organic Green Mango Medley**

| Ingredient | Percentage | Country of Origin |
|---|---|---|
| Strawberry | 18% | Argentina, Chile, Mexico, Peru, USA, Morocco, Turkey |
| Banana | 25% | Canada, USA |
| Mango | 35% | Peru, Mexico |
| Kale | 22% | Ecuador, USA |

**Organic Tropical Fruit and Greens**

| Ingredient | Percentage | Country of Origin |
|---|---|---|
| Pineapple | 46% | Colombia, Costa Rica |
| Mango | 37% | Peru, Mexico |
| Spinach | 8.5% | USA |
| Kale | 8.5% | Ecuador, USA |

**Blueberry Blitz**

| Ingredient | Percentage | Country of Origin |
|---|---|---|
| Blueberry | 40% | Canada, USA |
| Blackberry | 20% | Chile, Mexico, Serbia |
| Apple | 25% | USA |
| Butternut Squash | 15% | USA, Argentina |

**Organic Strawberry/Cherry/Kale**

| Ingredient | Percentage | Country of Origin |
|---|---|---|
| Strawberry | 34% | Argentina, Chile, Mexico, Peru, USA, Morocco, Turkey |
| Cherry | 33% | Canada, Chile, USA, Turkey, Greece |
| Kale | 33% | Ecuador, USA |

**Organic Triple Berry with Kale**

| Ingredient | Percentage | Country of Origin |
|---|---|---|
| Blueberry | 27% | Canada, USA |
| Blackberry | 20% | Chile, Mexico, Serbia |
| Apple | 23% | USA |
| Raspberry | 15% | Chile, Serbia USA |
| Kale | 15% | Ecuador, USA |

Pl. Ex. B at Response No. 2; Pl. Ex. E; Def. Ex. 2.  None of the products at issue include

added sugars, flavors or any ingredients other than their raw fruit and vegetable

ingredients.  *Id.*

Nature's Touch produces the products at issue according to specifications

detailing the types of fruit and vegetables to be used, as well as the ratios in which they

should appear.  Pl. Ex. A at 75:12-77:6; Pl. Ex. E.  The specific ingredients and ratios are

chosen based on a variety of factors, including a fruit or vegetable's appearance, size,

ripeness, level of sweetness and/or price, Nature's Touch's production capabilities, and

customers' possible end uses for the product.  Pl. Ex. A at 65:8-69:14.

With the exception of certain blueberries, all of the fruit and vegetables in the

products at issue arrive at plaintiff's packaging facility already cut and frozen.  *Id*. at

106:3-11.  Certain blueberries sourced in the United States and Canada arrive at

plaintiff's facility fresh, but they are then frozen and stored in an off-site warehouse until

they are ready to be combined into a frozen mix.  *Id.* at 122:14-25.  Nature's Touch's

packaging facility contains a mixing system that allows it to combine frozen fruit and

vegetables into specific ratios to create each of the products at issue.  *Id.* at 20:12-22:1.

Nature's Touch seeks to provide customers with a wide range of possible end uses

for its products.  *Id.* at 69:22-70:2; 126:1-11.  The products at issue can be used for many

purposes, including, but not limited to, smoothies, fruit salads, toppers for oatmeal,

cereals, waffles, pancakes and yogurt, sauces, chutney, sorbets, punches, dips and

spreads, as well as baked goods such as cobblers, cheesecake, pies and similar desserts.

Pl. Ex. A at 123:22-124:19; Pl. Ex. B at Response No. 10.  Customers can also thaw the

mixes and eat them directly.  Pl. Ex. B at Response No. 5.  In addition, new applications

may be developed by customer usage, such as when customers began using Nature's Touch's products in acai bows. Pl. Ex. A at 124:20-125:8.

Some of the retail bags of the frozen mixes at issue contain recipes in which the products may be used. *Id.* at 126:8-15. Nature's Touch does not know, however, how its customers will ultimately use its products. *Id.* at 69:22-70:2.

## QUESTIONS PRESENTED

1.    Whether the imported merchandise is properly classified under various provisions of subheading 0811.90, HTSUS, as "[f]ruit and nuts, uncooked or cooked by steaming or boiling in water, frozen, whether or not containing added sugar or other sweetening matter: . . . Other."

2.    Whether the imported merchandise is instead properly classified under subheading 2106.90.98, HTSUS, as "[f]ood preparations not elsewhere specified or included: Other: . . . Other."

3.    Whether the imported merchandise is entitled to duty-free treatment under the North American Free Trade Agreement.

## SUMMARY OF ARGUMENT

The all-fruit products at issue are *prima facie* classifiable under Heading 0811, HTSUS, pursuant to General Rule of Interpretation (GRI) 1. Heading 0811 is a broad, *eo nomine* provision covering frozen "fruit," and it contains no limitation on this term. The heading's plain language, the common meaning of "fruit" and the basic rules of statutory construction all demonstrate that Heading 0811, HTSUS encompasses plural forms of "fruit," including mixes of fruit like those at issue here. Plaintiff argues that Heading 0811, HTSUS does not cover the products at issue because it does not specifically

enumerate "mixtures."  Pl. Br. at 13-15.  However, this argument contradicts the broad, plain language of the heading, in addition to well-established jurisprudence holding that *eo nomine* provisions cover "all forms" of the named article.  *CamelBak Prod., LLC v. United States*, 649 F.3d 1361, 1364-1365 (Fed. Cir. 2011).

Because multiple subheadings of Heading 0811, HTSUS cover the different ingredients of the all-fruit mixes at issue, classification must be resolved pursuant to GRI 3.  Classification cannot be resolved under GRI 3(b), however, because no single ingredient imparts the products' essential character.  Thus, pursuant to GRI 3(c), classification is appropriate in the subheading appearing last in numerical order, when considering all of the subheadings that cover each of the products' individual ingredients.

In the products with both fruit and vegetables, the fruit ingredients are *prima facie* classifiable in Heading 0811, HTSUS (frozen "fruit"), whereas the vegetable ingredients are *prima facie* classifiable in Heading 0710, HTSUS, (frozen "vegetables").  Determining the appropriate heading, therefore, requires an essential character analysis.  Because the products are overwhelmingly fruit, fruit imparts their essential character, and they are classified as frozen "fruit" of Heading 0811, HTSUS.  At the subheading level, no single ingredient imparts the essential character of the fruit and vegetable mixes, and GRI 3(c) therefore applies here too.  Pursuant to GRI 3(c), the proper classification is in the subheading that appears last in numerical order, when considering the subheadings that merit "equal consideration," *see* GRI 3(c), *i.e.,* those covering the fruit ingredients.

Plaintiff argues, incorrectly, that the imported products are classified in the basket provision for "food preparations" found in Heading 2106, HTSUS.  Pl. Br. at 8-15.  However, none of the products constitute "preparations" for tariff classification purposes.

No additional ingredients are added to the products' raw fruit and vegetable ingredients, nor do any ingredients undergo processing that substantially transforms their identity. Accordingly, the products are properly classified in the appropriate subheading of Heading 0811, HTSUS.

## ARGUMENT

### I.   STANDARD OF REVIEW

On a motion for summary judgment, the Court determines whether there are any factual disputes that are material to the resolution of the action. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Texas Apparel Co. v. United States*, 698 F. Supp. 932, 934 (Ct. Int'l Tr. 1988), *aff'd*, 883 F.2d 66 (Fed. Cir. 1989), *cert. denied*, 493 U.S. 1024 (1990) (citations omitted).  "The court may not resolve or try factual issues on a motion for summary judgment." *Phone-Mate, Inc. v. United States*, 690 F. Supp. 1048, 1050 (Ct. Int'l Trade 1988), *aff'd*, 867 F.2d 1404 (Fed. Cir. 1989) (citations omitted).

This Court may resolve a classification issue by means of summary judgment. *See Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363, 1365 (Fed. Cir. 1998). Summary judgment is appropriate where the nature of the merchandise is not in question and the sole issue before the court is the proper classification of the merchandise. *Id.* ("[S]ummary judgment is appropriate when there is no genuine dispute as to the underlying factual issue of exactly what the merchandise is") (citation omitted).

A classification decision has two underlying steps.  First, the court must determine the proper meaning of the tariff provisions at hand.  *See Universal Elecs. Inc. v. United States*, 112 F.3d 488, 491 (Fed. Cir. 1997).  The second step is to determine whether the subject merchandise properly falls within the scope of the possible headings.

*Id*.  The first step is a question of law, while the second step is one of fact.  *Id*.; *Pillowtex Corp. v. United States*, 171 F.3d 1370, 1373 (Fed. Cir. 1999).  Where there is no factual dispute regarding the nature, structure, and use of the imported merchandise, the classification issue collapses entirely into a question of law, and the court reviews CBP's classification decision *de novo*.  *See Kahrs Int'l, Inc. v. United States*, 713 F.3d 640, 643-45 (Fed. Cir. 2013) (citations omitted).  Here, the material facts regarding the nature of the merchandise are undisputed, and classification is therefore entirely a question of law.  Thus, this case is ripe for summary judgment.

## II.  THE PRODUCTS AT ISSUE ARE PROPERLY CLASSIFIABLE IN HEADING 0811, HTSUS

Heading 0811, HTSUS provides for "Fruit and nuts, uncooked or cooked by steaming or boiling in water, frozen, whether or not containing added sugar or other sweetening matter."  The Explanatory Notes (ENs)[3] to Chapter 8, HTSUS clarify that "fruit" of this heading may be frozen:

> This Chapter covers *fruit*, nuts and peel of citrus fruit or melons (including watermelons), generally intended for human consumption (whether as presented or after processing). They may be fresh (including chilled), *frozen* (whether or not previously cooked by steaming or boiling in water or containing added sweetening matter) or dried (including dehydrated, evaporated or freeze-dried). . .

(emphasis added).  The ENs to Heading 0811, HTSUS also state, in pertinent part:

---

[3] The Explanatory Notes to the tariff schedule are published by the World Customs Organization and, although not controlling, are intended to clarify the scope of the HTSUS.  *See Mita Copystar Am. v. United States*, 21 F.3d 1079, 1082 (Fed. Cir. 1994) ("[A] court may refer to the Explanatory Notes of a tariff subheading, which do not constitute controlling legislative history but nonetheless are intended to clarify the scope of HTSUS subheadings and to offer guidance in interpreting subheadings.").

> This heading applies to *frozen fruit* and nuts which, when fresh or chilled, are classified in the preceding headings of this Chapter.

(emphasis added).

"The General Rules of Interpretation [(GRIs)] govern the interpretation of HTSUS classifications." *Dell Prods. LP v. United States*, 642 F.3d 1055, 1057 (Fed. Cir. 2011). GRI 1 provides that classification shall be determined according to the terms of the headings of the tariff schedule and any relative section or chapter notes.  In the event that the goods cannot be classified solely on the basis of GRI 1, and if the headings and legal notes do not otherwise require, the remaining GRIs, 2 through 6, are to be applied "in sequential order." *Pomeroy Collection, Ltd. v. United States*, 32 C.I.T. 526, 536 (2008).

As we demonstrate below, the fruit ingredients in the products at issue are covered by the *eo nomine* provision for frozen "fruit," and all of the products are classified in the appropriate subheadings of Heading 0811, HTSUS pursuant to GRI 3

A. **The All-Fruit Mixes Are Properly Classified Under Heading 0811, HTSUS, Which Covers Frozen Fruit**

As we indicated above, GRI 1 provides that classification shall be determined according to the terms of the tariff headings and any relative section or chapter notes. Here, Heading 0811, HTSUS covers frozen "fruit."  The common meaning of fruit is, in relevant part, "the edible plant structure of a mature ovary of a flowering plant, usually eaten raw: … ."  WEBSTER'S NEW WORLD DICTIONARY at p. 543, entry for "fruit" (Third College Edition 1988).  The complete definition is as follows:

> **fru·giv·o·rous** (frōō jivʹə rəs) *adj.* [ < L *frux* (see prec.) + -VOROUS ] fruit-eating
> **fruit** (frōōt) *n., pl.* **fruit** or **fruits** [ ME < OFr < L *fructus*, enjoyment, means of enjoyment, fruit, produce, profit < pp. of *frui*, to partake of, enjoy < IE base *bhrūg-*, fruit, to enjoy > BROOK² ] **1** any plant product, as grain, flax, vegetables, etc.: *usually used in pl.* **2** the edible plant structure of a mature ovary of a flowering plant, usually eaten raw: many fruits which are not sweet, as tomatoes, beans, green peppers, etc., are popularly called *vegetables* **3** the result, product, or consequence of any action *[fruit* of hard work*]* ☆**4** [Slang] a male homosexual: term of contempt or derision **5** [Archaic] the young of animals or man **6** *Bot.* the mature ovary of a flowering plant, together with its contents, and any closely connected parts, as the whole peach, pea pod, cucumber, etc.: see TRUE FRUIT, FALSE FRUIT —*vi.,* *vt.* to bear or cause to bear fruit
> **fruit·age** (-ij) *n.* [OFr: see -AGE ] **1** bearing of fruit; fruiting **2** a crop of fruit; fruits collectively **3** a result; product; consequence

*Id.*

The term "fruit" also covers plural forms of the article. *Id.* (indicating that the plural form of the word is "fruit or fruits."). This interpretation of "fruit" is consistent with the guidance imparted by the Explanatory Notes to Heading 0811, HTSUS. The ENs to Heading 0811, HTSUS explicitly state that this "heading applies to frozen fruits" (emphasis added). Consequently, just as a "bowl of fruit" could contain multiple types of fruit, the broad tariff term "fruit" necessarily covers products with multiple types of fruit, *i.e.* mixes of fruit.

Relatedly, an elementary rule of statutory construction states that the singular form of a word includes the plural, and vice versa. *See* 1 U.S.C. § 1, stating that "[i]n determining the meaning of any Act of Congress, unless the context indicates otherwise – words importing the singular include and apply to several persons, parties, or things; …" *See also United States v. Henry Greenberg & Bros. Export & Import Co. Inc.*, 44 C.C.P.A. 48, 50 (1957) ("it is well settled that in the construction of tariff statutes, use of a plural term will ordinarily be construed as including the singular, and vice versa unless a contrary intention is shown"); *Gen. Chain & Belt Co. v. United States*, 42 Cust. Ct. 115, 119 (Cust. Ct. 1959) (same). The broad language of Heading 0811, HTSUS

demonstrates that this basic rule of statutory construction should apply.  As a result, the all-fruit mixes meet the common meaning of fruit, and therefore, are *prima facie* classified under Heading 0811, HTSUS by application of GRI 1.

It is also worth noting that the term "fruit" in Heading 0811, HTSUS is an *eo nomine* provision.  An *eo nomine* provision is one that "describes the merchandise by name."  *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999).  It is well-established that "[a]bsent limitation or contrary legislative intent," an *eo nomine* provision "includes all forms of the named article, even improved forms."  *CamelBak*, 649 F.3d at 1364-1365.  Heading 0811, HTSUS is an *eo nomine* provision because it describes "fruit" by name.  Consequently, this tariff provision contains no limitation, and no legislative intent limits its broad scope.  This observation is further buttressed by the ENs to Heading 0811, HTSUS, which reflect no limitation on the term "fruit."  As a result, Heading 0811, HTSUS covers all forms of "fruit," even improved forms. *CamelBak*, 649 F.3d at 1364-1365.

If anything, fruit mixes are "improved forms" of fruit that are still covered by Heading 0811, HTSUS *eo nomine*.  *Id*.  To determine whether a product is merely an "improved form" of an article described *eo nomine*, as opposed to a change in identity, the Court determines "whether the item possess[es] features *substantially in excess* of those within the common meaning of the term."  *Id.* at 1365 (quoting *Casio, Inc. v. United States*, 73 F.3d 1095, 1098 (Fed. Cir. 1996)) (emphasis in original).  A product does not undergo a change in identity simply by "possess[ing] some unique features related to its intended use."  *Kahrs*, 713 F.3d at 646; *see also Link Snacks, Inc. v. United*

*States*, 742 F.3d 962, 966 (Fed. Cir. 2014) (dehydrating beef jerky did not remove it from the *eo nomine* provision for "cured beef products").

The decision in *R.T. Foods, Inc. v. United States*, 757 F.3d 1349 (Fed. Cir. 2014) is particularly instructive to determining the scope of Heading 0811, HTSUS. *R.T. Foods* concerned the classification of frozen tempura-battered vegetable mixtures under Heading 2004, HTSUS, which provides for "Other vegetables prepared or preserved otherwise than by vinegar or acetic acid, frozen, other than products of heading 2006." *Id.* at 1354. The importer argued that the processing of the raw vegetables—which included dipping in tempura batter, deep frying, and flash freezing—changed their identity into premade ready-to-eat meals and precluded classification in the *eo nomine* provision of Heading 2004. *Id.* at 1355. In rejecting this argument, the Court of Appeals for the Federal Circuit (the Federal Circuit) noted that "R.T. has failed to show that its products possess a feature or component that endows them with a unique identity substantial enough to justify removal from the scope of the *eo nomine* provision in which they prima facie fall," and that "[a]bsent such a substantial transformation," the merchandise "falls within the scope of heading 2004." *Id.* at 1356.

Thus, the vegetable mixtures at issue in *R.T. Foods* were still covered by the *eo nomine* provision at issue, even after being dipped in tempura butter and deep-fried. Similarly, none of the processing steps described by plaintiff in this case—cleaning the raw ingredients, "reduc[ing] them in size to edible, bite-sized portions," or removing their inedible portions and freezing, *see* Pl. Br. at 19, removes the fruit mixes from the *eo nomine* provision for frozen "fruit" in Heading 0811, HTSUS.

15

Even after the products at issue are combined in specific proportions that are pleasing to consumers, or that make the raw fruit ingredients suitable for different uses, such as use in a smoothie or a baked good, *see* Pl. Br. at 17, the fruit mixes still do not possess features "substantially in excess of" fruit. *Kahrs*, 713 F.3d at 646; *see also R.T. Foods*, 757 F.3d at 1354. Rather, the steps described by plaintiff simply prepare the fruit for consumption by consumers, and the fruit ingredients in the products at issue are therefore still covered by the *eo nomine* provision for frozen "fruit."

Plaintiff claims that Heading 0811, HTSUS does not cover fruit "mixtures." Pl. Br. at 13-15. Specifically, plaintiff notes that other provisions explicitly cover "mixtures" to argue that "[w]here the HTSUS intends to include mixtures of frozen food in tariff classifications, the plain language of the headings clearly provides for mixtures." *Id*. at 13. However, the fact that "mixtures" of fruit are not explicitly enumerated in Heading 0811, HTSUS is not determinative. Limiting this heading to single types of fruit, when its express language contains no such limitation, would contradict well-settled jurisprudence. *CamelBak*, 649 F.3d at 1364-1365 (an *eo nomine* provision "includes all forms of the named article"). Other provisions in the tariff statute bolster this point. For example, Heading 0710, HTSUS (which covers frozen "[v]egetables") includes mixtures, even though the term "mixtures" does not appear in the heading's plain text. This conclusion is evident from the provision for "[m]ixtures of vegetables" found in subheading 0710.90, HTSUS. The fact that only the subheading (but not the heading language itself) explicitly provides for "mixtures," demonstrates that a broad *eo nomine* term can cover mixtures, even if not explicitly stated in the text.

That Heading 0811, HTSUS covers mixes of fruit is also bolstered by a statistical subheading added to the text in 2019, after the goods were imported. Specifically, subheading 0811.90.8085, HTSUS covers "[f]rozen mixes." While we are not relying on this statistical subheading to determine the correct classification of plaintiff's goods,[4] the provision lends support to the position that Heading 0811, HTSUS covers mixes of fruit.

In sum, the broad, *eo nomine* provision for frozen "fruit" in Heading 0811, HTSUS covers all of the fruit ingredients in the products at issue.

### B.  The All-Fruit Mixes Are Properly Classified Pursuant To GRI 3 At The Subheading Level

As established in the prior section, fruit mixes are provided for *eo nomine* by Heading 0811, HTSUS, (frozen "fruit"). Thus, the nine products at issue containing all-fruit ingredients are covered by this heading in their entirety. The remainder of this section, Section II(B), will address the correct classification at the subheading level for the nine products at issue containing all-fruit ingredients.[5] A later section, Section II(D), will address the correct classification for the products at issue containing fruit and vegetable ingredients.[6]

---

[4] A statistical annotation consists, in part, of the two-digit statistical suffix (9th and 10th digits) and any article description applicable thereto, and are not part of the legal text of 19 U.S.C. § 1202, the statute which sets forth the HTSUS. *See* General Rules of Interpretation 1, and General Statistical Note 2.

[5] The nine products at issue containing all-fruit ingredients are: 1) Frozen Strawberry/Banana; 2) Frozen Berry Mix; 3) Frozen Triple Berry; 4) Organic Mixed Berry; 5) Organic Very Berry Burst; 6) Organic Strawberry/Blueberry/Mango; 7) Organic Tropical Blend; 8) Antioxidant Blend Frozen; and 9) Frozen Medley Mixed Fruit.

[6] The five products at issue containing both fruit and vegetable ingredients are: 1) Organic Green Mango Medley; 2) Organic Tropical Fruit and Green; 3) Blueberry Blitz; 4) Organic Strawberry/ Cherry/Kale and 5) Organic Triple Berry with Kale.

"Only after determining that a product is classifiable under [an HTSUS] heading should the court look to the subheadings to find the correct classification for the merchandise." *Orlando Food Corp.*, 140 F.3d 1437, 1400 (Fed. Cir. 1998).  GRI 6 requires that "the classification of goods in the subheadings of a heading shall be determined according to the terms of those subheadings and any related subheading notes and, *mutatis mutandis*, to the above rules [GRI 1 to GRI 5], on the understanding that only subheadings at the same level are comparable."

Just like at the heading level, classification pursuant to GRI 1 is appropriate at the subheading level "when an imported article is described in whole by a single classification." *CamelBak*, 649 F.3d at 1364.  Here, GRI 1 is inapplicable because no subheading of Heading 0811, HTSUS describes the imported products "in whole." *Id.* Indeed, the subheadings of Heading 0811, HTSUS provide for individual types of fruit, and subheading 0811.90.80, HTSUS provides for "[o]ther."  The other 8-digit subheadings under subheading 0811.90, HTSUS all refer to individual fruits, *see*, *e.g*., subheading 0811.90.20, HTSUS (blueberries), subheading 0811.90.40, HTSUS (papayas), and subheading 0811.90.35, HTSUS (cranberries).  Whereas certain subheadings under other headings in Chapter 8 cover mixtures of fruit, *see, e.g.*, subheading 0812.90.10, HTSUS (covering "[m]ixtures of two or more fruits" under the heading for provisionally preserved fruit and nuts), subheading 0811.90.80, HTSUS simply says "other" without any reference to mixtures, and therefore can be read to provide just for individual types of fruit not enumerated in the preceding subheadings of 0811.90, HTSUS.

Because GRI 1 cannot resolve the present dispute, the Court should apply the remaining GRIs in order.  GRI 2 contains two sections: 2(a) and 2(b).  GRI 2(a) deals

with incomplete or unfinished goods, as well as unassembled or disassembled goods, none of which describes the products at issue.  GRI 2(b), in turn, instructs that "[t]he classification of goods consisting of more than one material or substance," like the products at issue, "shall be according to the principles of rule 3."

Turning to GRI 3, "when two or more headings each refer to only one of the materials or substances in mixed or composite goods," GRI 3(a) cannot determine their correct classification.  For the nine all-fruit products at issue, multiple subheadings within Heading 0811, HTSUS refer to the individual fruit ingredients, and therefore GRI 3(a) does not apply.  Moving to GRI 3(b), goods that are not classifiable under GRI 3(a) are classified by the "component which gives them their essential character."  The following subsection will therefore addresses how to perform an essential character analysis with respect to the nine products at issue with all-fruit ingredients.

### a.   No Single Ingredient Imparts The Essential Character Of The All-Fruit Mixes

Determining a product's essential character is a fact-based analysis, *see Structural Indus., Inc. v. United States*, 356 F.3d 1366, 1370 (Fed. Cir. 2004) (citing *Pillowtex Corp.*, 171 F.3d at 1376), and "[t]he factor which determines essential character will vary as between different types of goods."  Explanatory Notes to GRI 3(b).  While the ENs list factors that may be relevant to determining essential character (the nature of the material or component, its bulk, quantity, weight or value, or the role of a constituent material in relation to the use of the goods), this list is only instructive, not exhaustive.  *Home Depot, U.S.A., Inc. v. United States*, 427 F.Supp.2d 1278, 1293 (Ct. Int'l Trade 2006), *aff'd*, 491 F.3d 1334 (Fed. Cir. 2007).  Any essential character inquiry "will depend significantly on the circumstances of each individual case."  *Conair Corp. v. United States*, 29 C.I.T. 888,

895 (2005).  In short, when making an essential character determination, "the situation

must be reviewed as a whole," *see A.N. Deringer, Inc. v. United States*, 66 Cust. Ct. 378,

384 (Customs Ct. 1971), taking into account "the totality of the evidence."  *Structural*

*Indus., Inc. v. United States*, 360 F.Supp.2d 1330, 1337 (Ct. Int'l Trade 2005).

     For the nine imported products with all-fruit ingredients, no one ingredient

imparts their essential character.  For many of these products, the most predominant

ingredient accounts for only about one-third of the product.  *See*, *e.g.*, Pl. Ex. E (showing

that strawberries account for between 30 and 35 percent of several products).  Even for

the products with an ingredient accounting for a higher percentage—*i.e.*, Blueberry Blitz

(comprised of 40 percent blueberries) and the Frozen Strawberry/Banana (comprised of

52 percent strawberries), *see id.*—that ingredient is not intended to predominate.  As

plaintiff's Vice President of Supply Chain testified, Nature's Touch chooses ingredients

based on their contribution to a product as a whole, and it seeks to have individual

ingredients blend together in a mix.  Pl. Ex. A at 156:10-157:15.

     Thus, "the totality of the evidence" in this case demonstrates that no one

ingredient imparts the essential character of any of the all-fruit products at issue.

*Structural Indus.,* 360 F.Supp.2d at 1337.  Classification of these products would

therefore be determined pursuant to GRI 3(c).

     **b.  <u>The All-Fruit Mixes Are Classified Pursuant To GRI 3(c)</u>**

     When essential character is "indeterminable," classification is resolved pursuant

to GRI 3(c), which states: "When goods cannot be classified by reference to 3(a) or 3(b),

they shall be classified under the heading which occurs last in numerical order among

those which equally merit consideration."

For the nine products containing all-fruit ingredients, all of the subheadings in which the individual types of fruit would be classified (if they were imported separately) merit equal consideration.  These subheadings are: subheading 0811.10.00, HTSUS (strawberries); subheading 0811.20.20, HTSUS (raspberries); subheading 0811.20.40, HTSUS (blackberries); subheading 0811.90.10, HTSUS (bananas); subheading 0811.90.20, HTSUS (blueberries); subheading 0811.90.50, HTSUS (pineapples); subheading 0811.90.52, HTSUS (mangoes); and subheading 0811.90.80, HTSUS (the basket provision which covers any fruits not specifically enumerated in the preceding subheadings of Heading 0811, HTSUS, and specifically, as applied to the subject all-fruit mixes, grapes, peaches and pomegranate).

Each product would then be classified in the subheading that comes last in numerical order, when considering the subheadings that cover its specific ingredients. For example, "Organic Mixed Berry" contains strawberries (classified in subheading 0811.10.00, HTSUS), blackberries (classified in subheading 0811.20.40, HTSUS), blueberries (classified in subheading 0811.90.20, HTSUS) and raspberries (classified in subheading 0811.20.20, HTSUS).  Of these four subheadings, the last in numerical order is subheading 0811.90.20, HTSUS.  Thus, "Organic Mixed Berry" is classifiable in subheading 0811.90.20, HTSUS pursuant to GRI 3(c).  Applying this analysis to the nine products with all-fruit ingredients, the products would be classified as follows:

- **Frozen Strawberry/Banana** contains strawberries (classified in subheading 0811.10.00, HTSUS) and bananas (classified in subheading 0811.90.10, HTSUS), with subheading 0811.90.10, HTSUS appearing last in numerical order and therefore constituting the proper classification for this product.

- **Frozen Berry Mix** contains strawberries (classified in subheading 0811.10.00, HTSUS), raspberries (classified under subheading 0811.20.20, HTSUS), blackberries (classified in subheading 0811.20.40, HTSUS),

blueberries (classified under subheading 0811.90.20, HTSUS), with subheading 0811.90.20, HTSUS appearing last in numerical order and therefore constituting the proper classification for this product.

- **Frozen Triple Berry** contains raspberries (classified under subheading 0811.20.20, HTSUS), blackberries (classified in subheading 0811.20.40, HTSUS), and blueberries (classified under subheading 0811.90.20, HTSUS), with subheading 0811.90.20, HTSUS appearing last in numerical order and therefore constituting the proper classification for this product.

- **Organic Mixed Berry** contains strawberries (classified in subheading 0811.10.00, HTSUS), raspberries (classified in subheading 0811.20.20, HTSUS), blackberries (classified in subheading 0811.20.40, HTSUS), and blueberries (classified in subheading 0811.90.20, HTSUS), with subheading 0811.90.20, HTSUS appearing last in numerical order and therefore constituting the proper classification for this product.

- **Organic Very Berry Burst** contains strawberries (classified in subheading 0811.10.00, HTSUS), raspberries (classified in subheading 0811.20.20, HTSUS), blackberries (classified in subheading 0811.20.40, HTSUS), and blueberries (classified in subheading 0811.90.20, HTSUS), with subheading 0811.90.20, HTSUS appearing last in numerical order and therefore constituting the proper classification for this product.

- **Organic Strawberry/Blueberry/Mango** contains strawberries (classified in subheading 0811.10.00, HTSUS), blueberries (classified in subheading 0811.90.20, HTSUS), and mangoes (classified in subheading 0811.90.52, HTSUS), with subheading 0811.90.52, HTSUS appearing last in numerical order and therefore constituting the proper classification for this product.

- **Organic Tropical Blend** contains strawberries (classified in subheading 0811.10.00, HTSUS), pineapples (classified in subheading 0811.90.50, HTSUS), and mangoes (classified in subheading 0811.90.52, HTSUS), with subheading 0811.90.52, HTSUS appearing last in numerical order and therefore constituting the proper classification for this product.

- **Antioxidant Blend Frozen** contains strawberries (classified in subheading 0811.10.00, HTSUS), raspberries (classified under subheading 0811.20.20, HTSUS), blueberries (classified under subheading 0811.90.20, HTSUS), cherries (classified in subheading 0811.90.80, HTSUS as cherries are not enumerated in any other subheading)), and pomegranates (also classified in subheading 0811.90.80, HTSUS as pomegranates are not enumerated in any other subheading), with subheading 0811.90.80, HTSUS appearing last in numerical order and therefore constituting the proper classification for this product.

- **Frozen Medley Mixed Fruit** contains strawberries (classified in subheading 0811.10.00, HTSUS), pineapples (classified in subheading 0811.90.50, HTSUS), mangoes (0811.90.52, HTSUS), grapes (classified in subheading 0811.90.80, HTSUS as grapes are not enumerated in any other subheading), and peaches (classified in subheading 0811.90.80, HTSUS as peaches are not enumerated in any other subheading), with subheading 0811.90.80, HTSUS appearing last in numerical order and therefore constituting the proper classification for this product.

For one entry of one of these products, we are seeking classification in a higher duty provision than that applied upon liquidation.  Specifically, upon liquidation, the Blueberry Blitz in Entry No. MK8-53465690 was classified duty-free in subheading 0811.90.20, HTSUS (Blueberry Blitz was otherwise classified upon liquidation in subheading 0811.90.80, HTSUS).  For the reasons articulated in this brief, the correct classification for this product is in subheading 0811.90.80, HTSUS, which has a 14.5% duty rate.  We are advancing the correct classification of this product in order to aid the Court in fulfilling its statutory mandate to classify the merchandise at issue under the correct provision of the tariff statute, and not just the provisions previously identified by the parties.  *See Jarvis Clark Co. v. United States*, 733 F.2d 873, 877-78 (Fed. Cir. 1984) (holding that 28 U.S.C. § 2643(b), which governs relief in the Court of International Trade, "is more logically interpreted as mandating that the court reach a correct decision in every case").[7]

---

[7] To preserve the ability to collect the increased duties from plaintiff, should plaintiff not remit the duties in response to the Court's decision, the Government would be required to seek leave of Court to amend its answer to assert counterclaims for this merchandise. *See, e.g.*, *Cormorant Shipholding Corp. v. United States*, 617 F. Supp. 2d 1270, 1281 fn 17 (Ct. Int'l Trade 2009).  This decision explains the basis for counterclaims under 28 U.S.C. § 1583.  "Prior to the adoption of section 1583, if the court found Customs' appraisement to be incorrect, the court could not uphold a different appraised value claimed by the Government.  Rather, the court could only dismiss the action, without requiring the plaintiff to pay any additional duties. Section 1583 remedied this problem and permits the [G]overnment to 'assert[] a claim that would allow the court to make the

**C. Prior Rulings By CBP Regarding The Classification Of Fruit Products Under Subheading 0811.90, HTSUS Are Not Probative For This Case**

HQ H307154 determined that two products imported by plaintiff are each classified in subheading 0811.90.80, HTSUS, pursuant to GRI 1. Neither product is at issue in this case. *See* HQ H307154, dated February 7, 2020 (classifying one product that is 25% strawberry, 25% blueberry, 25% blackberry and 25% red raspberry, and another product that is 34% mango, 33% raspberry and 33% cherry). In addition, this ruling was issued after the products at issue in this case entered the United States. Upon further review, the Government has determined that this ruling employed an incorrect reasoning in resolving the classification issue pursuant to GRI 1. As we demonstrate above, fruit mixes, such as those at issue in HQ H307154, are classifiable pursuant to GRI 3, for the reasons explained herein (While the reasoning in HQ H307154 was incorrect, the result for the second product, which included cherries classifiable under subheading 0811.90.80, was the same as would have been reached under a GRI 3(c) analysis). However, pursuant to 19 CFR § 177.7(b), CBP will not be modifying HQ H307154 while this classification issue is pending before the Court.

On the other hand, CBP appears to have applied the GRI 3 analysis described herein in four other rulings, the only ones we are aware of that classify frozen fruit mixes. *See* New York Ruling Letter (NY) J88542, dated September 8, 2003; NY R03540, dated April 11, 2006; NY N061157, dated May 26, 2009; NY N196616, dated January 6, 2012.

---

proper determination and accordingly would enable the Government to collect the full amount of duties.' H.R.Rep. No. 96–1235, at 36 (1980)." *Cormorant*, 617 F. Supp. 2d at 1281 fn 17. However due to the procedural posture of this case, we are not seeking leave to amend our answer, and should the Court find that our asserted classifications are the correct result, we will not seek to collect the increased duties for Blueberry Blitz in Entry No. MK8-53465690.

These rulings, however, simply state the applicable provision for the products being considered in the respective rulings, without analyzing classification pursuant to the GRIs. While CBP appears to have classified the goods at issue in these rulings pursuant to GRI 3(c), as in each instance the classification corresponded with that of the fruit last in numerical order,[8] without an analysis under the GRIs set forth in the rulings themselves, the rulings do not provide guidance as to the proper classification of the goods at issue here.

D. **The Products At Issue With Fruit and Vegetable Ingredients Are Properly Classified Pursuant to GRI 3**

The five products at issue containing both fruit and vegetable ingredients must be classified pursuant to GRI 3. Starting with the relevant headings, for the reasons explained in Section II(A), the fruit ingredients are covered *eo nomine* by Heading 0811, HTSUS. The vegetable ingredients, in turn, are covered *eo nomine* by Heading 0710, HTSUS, which provides for "[v]egetables (uncooked or cooked by steaming or boiling in water), frozen." Just as Heading 0811, HTSUS broadly covers all "fruit," Heading 0710, HTSUS broadly covers all "vegetables." For the same reasons set forth above in Section II(A), the vegetable ingredients at issue are *prima facie* covered by Heading 0710, HTSUS.

Thus, because multiple headings "refer to only one of the materials or substances" in the fruit and vegetable mixes at issue, neither GRI 1, nor GRI 2 nor GRI 3(a) can determine the heading in which they are properly classified. As a result, classification at

---

[8] For example, in J88542, a product containing frozen raspberries, blueberries, blackberries, and strawberries was classified in subheading 0811.90.20, HTSUS. Classification pursuant to GRI 3(c) would consider that the strawberries would fall under subheading 0811.10.00, HTSUS, the raspberries under subheading 0811.20.20, HTSUS, the blackberries under subheading 0811.20.40, HTSUS, and the blueberries under subheading 0811.90.20, HTSUS, with subheading 0811.90.20, HTSUS appearing last in numerical order and therefore constituting the proper classification for the product.

the heading level requires an essential character analysis pursuant to GRI 3(b).  However, unlike with the all-fruit mixes (for which the essential character analysis involved a comparison of the individual ingredients to determine the correct subheading of Heading 0811, HTSUS), the essential character analysis for the fruit and vegetable mixes involves a comparison of the entire fruit and vegetable portions in order to determine whether these products are classified as "vegetables" of Heading 0710, HTSUS, or as "fruit" of Heading 0811, HTSUS.

Turning to this analysis, the products with both fruit and vegetable ingredients overwhelmingly contain more fruit than vegetable ingredients.  Specifically, these products contain anywhere from 67% to 85% frozen fruit.  Pl. Ex. E.  Tellingly, plaintiff refers to all of the products at issue as "frozen *fruit* mixtures," *see*, *e.g.*, Pl. Br. at 9 (emphasis added), making little mention of their vegetable ingredients in its brief, and even stating in its response to the Government's interrogatories that "[n]one of the mixtures contain any non-fruit ingredients."  Pl. Ex. B at 7.  The products' fruit ingredients plainly impart their essential character, and they are therefore classified as "fruit" of Heading 0811, HTSUS by application of GRI 3(b).

Next, turning from classification at the heading level to classification at the subheading level, GRI 1 cannot resolve the classification of the fruit and vegetable mixes, because no one subheading provides for them as a whole.  GRI 2 is also inapplicable because the products are not incomplete or unfinished products, nor are they unassembled or dissembled products.  Likewise, GRI 3(a) cannot determine the correct classification because "two or more headings each refer to only one of the materials."  Thus, these products are properly classified pursuant to GRI 3(b) or 3(c).

### a. No Single Ingredient Imparts The Essential Character Of The Fruit and Vegetable Mixes

For the imported products with both fruit and vegetable ingredients, no one ingredient imparts their essential character. None contain a single ingredient accounting for a majority of the product, *see* Pl. Ex. E, and no one ingredient is intended to predominate. Once again, Nature's Touch chooses ingredients based on their contribution to a product as a whole, and it seeks to have individual ingredients blend together in a mix. Pl. Ex. A at 156:10-157:15.

Thus, "the totality of the evidence" demonstrates that no one ingredient imparts the essential character of these mixes. *Structural Indus.,* 360 F.Supp.2d at 1367. As a result, classification must be determined pursuant to GRI 3(c).

### b. Classification Of The Fruit And Vegetable Mixes Must Be Determined Pursuant To GRI 3(c)

In applying GRI 3(c) to the products with both fruit and vegetable ingredients, only the subheadings covering fruit ingredients "merit equal consideration," *see* GRI 3(c), as these ingredients impart the products' essential character. These headings are: subheading 0811.10.00, HTSUS (strawberries); subheading 0811.20.20, HTSUS (raspberries); subheading 0811.20.40, HTSUS (blackberries); subheading 0811.90.20, HTSUS (blueberries); subheading 0811.90.50, HTSUS (pineapples); subheading 0811.90.52, HTSUS (mangoes); and subheading 0811.90.80, HTSUS (the basket provision which covers any fruits not specifically enumerated in the preceding subheadings of Heading 0811, HTSUS, and specifically, as applied to the subject fruit and vegetable mixes, apples and cherries).

Each product is then classified in the subheading that comes last in numerical order, when considering the subheadings that cover its specific fruit ingredients, just as

described above with respect to the all-fruit products at issue.  Pursuant to this analysis,

the fruit and vegetable products are classified as follows:

- **Organic Green Mango Medley** contains strawberries (classified in subheading 0811.10.00, HTSUS), bananas (classified in subheading 0811.90.10, HTSUS), and mangoes (classified in subheading 0811.90.52, HTSUS), with subheading 0811.90.52, HTSUS appearing in last in numerical order and therefore constituting the proper classification for this product. Kale was not considered.

- **Organic Tropical Fruit and Green** contains pineapples (classified in subheading 0811.90.50, HTSUS) and mangoes (classified in subheading 0811.90.52, HTSUS), with subheading 0811.90.52, HTSUS appearing last in numerical order and therefore constituting the proper classification for this product.  Spinach and kale were not considered.

- **Blueberry Blitz** contains blackberries (classified in subheading 0811.20.40, HTSUS), blueberries (classified in subheading 0811.90.20, HTSUS), and apples (classified in subheading 0811.90.80, HTSUS as apples are not enumerated in any other subheading), with subheading 0811.90.80, HTSUS appearing last in numerical order and therefore constituting the proper classification for this product.  Butternut squash was not considered.

- **Organic Strawberry/Cherry/Kale** contains strawberries (classified in subheading 0811.10.00, HTSUS) and cherries (classified in subheading 0811.90.80, HTSUS), with subheading 0811.90.80, HTSUS appearing last in numerical order and therefore constituting the proper classification for this product.  Kale was not considered.

- **Organic Triple Berry with Kale** contains raspberries (classified under subheading 0811.20.20, HTSUS), blackberries (classified in subheading 0811.20.40, HTSUS), blueberries (classified under subheading 0811.90.20, HTSUS), and apple (classified in subheading 0811.90.80, HTSUS as apples are not enumerated in any other subheading), with subheading 0811.90.80, HTSUS appearing last in numerical order and therefore constituting the proper classification for this product.  Kale was not considered.

Finally, for one of these products, we are seeking classification in a higher duty

provision than that applied upon liquidation.  Specifically, upon liquidation, Organic

Triple Berry with Kale was classified in subheading 0811.90.52 at a rate of 10.9%, and

we are now seeking classification in subheading 0811.90.80, HTSUS, which has a 14.5%

duty rate.  As explained above, we are advancing the correct classification of this product in order to aid the Court in fulfilling its statutory mandate to classify the merchandise at issue under the correct provision of the tariff statute, *see Jarvis Clark*, 733 F.2d at 877-78, but we will not seek leave to assert a counterclaim for any increased duties that might be owed to CBP for the subject entries of Organic Triple Berry with Kale.

In sum, all of the products at issue are classifiable in Heading 0811, HTSUS pursuant to GRI 3.  At the subheading level, because no single ingredient imparts the essential character for any of the products at issue, classification must be determined pursuant to GRI 3(c).  As a result, the proper classification is in the subheading appearing last in numerical order, when considering those that cover the specific fruit ingredients.

## III.   THE IMPORTED PRODUCTS DO NOT CONSTITUTE "FOOD PREPARATIONS" FOR TARIFF CLASSIFICATION PURPOSES

Plaintiff claims that the products at issue are properly classified under subheading 2106.90.98, HTSUS, as "Food preparations not elsewhere specified or included: Other: Other: Other: Other: Other: Other."   Plaintiff misses the mark.

To be classifiable as a food preparation under Heading 2106, HTSUS, two criteria must be met: 1) the product must be a food preparation and 2) it must not be provided for more specifically elsewhere in the tariff statute.  *R.T. Foods, Inc. v. United States*, 887 F. Supp. 2d 1351, 1358 (Ct. Int'l Trade 2012).  Starting with the first criteria, the tariff term "food preparation," is not defined in the HTSUS.  We agree with plaintiff that the imported products constitute "food" for tariff classification purposes, *see* Pl. Br. at 17-18, and we therefore do not further address the meaning of this term.  However, we disagree with plaintiff as to the proper meaning of the tariff term "preparation."

While not defined in the tariff statute, the ENs provide relevant guidance in determining the meaning of "preparation."  Specifically, EN 21.06 sets forth the following two categories:

> 1. Preparations for use, either directly or after processing (such as cooking, dissolving or boiling in water, milk, etc.), for human consumption, and

> 2. Preparations consisting wholly or partly of foodstuffs, used in the making of beverages or food preparations for human consumption.

*See* EN 21.06, HTSUS.  EN 21.06 also provides a list of examples of food preparations that include, but are not limited to, powders for table creams, jellies, ice creams or similar preparations, products such as flavoring powder for making beverages, autolyzed yeast and other yeast extracts, and food supplements or dietary supplements.  *Id.*

Additionally, the Federal Circuit stated the following with respect to the meaning of the term "preparation":

> Inherent in the term "preparation" is the notion that the object involved is destined for a specific use. The relevant definition from *The Oxford English Dictionary* defines "preparation" as "a substance specially prepared, or made up for its appropriate use or application, e.g. as food or medicine, or in the arts or sciences."

*Orlando Food Corp.*, 140 F.3d 1437, 1441 (Fed. Cir. 1998).  Thus, *Orlando Food Corp.* establishes that food preparations must be destined not just for general use, but for a "*specific* use."  *Id.* (emphasis added).

Moreover, the relevant ENs make clear that "food preparations" of Heading 2106, HTSUS require significant processing beyond simply mixing fresh food ingredients.  For example, EN 21.06 lists "Flavouring powders for making beverages, whether or not sweetened, with a basis of sodium bicarbonate and

glycyrrhizin or liquorice extract." *See also Aromont USA, Inc. v. United States*, 34 C.I.T. 1014, 1018 (2010), *aff'd*, 671 F.3d 1310 (Fed. Cir. 2012) (classifying as "food preparations" flavoring powders that required cutting and roasting bones, simmering them for a long period of time, skimming the fat off bones and removing sediment to reduce them to a "rich honey like consistency").  EN 21.06 also lists, for example, "autolyzed yeast," wherein the process of "autolysis" is defined as "the breakdown of all or part of a cell or tissue by self-produced enzymes."  *See Meriam Webster* definition of "autolysis," available online at https://www.merriam-webster.com/dictionary/autolysis.

The relevant ENs also describe "food preparations" as products combining food with other ingredients, such as "food supplements" and "dietary supplements," which are described as "consisting of, or based on, one or more vitamins, minerals, amino acids, concentrates, extracts, isolates or the like of substances found within foods, or synthetic versions of such substances . . ."  EN 21.06; *see also Maxcell Bioscience, Inc. v. United States*, 533 F. Supp. 2d 1261, 1263, 1276 (Ct. Int'l Trade 2007) (classifying as "food preparations" an importer's dietary supplement that contained fruit ingredients mixed with "aloe vera, ginkgo biloba, alpha lipoic acid, as well as a proprietary herbal blend of jujube extract, black pepper, active aloe, and Chinese licorice, plus preservatives"); *see also Arbor Foods, Inc. v. United States*, 30 C.I.T. 670, 677 (2006) (classifying as "food preparation" a product that combined sugar with gelatin).  None of the EN exemplars describe products consisting solely of fresh

foods that are neither cooked, nor combined with other ingredients, nor processed beyond simply cutting and freezing the individual ingredients.

In accordance with the relevant ENs and case law, CBP classifies powders and dietary supplements as "food preparations" under Heading 2106, HTSUS. *See*, *e.g.* Headquarters Ruling Letter (HQ) H295287, dated June 18, 2020 (microencapsulated omega-3 fish oil powder); HQ H157219, dated March 18, 2020 (flavored powdered drink mixes); HQ H301529, dated November 27, 2019 (a vitamin K2 product, "Mena Q7® Vitamin K2"); and HQ H295066, dated June 28, 2019 (the "Thermo Action" dietary supplement).  CBP also classifies as "food preparations" products containing non-natural ingredients.  *See*, *e.g.*, HQ H296462, dated July 31, 2018 (classifying as "food preparations" non-dairy whipped topping containing, in part, "hydrogenated coconut oil, sodium caseinate, sodium stearoyl – 2- lactylate (USA), annatto color (USA), salt (USA), artificial vanilla flavor, polysorbate 60 and 80 (USA), a combination monoglyceride and diglyceride product (USA), and carrageenan gum.").

As for the second criteria for classification as "food preparations," Heading 2106, HTSUS is a "basket provision," as indicated by the terms "not elsewhere specified or included."  *R.T. Foods,* 757 F.3d at 1354 (quoting *Int'l Bus. Machs. Corp. v. United States,* 152 F.3d 1332, 1338 (Fed.Cir.1998)).  "A basket provision is not a specific provision."  *Int'l Bus. Machs.*, 152 F.3d at 1338. Therefore, "[c]lassification of imported merchandise in a basket provision is only appropriate if there is no tariff category that covers the merchandise more specifically."  *Rollerblade, Inc. v. United States,* 116 F.Supp.2d 1247, 1251 (Ct.

Int'l Trade 2000), *aff'd*, 282 F.3d 1349 (Fed.Cir.2002).  "In other words, because

HTSUS 2106 is a basket provision, any products that are 'specified or included'

in another tariff heading cannot be classified in HTSUS 2106."  *R.T. Foods,* 757

F.3d at 1354.

  As explained below, the products at issue do not satisfy either criteria for

classification as a "food preparation" under Heading 2106, HTSUS.

  A.  **<u>The Imported Products Are Not "Preparations"</u>**

  Starting with the first criteria, the products at issue are not "preparations" of

Heading 2106, HTSUS because they are not destined for a "specific use."  *Orlando Food*

*Corp.*, 140 F.3d at 1437.  Rather, they can be utilized as the purchaser sees fit.  *See*, *e.g.*

Pl. Ex. B at Response No. 10 (describing use in smoothies, in "sauces, chutney, sorbets,

punches, dips and spreads, and for making baked goods such as cobblers, cheesecake and

pies," and as "toppings on frozen yogurt and similar desserts.")  Consumers may also

"thaw the fruit and eat them directly."  *Id.* at Response No. 5; Pl. Ex. A at 71:13-16.

  Plaintiff concedes that the imported products have "multiple appropriate uses and

applications as food."  Pl. Br. at 18.  In fact, plaintiff does not know how its customers

will ultimately use the products at issue, as it provides its customers with a wide range of

possible end uses for its products.  Pl. Ex. A at 69:22-70:2; 126:1-11.  In some cases,

plaintiff may even develop new applications as a result of customer usage.  *Id.* at 124:20-

125:12 (describing use in acai bowls "simply because consumers got creative.")  Even

when the products at issue contain a specific use printed on their retail packaging, *see*

*e.g.*, Pl. Ex. D at 14 (stating "for smoothies"), it is only a suggested use.  Pl. Ex. A at

142:7-15.  While plaintiff maintains that the imported products with fruit and vegetable

are only used in smoothies, it still does not know how customers will ultimately use these products.  *Id.* at 153:3-17.

 Additionally, the products at issue are not akin to any of the exemplars listed in EN 21.06, or the products classified as "food preparations" by CBP or the Court.  The raw fruits and vegetables are not combined with any other ingredients, *see* Pl. Ex. B at Response No. 2; Pl. Ex. E, nor are they prepared in any way that substantially transforms their identity.  Rather, the ingredients arrive at plaintiff's facility already frozen, or they are subsequently frozen in a one-to-two minute process prior to being combined with other fruit or vegetables in retail packaging.  Pl. Br. at 4-5.

Plaintiff seeks to characterize the comingling of frozen fruit and vegetables as an elaborate process.  However, plaintiff's brief and Rule 56.3 Statement of Material Facts Not in Dispute (Rule 56.3 Statement) set forth many details that do not relate to the processing of the fruit and vegetable ingredients themselves.  For example, plaintiff states that frozen fruits are housed in 30-pound crates, *see* Pl. Br. at 5; Rule 56.3 Statement at ¶ 38, that retail bags are printed with lot numbers for traceability, Pl. Br. at 5; Rule 56.3 Statement at ¶ 42, and that it performs "extensive quality control and phytosanitary testing."  Pl. Br. at 5; Rule 56.3 Statement at ¶ 39.  Indeed, all food producers must store raw goods, conduct food safety inspections, and trace their finished products.  Moreover, the samples of food and vegetables thawed and used for quality control testing are not used in any finished products, *see* Pl. Ex. A at 23:15-23, making this step irrelevant for purposes of determining whether the imported products are "preparations."

The processing involved in this case is simple.  So simple, in fact, that the "plant" at which plaintiff processes the imported products is described on its website as a mere

"packing facility."  Pl. Ex. A at 119:18-120:16123:1-21; *see also* Def. Ex. 1 at 3.  Raw

ingredients arrive at this facility cut and "already frozen and packed in bulk," *see* Pl. Br.

at 4 (or they are frozen shortly thereafter, *see id.* at 5), and they undergo no further

change in character prior to their retail sale.  Pl. Ex. A at 45:25-46:11, 83:2-85:10,

105:24-106:16, 107:1-17, 110:24-111:10, 115:14-117:19, and 119:2-14.  In sum, the

imported products are not like other "food preparations," such as flavoring powders that

may be cooked and reduced to a different consistency, *see* EN 21.06; *Aromont*, 34 C.I.T.

at 1018, or "autolyzed yeast" that is broken down at a cellular level, *see* EN 21.06;

*Meriam Webster* definition of "autolysis," or dietary supplements that combine food with

numerous other ingredients.  EN 21.06; *Maxcell Bioscience,* 533 F. Supp. 2d at 1263,

1276.  Instead, the products at issue contain no ingredients other than raw fruit and

vegetables, and these ingredients undergo no chemical changes, *see* Pl. Ex. A at 107:13-

17, or *any* changes once they are frozen.

Plaintiff claims that a "*prepared* food article is not commercially interchangeable

with an original raw food article," that its "name, character and chemical composition are

indisputably distinct" from its raw form, and that "prepared" means a "commodity has

been so processed as to be advanced in condition and made more valuable for its intended

use."  Pl. Br. at 18-19 (citing *May Food Mfg. v. United States*, 33 C.I.T. 430, 433 (2009),

*Sabritas v. United States*, 22 C.I.T. 59, 67 (1998) and *Stone & Downer Co. v. United

States,* 17 C.C.P.A. 34, 36 (1929)) (emphasis in original).  From these cases, plaintiff

seems to extrapolate its own test, claiming that "[i]t is beyond question" that the imported

products constitute "food preparations" because they are "designed to be consumed as a

food, have nutritional value, and are typically used as an ingredient in the making of other food products."  Pl. Br. at 16.

As explained above, we do not dispute that the imported products are "food," and by extension, "have nutritional value," as plaintiff claims.  However, the rest of plaintiff's analysis is unavailing.  As explained above, the proper interpretation of "preparation" is set forth in binding, Federal Circuit case law that analyzes the relevant tariff term, and that is further supported by the relevant ENs.  Contrary to plaintiff's assertion, the tariff term "food preparation" cannot cover every food with nutritional value that is "used as an ingredient in the making of other food products," Pl. Br. at 16, or it would swallow numerous other *eo nomine* provisions.  Indeed, all of the subheadings at issue in Heading 0811, HTSUS cover individual types of fruit that could meet this overly broad definition.

Even if the Court were to apply the tests from the cited cases analyzing the tariff term "prepared" (although, it should not), plaintiff still fails to demonstrate that its goods are "food preparations."  Indeed, its products are not "indisputably distinct" in "name, character and chemical composition" from their raw fruit and vegetable ingredients.  *Sabritas*, 22 C.I.T. at 67.  Once again, these ingredients undergo no processing that substantially transforms their identity.  *See supra* at 15.

Plaintiff also relies on the development of its "recipes" to argue that its products are "processed as to be advanced in condition and made more valuable for its intended use."  Pl. Br. at 19 (citing *Stone & Downer,* 17 C.C.P.A. at 36); *see also* Rule 56.3 Statement at ¶¶ 25-35.  Here, however, plaintiff conflates product development with the actual processing of its imported mixes.  Generally speaking, recipe development is the process by which plaintiff determines which combination of fruit and vegetables will

yield the highest consumer satisfaction.  Rule 56.3 Statement ¶¶ 25-35.  This process, however, is distinct from the processing of the fruit and vegetable ingredients that actually become part of the imported products.  Indeed, the products discussed in the cases above—*i.e.*, the flavoring powders at issue in *Aromont*, the dietary supplements at issue in *Maxcell Bioscience*—had to be developed prior to being manufactured, yet product development was not considered in determining whether the goods themselves were "food preparations."  *Aromont*, 34 C.I.T. at 1018; *Maxcell Bioscience*, 533 F. Supp. 2d at 1263, 1276.  Moreover, the so-called "recipes" primarily refers to the type of fruit or vegetable in each product, and its specific ratio within a mix.  Pl. Ex. A at 76:18-77:6. No matter how involved determining such a "recipe" may be, this process is entirely separate from processing of the imported products themselves.

For all the reasons described above, the imported products are not "food preparations."

B.  **The All-Fruit Mixes Are More Specifically Provided For By Another HTSUS Heading**

The all-fruit mixes do not satisfy the second criteria for classification as a "food preparation" in Heading 2106, HTSUS because they are provided for more specifically elsewhere in the tariff statute.  *R.T. Foods*, 887 F. Supp. at 1351.  As described above in Section II, the all-fruit products are covered by the *eo nomine* term "fruit" from Heading 0811, HTSUS.  Just like the vegetable mixtures in *R.T. Foods,* none of their ingredients are substantially transformed such that they are removed from the *eo nomine* provision for "fruit."  *R.T. Foods*, 757 F.3d at 1349; *see also supra* at 34-35.  While the fruit and vegetable mixes are not *prima facie* covered by a single tariff heading, they are still not

classifiable in Heading 2106 because they are not "preparations," for the reasons described above.

In sum, none of the products at issue constitute "food preparations" for tariff classification purposes. No additional ingredients are added to the raw fruit and vegetable ingredients, nor does a substantial transformation of any ingredient occur. Rather, use of one type of frozen fruit or vegetable does not differ materially from use of several types combined together. Additionally, the all-fruit products are more specifically provided for elsewhere in the tariff statute. As a result, none of the products at issue are properly classifiable in Heading 2106, HTSUS.

## IV.   THE IMPORTED PRODUCTS ARE NOT ELIGABLE FOR DUTY-FREE TREATMENT UNDER NAFTA

Plaintiff argues that the imported merchandise should be duty-free under NAFTA. Pl. Br. at 23-24. To be eligible for tariff preferences under NAFTA, goods must be "originating goods," meaning goods that originate in Canada, Mexico and the United States. Goods may qualify as originating goods by application of the so-called "tariff shift rule" in GN 12(t). As is relevant here, the tariff-shift rules requires "all non-originating materials [to] undergo a change in classification as follows: A change to heading 2106 from any other chapter." Merchandise that undergoes a tariff change to Heading 2106, HTSUS from another chapter will be granted duty-free treatment.

Plaintiff claims that all of the ingredients in the imported products "undergo a change from Chapter 8, HTSUS, classifications to Heading 2106." Pl. Br. at 24. Stated differently, the individual ingredients would have been classifiable under Heading 0811, HTSUS if imported separately, but once combined with the other ingredients, undergo a change in classification to Heading 2106. *Id.* Plaintiff is wrong. The mere mixing of

38

individual pieces of frozen fruit, either with pieces of other fruit and/or with pieces of vegetable does not change the classification: the products were frozen fruit before the mixing, and they were still frozen fruit after being mixed.

Even if the Court finds that the products at issue are classifiable in Heading 2106, HTSUS (it should not), plaintiff is still not entitled to preferential tariff treatment under NAFTA. Demonstrating that goods originate in a NAFTA country (or qualify as originating goods pursuant to the "tariff shift rule" described above) is only one requirement for preferential tariff treatment under NAFTA. In addition, goods must qualify to be marked as goods of Canada, Mexico or the United States (here, Canada). General Note 12(a)(i), 12(b). Plaintiff has not shown in its opening motion that the products at issue could be marked, properly, as products of Canada. Accordingly, even if the products at issue are classifiable as "food preparations not elsewhere specified or included" in Heading 2106, HTSUS (contrary to the Government's position), and therefore satisfy the required shift in tariff rendering them "originating goods" for NAFTA purposes, plaintiff is still not entitled to preferential tariff treatment under NAFTA.

For all the reasons explained above, the products at issue are properly classified in Heading 0811, HTSUS. Because the single fruits that comprise the products at issue are themselves classifiable in Chapter 8, as plaintiff concedes, *see* Pl. Br. at 23, any non-originating fruit would not undergo the requisite tariff shift in Canada. Even if it did, the products would still not qualify for preferential tariff treatment under NAFTA because plaintiff has not demonstrated that they qualify to be marked, properly, as products of Canada. Therefore, the products do not qualify for preferential treatment under NAFTA.

## **CONCLUSION**

For the foregoing reasons, this Court should grant the Government's motion for

summary judgment, deny plaintiff's motion for summary judgment, and dismiss this case.


Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

<u>/s/ Justin R. Miller</u>
By:    Justin R. Miller
Attorney-In-Charge
International Trade Field Office

<u>/s/ Jamie L. Shookman</u>
Jamie L. Shookman
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza – Suite 346
New York, New York 10278
(212) 264-2107
Attorneys for Defendant

Of Counsel:
FARIHA B. KABIR
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

Dated: May 23, 2022

## **CERTIFICATE OF COMPLIANCE**

I, Jamie L. Shookman, an attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Brach, International Trade Field Office, who is responsible for the Government's memorandum in opposition to plaintiff's motion for summary judgment and in support of defendant's cross-motion for summary judgment, dated May 23, 2022, relying upon the word count feature of the word processing program used to prepare the memorandum, certify that this memorandum complies with the word count limitation under the Court's chambers procedures, and contains 10,776 words.

/s/ Jamie L. Shookman