**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. STEPHEN A. VADEN, JUDGE**
-------------------------------------------------------------------- X
NATURE'S TOUCH FROZEN FOODS (WEST)  :
INC.,  :
  :
        **Plaintiff,**  :
  :
        *v.*  :                    No. 20-cv-00131
  :
UNITED STATES,  :
  :
        **Defendant.**  :
-------------------------------------------------------------------- X


###  REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO THE DEFENDNAT'S CROSS MOTION FOR SUMMARY JUDGMENT

NEVILLE PETERSON LLP

John M. Peterson
Richard F. O'Neill
Patrick B. Klein
One Exchange Plaza
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

Dated:  June 27, 2022

## TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

ARGUMENT ...................................................................................................................... 2

I.     Because the Classification of the Subject Merchandise Can be Resolved Under GRI 1, Resort to GRI 3 is Improper............................................................................................ 2

II.    An "*Eo Nomine*" Tariff Classification Does not Embrace Mixtures. ................................ 8

III.   The Government's Construction of the term "Food Preparation". As it Appears in HTSUS Heading 2106, is Without Merit................................................................... 11

       A.    Food Preparations of Heading 2106, HTSUS are Not Required to Have a Single "Specific Use"............................................................................................. 12

       B.    Heading 2106, HTSUS Does Not Require That Fresh Food Ingredients be Processed with Other, Non-Food or Non-Fresh, Ingredients ................................ 14

IV.   The Government Improperly Insinuates the "NAFTA Marking Rules" into a Determination of Whether Plaintiff's Goods Qualify For NAFTA Treatment ................ 15

CONCLUSION............................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*Airflow Tech., Inc. v. United States*, 35 C.I.T. 1540 (2011) ........................................................... 1

*Alpinestars Inc. v. United States*, 37 C.I.T. 1149 (2013) ................................................................ 7

*Amer. Plywood Assn. v. United States*, 17 C.I.T. 613 (1993) ..................................................... 8, 9

*Arbor Foods, Inc. v. United States*, 30 C.I.T. 670 (2006) ............................................................... 3

*Aromont USA Inc. v. United States*, 671 F.3d 1310 (Fed. Cir. 2012). ........................................... 13

*BASF Corp. v. United States*, 482 F.3d 1324 (Fed. Cir. 2007) .................................................... 1, 8

*Betz v. United States*, 6 Cust. Ct. 297 (1941). ............................................................................... 10

*Camelbak Products LLC v. United States*, 693 F.3d 1361 (Fed. Cir. 2011) ............................... 8, 9

*Chemtall Inc. v. United States*, 179 F. Supp. 3d 1200 (Ct. Int'l Tr. 2016) ..................................... 7

*Ciba-Geigy Corp. v. United States*, 22 C.I.T. 1155 (1998). ........................................................... 8

*Composite Tech Int'l Ltd. v. United States*, 106 F. Supp. 3d 1337 (Ct. Int'l Tr. 2015) ................. 7

*Cyber Power Systems (USA) Inc. v. United States*, Slip Op. 21-22 (February 24, 2022) ............. 15

*Franklin v. United States*, 289 F.34 753 (Fed. Cir. 2002). ............................................................. 3

*Heartland By-Products Inc. v. United States*, 74 F. Supp. 2d 1324 (Ct. Int'l Tr. 1999). ............. 15

*Kalle USA Inc. v. United States*, 273 F. Supp. 3d 1319 (Ct. Int'l Tr. 2017) ................................. 7

*LeMans Corp. v. United States*, 660 F.3d 1311 (Fed. Cir. 2011). .................................................. 7

*Marubeni Am. Corp. v. United States*, 35 F.3d 530 (Fed. Cir. 1994) ........................................... 14

*Midwest of Cannon Falls Inc. v. United States*, 122 F.3d 1423 (Fed. Cir. 1997) ........................ 14

*Mita Copystar America v. United States,* 160 F.3d 710 (Fed. Cir. 1998). .................................. 1, 8

*Mondelez Global LLC. v. United States*, 253 F. Supp. 3d 1329 (Ct. Int'l Tr. 2017) ...................... 3

*Orlando Food Corp. v. United States,* 140 F.3d 1347 (Fed. Cir. 1998). ................................... 3, 12

*P&G Mfg. Co. v. United States*, 16 Cust. Ct. 36 (1946) ............................................................... 10

*P.R. Dreyer Inc. v. United States*, 4 Cust. Ct. 113 (1940) ........................................................... 10

*Quong Yuen Shing Co. v. United States*, 31 C.C.P.A. 43 (1943) ................................................... 11

*R.T. Foods, Inc. v. United States*, 757 F.3d 1349 (Fed. Cir. 2014). ........................................... 4, 9

*Standard Chlorine Chem Co. v. United States*, 13 C.I.T. 198 (1989) .................................... 10, 11

*United States v. Gibson-Thomsen Co., Inc. v. United States*, 27 C.C.P.A. 267 (1940) ............... 15

*United States v. Lobsitz*, 16 Ct. Cust. 475 (1929). ....................................................................... 11

*Wagner Spray Tech Corp. v. United States,* 31 C.I.T. 676 (2007) ................................................. 7

*Worthington v. Robbins*, 139 U.S. 337 (1891). ............................................................................ 15

**Statutes**

1 U.S.C. §1 ........................................................................................................................................ 5

19 U.S.C. §1625 ................................................................................................................................ 6

**Other Authorities**

Chapter 20 Note 1(a), HTSUS ......................................................................................................... 4

*Customs Headquarters Ruling H307154 of February 27, 2020* ...................................................... 6

Explanatory Notes to Heading 2106, HTSUS ............................................................................ 2, 12

General Note 12, HTSUS ............................................................................................... 15, 16, 17, 18

General Rule of Interpretation 3, HTSUS ................................................................................ passim

General Rule of Interpretation 1, HTSUS ................................................................................ passim

**Regulations**

19 C.F.R. § 177.7 ............................................................................................................................. 6

19 C.F.R. §102.0 .......................................................................................................... 17

19 C.F.R. §102.19 ................................................................................................. 15, 18

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. STEPHEN A. VADEN, JUDGE**

```
-------------------------------------------------------------------- X
NATURE'S TOUCH FROZEN FOODS (WEST)                                    :
INC.,                                                                 :
                                                                     :
         Plaintiff,                                                  :
                                                                     :        No. 20-cv-00131
         v.                                                          :
                                                                     :
UNITED STATES,                                                       :
                                                                     :
         Defendant.                                                  :
-------------------------------------------------------------------- X
```

<u>**REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY**
**JUDGMENT AND IN OPPOSITION TO THE DEFENDNAT'S CROSS M OTION FOR**
**SUMMARY JUDGMENT**</u>

Plaintiff submits this Reply Brief in Support of its Motion for Summary Judgment, and in opposition to the Defendant's Cross-Motion for Summary Judgment.  This Court should properly determine that all fourteen of the subject frozen fruit mixtures ("the Subject Merchandise"), imported into the United States directly from Canada, are properly classified under subheading 2106.90.98, HTSUS, as "Food preparations not elsewhere specified or included: Other: Other"; and, that when so classified, the subject merchandise is eligible for duty free treatment under the North American Free Trade Agreement ("NAFTA").

As discussed herein, "When an imported item is classifiable based on application of General Rules of Interpretation ("GRI") 1, recourse to the subsequent GRIs and the ARIs is unnecessary and inappropriate." *Airflow Tech., Inc. v. United States*, 35 C.I.T. 1540, 1546 (2011), citing *BASF Corp. v. United States*, 482 F.3d 1324, 1325-26 (Fed. Cir. 2007). Only if the headings and Section and Chapter Notes do not determine classification does one look to the subordinate GRIs in aid of classification. *See Mita Copystar America v. United States,* 160 F.3d 710, 712 (Fed. Cir. 1998).

In this regard, while the drafters of the HTSUS did not create a specific provision covering mixtures of frozen fruits, there is a provision of the tariff under which such he imported products may, and *must,* be classified using GRI 1. Specifically, subheading 2106.90.98, HTSUS provides for "Food preparations not elsewhere specified or included: Other: Other; Other; Other; Other." This provision describes the frozen fruit mixtures at bar, and the subject merchandise should be classified thereunder. There is no need – indeed, it is inappropriate – to attempt to classify frozen fruit mixtures by resort to GRIs 3(b) or 3(c).

Once classification under subheading 2106.90.98, HTSUS is established, it is evident that the imported mixtures all satisfy the tariff-shift rules of origin to be considered as "originating" goods for purposes of NAFTA.

## ARGUMENT

**I.     Because the Classification of the Subject Merchandise Can be Resolved Under GRI 1, Resort to GRI 3 is Improper**

In this case, the proper classification of the subject merchandise can be resolved under GRI 1. As noted in plaintiff's principal brief, these mixtures are all properly classified under subheading 2106.90.98, HTSUS, as "Food preparations not elsewhere specified or included: Other; Other: Other: Other; Other", dutiable at a Column 1 rate of 6.4% ad valorem.

The subject frozen fruit mixtures unquestionably qualify as "food preparations" of subheading 2106.90, HTSUS. They are designed to be consumed as a food, have nutritional value, and are typically used as an ingredient in the making of other food products. The Explanatory Notes to heading 2106, HTSUS indicate that the heading covers:

> A) Preparations for use, either directly or after processing (such as cooking, dissolving or boiling in water, milk, etc.), for human consumption.

(B) Preparations consisting wholly or partly of foodstuffs, used in the making of beverages or food preparations for human consumption. The heading includes preparations consisting of mixtures of chemicals (organic acids, calcium salts, etc.) with foodstuffs (flour, sugar, milk powder, etc.), for incorporation in food preparations either as ingredients or to improve some of their characteristics (appearance, keeping qualities, etc.).

All of the mixtures are preparations "for use . . . directly . . . for human consumption." They can also be consumed after further preparation, for example in smoothies, as dessert toppings, or as cake or pie fillings. As the frozen fruit mixtures at bar are not "elsewhere specified or included, they fall to be classified in subheading 2106.90.98, HTSUS unless another, more descriptive tariff provision covers them. This classification occurs by operation of GRI 1. Defendant has not identified any other tariff provision which covers these mixtures.

Obviously, the subject mixtures are "food", that is, "a substance that is intended to be ingested." *Mondelez Global LLC. v. United States*, 253 F. Supp. 3d 1329, 1335 (Ct. Int'l Tr. 2017), citing *Franklin v. United States*, 289 F.34 753, 760-761 (Fed. Cir. 2002). The food here consists of various types of fruit, ultimately meant for human consumption. The fruits are also put up as "preparations", for, as the Federal Circuit has noted, "[i]nherent in the term 'preparation' is the notion that the object involved is destined for a specific use. The relevant definition from The Oxford English Dictionary defines 'preparation' as 'a substance specially prepared, or made up for its appropriate use or application, e.g. as food or medicine, or in the arts or sciences.'" *Arbor Foods, Inc. v. United States*, 30 C.I.T. 670, 677 (2006), citing *Orlando Food Corp. v. United States*, 140 F.3d 1347, 1441 (Fed. Cir. 1998). The subject frozen fruit mixtures are obviously specially prepared for multiple appropriate uses and applications, as food.  In addition to being mixed to specific flavor templates, they are also combined for specific nutritional purposes – for example

to provide antioxidants or energy to those consuming them. They *prima facie* fall within subheading 2106.90.98, HTSUS.

As subheading 2106.90.98, HTSUS, is a "basket" provision, the final inquiry is whether these frozen food mixtures are "elsewhere specified or included[.]" As plaintiff contends, there is no GRI 1 heading or subheading which describes them. The government apparently concedes this, having identified no such provision in the tariff.

In this regard, the instant case is distinguishable from *R.T. Foods, Inc. v. United States*, 757 F.3d 1349 (Fed. Cir. 2014), on which defendant places substantial reliance. In that case, the merchandise at bar was certain tempura-battered vegetables which had been mixed and frozen. The court correctly noted that these items were classified under heading 2004, HTSUS as "Other vegetables preserved or prepared, otherwise than by acetic acid, frozen, other than products of heading 2006." It was this classification which prevented these vegetables from being "not elsewhere specified or included" and rendered them ineligible for classification under subheading 2106.90.98, HTSUS[1]. Plaintiff would readily agree that, if there were another heading of the tariff which covered the instant frozen fruit mixtures, classification of the mixtures into subheading 2106.90.98, HTSUS would be inappropriate. And while defendant complains that plaintiff's interpretation would "swallow other *eo nomine* provisions" of the HTSUS, *see* ECF 29 Defendant's Brief ("Def.'s Br.") at 39, it is unable to point to any other HTSUS provision which covers the instant product, or which would be so "swallowed". Indeed, because subheading 2106.90.98 applies only to goods "not elsewhere specified or included", the existence of any

---

[1] Moreover, plaintiff's merchandise cannot be classified in Chapter 20, HTSUS. Note 1(a) to that chapter specifies:

1. This chapter does not cover:

   (a) Vegetables, fruit or nuts prepared or preserved by the processes specified in Chapter 7, 8 or 11.

applicable *eo nomine* provision would preclude its application.  Stated another way, subheading 2106.90.98 is by its terms *incapable* of "swallowing" any other provision of the HTSUS.

Heading 0811, HTSUS, to which defendant refers, contains no provision for "mixtures" of frozen fruits, despite defendant's strained and unsuccessful attempt to read such a provision in as part of an *eo nomine* tariff provision[2]. And, by its own admission, none of defendant's proposed classifications rely upon a GRI 1 reading of heading 0811, HTSUS. Instead, they are all reached, by defendant's own admission, through the application of GRIs 3(b) (holding mixtures to be classified as if consisting only that that component which imparts the "essential character" to the mixture) and 3(c) (classifying mixtures under the last tariff provision in numerical order when no "essential character" component is identified)[3].

---

[2] The government makes a bizarre, unsupported argument, *see* Def.'s Br. at p. 13-15, suggesting that application of the Dictionary Act, 1 U.S.C. §1, means that any reference to the term "fruit" must be construed as meaning multiple, different types of fruit. That is not what the Dictionary Act says, and the argument is not supported by the HTSUS. The relevant provisions of the Act indicate that:

> In determining the meaning of any Act of Congress, unless the context indicates otherwise—
>
> words importing the singular include and apply to several persons, parties, or things;
>
> words importing the plural include the singular . . . .

*Id.* This means that a tariff subheading providing for, say "bananas" would encompass a single banana, or if a tariff provision simply provided for "watermelon", it would apply to two or more watermelons as well. No interpretation of the Dictionary Act suggests that a reference to a single thing is to be read as incorporating different single things (or multiple different things). As noted in our principal brief, a number of tariff provisions provide explicitly for particular "mixtures" of named things, and allow such mixtures to be classified under GRI 1. However, the term "mixtures" as used in GRI 3(b) indicates that a mixture consists of two or more items classified in different tariff provisions.

Of course this argument is directly contrary to the government's later argument, *see* Def.'s Br. at p. 18 *et seq*, that because the fruit mixtures contain ingredients classifiable in different subheadings, GRI 3 governs classification of the mixture.

[3] The government disclaims reliance on existing Customs rulings regarding frozen fruit mixtures. *See* Def.'s Br.  at p. 24-25. Interestingly, the government does not provide any affidavit of an Import Specialist or other Customs official explaining the reasoning by which CBP classified the subject mixtures. Instead, the assertion in the government's brief that all of the mixtures were classified by application of GRI 3(b) (which directs a search for an "essential character" component and GRI 3(c) (which provides a "last in numerical order" classification when no "essential character" component is identified, admittedly made without consulting with any Customs official, *see* Def.'s Br. at p.25, appears to be nothing more than a *post-hoc* rationalization of counsel.

Curiously, the government also notes *Customs Headquarters Ruling H307154 of February 27, 2020*, concerning certain berry mixtures imported by plaintiff. That ruling improperly classified these mixtures under subheading 0811.90.8085, HTSUS, based on the existence of a statistical provision covering "Frozen mixes only of combinations of strawberries, blueberries, red raspberries or blackberries".  As noted in plaintiff's initial brief, statistical subheadings are not a legal part of the tariff and provide no basis for classification of merchandise. In its brief, the government states: "Upon further review, the Government has determined that this ruling employed an incorrect reasoning in resolving the classification issue pursuant to GRI 1." Def.'s Br. at p. 24. While conceding that the two products covered by that ruling are **not** before the Court in this action, the government states "However, pursuant to 19 C.F.R. § 177.7 (b), CBP will not be modifying HQ H307154 while this classification issue is pending before the Court." *Id.* The regulation relied upon, 19 C.F.R. §177.7(b) provides that:

> (b) Pending litigation in the United States Court of International Trade. No ruling letter will be issued with respect to any issue which is pending before the United States Court of International Trade, the United States Court of Appeals for the Federal Circuit, or any court of appeal therefrom. Litigation before any other court will not preclude the issuance of a ruling letter, provided neither the Customs Service nor any of its officers or agents is named as a defendant.

That CBP maintains in force a ruling it concedes is incorrect, and which requires plaintiff to deposit substantial duties on imports of goods which the government concedes are **not** part of this action, demonstrates palpable bad faith on the government's part[4]. This Court should direct the government to initiate proceedings under 19 U.S.C. §1625(c) to revoke or modify the admitted incorrect ruling promptly.

---

[4] Plaintiff sought reconsideration of *Customs Headquarters Ruling H307154* more than a year and half ago, on November 2, 2020.

The GRIs to the HTSUS are not suggested guidelines, but binding, statutory law. GRI 1 provides that goods are to be classified according to the relative headings and subheadings, Section and Chapter Notes. Resort to GRIs 2 through 6 is only appropriate where classification cannot be resolved using GRI 1.

As the Federal Circuit has noted:

> The proper classification of merchandise is governed generally by the GRIs of the HTSUS. *Bauer*, 393 F.3d at 1250. GRI 1 requires classification "according to the terms of the headings and any relative section or chapter notes." GRI 1. If GRI 1 resolves the issue, the court is not to look to other GRIs. *See Mita Copystar Am. v. United States,* 160 F.3d 710, 712 (Fed. Cir. 1998). We are first to look to headings, then subheadings, to determine the proper classification. *Bauer*, 393 F.3d at 1250.

*LeMans Corp. v. United States*, 660 F.3d 1311, 1316 (Fed. Cir. 2011). When a classification controversy can be resolved under GRI 1, then resort to other GRIs is appropriate. As noted in *Jack Links, Inc., v. United States*, 37 C.I.T. 373, 375-376 (2013), aff'd, 2014 U.S. App. LEXIS 1990 (Fed. Cir. 2014):

> GRI 1 is applied as a substantive rule of interpretation when an imported article is described in whole by a single classification heading or subheading. If that single classification applies, the succeeding GRIs are inoperative. *Mita Copystar Am. v. United States*, 160 F.3d 710, 712 (Fed. Cir. 1998). Here, GRI 1 resolves the classification of Link Snacks' beef jerky, and the court does not reach Link Snacks' other arguments under subsequent GRIs.

The rule has been universally embraced by this Court and its appellate court. *See, e.g., Kalle USA Inc. v. United States*, 273 F. Supp. 3d 1319, 1327 (Ct. Int'l Tr. 2017); *Chemtall Inc. v. United States*, 179 F. Supp. 3d 1200, 1203 (Ct. Int'l Tr. 2016); *Composite Tech Int'l Ltd. v. United States*, 106 F. Supp. 3d 1337, 1340 (Ct. Int'l Tr. 2015); *Alpinestars Inc. v. United States*, 37 C.I.T. 1149, 1155 (2013); *Wagner Spray Tech Corp. v. United States,* 31 C.I.T. 676, 680-681 (2007); *BASF*

*Corp. v. United States*, 30 C.I.T. 227, 234 (2006); *Ciba-Geigy Corp. v. United States*, 22 C.I.T. 1155, 1162-1163 (1998).

## II.  An "*Eo Nomine*" Tariff Classification Does not Embrace Mixtures.

The Government argues, *see* Def. Br. at 14-16, that an *eo nomine* tariff provision for fruits – or, more accurately, for a single fruit – incorporates all forms of the named fruit, *including a "mixture" containing said fruit*.  Unfortunately, there is no support for the government's position, and it runs contrary to all reported authority.  Indeed, once an article becomes a "mixture" with something else, it *ceases* to be covered by an *eo nomine* provision.

It is well-settled that, *absent limitation or contrary legislative intent*, an *eo nomine* provision for an article, "includes all forms of the named article [,] even improved forms".  *Camelbak Products LLC v. United States*, 693 F.3d 1361, 1364-65 (Fed. Cir. 2011) (quoting *Mita Copystar Am. v. United States*, 160 F. 3d 710, 712 (Fed. Cir. 1998).  However, the rule only applies to improved or advanced versions of the article which is described *eo nomine* in a particular tariff heading or subheading – it does not expand that tariff provisions to include something mixed or joined with the named article, which is not that named article[5].  *See, e.g., Amer. Plywood Assn. v. United States,* 17 C.I.T. 613 (1993), where the Court noted that:

---

[5] The government also offers a strange argument, *see* Def. Br. at 16, that because heading 0710, HTSUS, which provides for "Vegetables (uncooked or cooked by steaming or boiling in water, frozen" features a subheading, 0710.90, HTSUS, which explicitly provides for "Mixtures of vegetables", heading 0811, HTSUS, which provides for "Fruit and nuts, uncooked or cooked by steaming or boiling in water, whether or not containing added sugar or other sweetening matter" must somehow also incorporate "mixtures". However, heading 0811, HTSUS is bereft of any subheading providing for "mixtures".

It is well-settled that "When Congress includes particular language in one section of a statute, but excludes it in another [,] . . . courts presume that Congress intended a difference in meaning." *Digital Realty Trust v. Somers*, 138 S. Ct. 767, 777 (2018), quoting *Loughrin v. United States*, 573 U.S. 351, 358 (2014). *See also: Local Initiative Health Auth. Ex. Rel. LA County v. United States*, 142 Fed. Cl. 1 (Fed. Cl.  2019).  Where Congress has carefully employed a term in one place and excluded it in another, it should not be implied where excluded. *Old Rep. Ins. Co., v. United States*, 10 C.I.T. 589, 595 (1986), citing *Marshall v. Western Union Tel. Co*., 621 F.2d 1246, 1251 (3d Cir. 1980).

The court finds that the legislative history limits the *eo nomine* provision for hardboard to a base, fungible material, and the determination whether particular merchandise is covered *eo nominee* under item 245/30, TSUS, depends on the advancements unique to that particular product made of hardboard.

*Id.* at 616

An *eo nomine* provision for "strawberries" will include all forms of strawberries – but it will not cover strawberries mixed with blueberries. In this regard, it is well-settled that where an article is in character or function something other than as described by a specific statutory provision –either more limited or more diversified – and the difference is significant – it is not properly classified within an *eo nomine* provision. *See R.T. Foods Inc. v. United States,* 757 F.3d 1354 (Fed. Cir. 2014); *see also Camelbak Products, supra.* Thus, while an *eo nomine* provision for "strawberries" would cover any advanced or specialized type of strawberry, it would not cover a mixture which is "more than" or "more diverse than" strawberries – say, a mixture of strawberries with blueberries.

Legislative intent, built into the statutory language of the HTSUS, directs that the *eo nomine* rule of interpretation cannot be stretched to produce the result sought by the government here. GRI 1 directs that goods are to be classified according to the terms of the relative headings and subheadings of the tariff, and the accompanying Section and Chapter notes. In some instances, HTSUS headings specifically provide for "mixtures" and allow classification of mixtures using GRI 1. One example is subheading 0712.90.85, HTSUS, which provides for "Other vegetables; mixtures of vegetables", and allows certain mixtures to be classified under GRI 1. However, in the absence of such a GRI 1 provision, the HTSUS teaches that "mixtures" are to be classified according to GRI 3(b), as if they consisted solely of that material or ingredient which imparts the mixture's "essential character" or, failing that, under GRI 3(c), as though they consisted solely of

that material or ingredient which occurs last in numerical order. These limitations make it inappropriate to use the *eo nomine* rule of construction to classify "mixtures".

That "mixtures" cannot be classified under the doctrine that an *eo nomine* form of an article includes all forms of the article is well established. Where a named article contains a slight impurity or de minimis feature, it may well be classified as the article named in a tariff provision. *See, e.g., P.R. Dreyer Inc. v. United States*, 4 Cust. Ct. 113, 114 (1940), in which origanum oil, containing a slight (0.5%) impurity of othrocresol, was held to be covered by an *eo nomine* provision for origanum oils, rather than as a mixture or combination containing distilled oils. *See also: P&G Mfg. Co. v. United States*, 16 Cust. Ct. 36, 39 (1946); *Betz v. United States*, 6 Cust. Ct. 297, 305-306 (1941). But two differently classified items, when combined together, do not fall into a single *eo nomine* tariff heading.

This was driven home emphatically decades ago in *Standard Chlorine Chem Co. v. United States*, 13 C.I.T. 198 (1989), which concerned the question of whether two isomers of trichlorobenzene, classified in the same HTSUS heading providing *eo nomine* for "trichlorobenzene", should be classified in that provision, or in a provision covering mixtures. The court held that the rule of *eo nomine* classification did not extend to mixtures, if the items mixed, considered separately, fall in separate headings of the HTSUS:

> The feature which distinguishes these cases, however, is that, unlike the case at bar where the separate trichlorobenzene isomers are individually dutiable under a single *eo nomine* provision, each of them pertained to a mixture of two or more separate and unique substances, each of which would have fallen under a separate and different *eo nomine* provision if imported alone. **The mixtures of them, as imported, were beyond the scope of those specific provisions, as opposed to the merchandise at bar, which is "neither more nor less than what is described by the *eo nomine* tariff provision"** . . . .

*Id.* at 201 (Emphasis added). Thus, the *eo nomine* provision for frozen strawberries set out at subheading 0811.10.00, HTSUS might cover two or more kinds of frozen strawberries classified under that provision; but it would not cover a mixtures of strawberries with blueberries, which are classified under a different tariff provision, 0811.90.20, HTSUS. See also *Border Brokerage Inc. v. United States,* 64 Cust. Ct. 331, 337 (1970); *Quong Yuen Shing Co. v. United States,* 31 C.C.P.A. 43, 48 (1943); *United States v. Lobsitz*, 16 Ct. Cust. 475, 477 (1929).

The government's argument that an *eo nomine* tariff provision includes mixtures of the named article with an article classified in a different subheading of the tariff is simply not supported by any authority[6].

## III.    The Government's Construction of the term "Food Preparation". As it Appears in HTSUS Heading 2106, is Without Merit

The government seeks to define the term "Food Preparation" as it appears in heading 2106, HTSUS, in a number of ways which would exclude plaintiff's frozen food mixtures from the scope of the provision. However, none of these attempts have merit. Plaintiff's imported frozen fruit mixtures fall squarely into the first definition set out in the Explanatory Note to heading 2106, HTSUS, in that they are:

1. Preparations for use, either directly or after processing (such as cooking, dissolving or boiling in water, milk, etc., for human consumption.

Clearly, the frozen fruit mixtures are usable for direct consumption. They could also be cooked or boiled in water, for example, to create pie fillings, chutneys and other items directly suitable for human consumption.

---

[6] Indeed, if an *eo nomine* provision could stretch so far, there would be no need for GRIs 3(b) and (c) insofar as those provisions deal with "mixtures".

It is undisputed that one of the major uses of plaintiff's imported fruit mixtures is in the preparation of "smoothies". This also puts those mixtures squarely within the second definition in the ENs to heading 2106, HTSUS:

2.  Preparations consisting wholly or partly of foodstuffs used in the making of beverages or food preparations for human consumption.

The government's arguments why plaintiff's fruit mixtures do not constitute "food preparations", examined individually, all fail.

### A.  Food Preparations of Heading 2106, HTSUS are Not Required to Have a Single "Specific Use".

Citing *Orlando Foods Corp. v. United States*, 140 F. Supp. 3d 1437, 1441 (Fed. Cir. 1998), the government notes a statement by the Orlando court that "Inherent in the term 'preparation' is the notion that the object involved is for a specific use". From this, the Government concludes that "*Orlando Food Corp*. establishes that food preparations must not be destined not just for general use, but for a '*specific* use'[.]", *see* Def.'s Br. at 30, suggesting that since plaintiff's fruit mixtures have multiple uses, they are disqualified from classification in heading 2106, HTSUS. The government's analysis establishes no such thing.

Had the government exercised proper candor with the Court, it should have noted that *Orlando Foods* case did not involve the definition of "food preparations" in heading 2106, HTSUS, but rather the definition of the term "sauces and preparations therefor", as it appears in heading 2103, HTSUS. The Court found the heading 2103, HTSUS provision for "sauces and preparations therefor" relatively more specific than a competing provision, "tomatoes, prepared or preserved", because it was a use provision rather than an *eo nomine* one, and based on the rule of relative specificity set out in GRI 3(b) and the "last in numerical order" rule of GRI 3(c). However, it is disingenuous to say that the *Orlando Foods* decision resolves the meaning of the term "food

12

preparations" in heading 2106, HTSUS because that provision was never before the court in *Orlando*.

That "food preparations" of heading 2106, HTSUS need not have a single specific use is borne out by the language of the statute itself and by governing case precedent. A quick examination of heading 2106, HTSUS will reveal that there are many types of food preparations provided for therein which are described by composition rather than use. These include, for example:

➢ Protein concentrates and textured protein substances (subheading 2106.10, HTSUS);

➢ Food preparations of gelatin (subheading 2106.90.58, HTSUS);

➢ Other food preparations containing over 10% by weight of milk solids (subheadings 2106.90.62, 2106.90.64, 2106.90.66, HTSUS);

➢ Articles containing over 65% by dry weight of sugar (subheadings 2106.90.74, 2106.90.76, HTSUS).

None of these broad general descriptions imply a single specific use.

The notion that "food preparations" of heading 2106.90.98, HTSUS must have a single specific use was explicitly considered and rejected by the Federal Circuit in *Aromont USA Inc. v. United States*, 671 F.3d 1310 (Fed. Cir. 2012). That case found that while the products at bar could be used as "bases for soups" in heading 2104, HTSUS, that was not their principal use, and the goods were primarily used by industrial consumers as "flavor notes" in producing a wide range of products. "Aromont's products are found in a variety of end uses", the court noted, 671 F.3d 1312, and fell to be classified as other food preparations in subheading 2106.90.98, HTSUS.

Thus, the government's argument that a "food preparation" of heading 2106, HTSUS must have a single, specific use, is neither supported by the language of the statute nor by governing appellate precedent.

**B.      Heading 2106, HTSUS Does Not Require That Fresh Food Ingredients be Processed with Other, Non-Food or Non-Fresh, Ingredients**

The government, without any citation to authority, then asserts that the "food preparations" of heading 2106, HTSUS, cannot consist of fresh or natural products combined together, but require "significant processing beyond simply mixing fresh food ingredients".  It bases this on various exemplars taken from the Explanatory Notes, such as "flavoring powders for making beverages, whether or not sweetened, with a basis of sodium bicarbonate and glycerine or liquorice extract", or "autolyzed yeast" (which does not appear to be a combination of two ingredients at all). However, the appellate Court has warned against using exemplars from the Explanatory Notes to try to define or limit the scope of a tariff heading or subheading. *See Midwest of Cannon Falls Inc. v. United States*, 122 F.3d 1423, 1428 (Fed. Cir. 1997) ("Absent a clearer showing of congressional intent, we refuse to import incidental characteristics of the examples in the Explanatory Notes into the headings of the HTSUS.) *See Marubeni Am. Corp. v. United States*, 35 F.3d 530, 535 n.3 (Fed. Cir. 1994) ("Explanatory Notes are only instructive and are not dispositive or binding.").

Heading 2106, HTSUS, abounds with examples of natural products mixed together. These include simple mixtures of sugar and gelatin (subheading 2106.90.58, HTSUS), of gelatin and milk solids (subheading 2106.90.62, HTSUS), as well as fortified single fruit or vegetable juices or mixtures of such juices (subheadings 2106.90.48, 2106.90.52, 2106.90.54, HTSUS).[7] There is

---

[7] If the statistical provisions under subheading 2106.90.98, HTSUS are credited, then items such as mixed herbal teas (2106.90.9887, HTSUS) are also included in the heading).

no required, minimum or mandated type of "preparation" required for a product to be classified under heading 2106, HTSUS.

The government also complains that the ingredients of plaintiff's fruit mixtures are not combined (in Canada, at any rate), in a method which results in a "substantial transformation". The test of substantial transformation is typically used to determine a good's country of origin for non-preferential and preferential tariff purposes, and for origin marking purposes[8]. See, e.g., *United States v. Gibson-Thomsen Co., Inc. v. United States*, 27 C.C.P.A. 267 (1940); *Cyber Power Systems (USA) Inc. v. United States*, Slip Op. 21-22 (February 24, 2022). It is not relevant to determining whether an article is considered a "preparation" for tariff classification purposes. Indeed, the "preparation" done to create the instant mixtures occurs in a number of countries – the countries where fresh fruits are grown, harvested, in many cases reduced in size and frozen, and in Canada, where additional products (such as blueberries and raspberries) may be frozen, and where various components are combined according to established recipes to produce the imported goods. The only consideration relevant to the classification of the goods is their condition as imported into the United States. See, e.g., *Worthington v. Robbins*, 139 U.S. 337, 341 (1891); *Heartland By-Products Inc. v. United States*, 74 F. Supp. 2d 1324, 1341 (Ct. Int'l Tr. 1999).

## IV.    The Government Improperly Insinuates the "NAFTA Marking Rules" into a Determination of Whether Plaintiff's Goods Qualify For NAFTA Treatment

The government apparently does not contest, Def.'s Br. at p. 38, that if plaintiff's frozen fruit mixtures are properly classified under heading 2106, HTSUS, the "tariff shift" requirements in the NAFTA Preference Rules of Origin, General Note 12, HTSUS, will have been satisfied. However, the government improperly tries to engraft onto the requirements for NAFTA eligibility

---

[8] In the instant case, the origin of the imported products, for marking purposes, is determined using the tariff-shift NAFTA Marking Rules, 19 C.F.R § 102.20-21 and, to the extent the goods are NAFTA "originating", by the NAFTA Preference Override set out at 19 C.F.R. §102.19.

the "NAFTA Marking Rules" which are codified at Part 102 of the Customs Regulations, 19 C.F.R.

Part 102. Specifically, the government argues:

> Demonstrating that goods originate in a NAFTA country (or qualify as originating goods pursuant to the "tariff shift rule" described above) is only one requirement for preferential tariff treatment under NAFTA. In addition, goods must qualify to be marked as goods of Canada, Mexico or the United States (here, Canada). General Note 12(a)(i), 12(b). Plaintiff has not shown in its opening motion that the products at issue could be marked, properly, as products of Canada. Accordingly, even if the products at issue are classifiable as "food preparations not elsewhere specified or included" in Heading 2106, HTSUS (contrary to the Government's position), and therefore satisfy the required shift in tariff rendering them "originating goods" for NAFTA purposes, plaintiff is still not entitled to preferential tariff treatment under NAFTA.

Def.'s Br. at 39.  This argument is demonstrably wrong.

The NAFTA Preference Rules of Origin, General Note 12, HTSUS, are used to define when a good is "originating" under NAFTA, and entitled to duty free treatment. Article 201 of the NAFTA defines the term "originating" as follows: "originating means qualifying under the rules of origin set out in Chapter Four (Rules of Origin)". Article 302 of NAFTA requires the signatory parties to reduce and eliminate their tariffs on "originating" goods. Article 401 of NAFTA defines "originating goods" to include the following:

**Article 401: Originating Goods**

Except as otherwise provided in this Chapter, a good shall originate in the territory of a Party where:

1. the good is wholly obtained or produced entirely in the territory of one or more of the Parties, as defined in Article 415;

2. each of the non-originating materials used in the production of the good undergoes an applicable change in tariff classification set out in Annex 401 as a result of production occurring entirely in the territory of one or more of the Parties, or the good otherwise satisfies the applicable requirements of that Annex where no change in tariff classification is required, and the good satisfies all other applicable requirements of this Chapter;

16

The "preference rules of origin" in Annex 1 of the Agreement are those codified at General Note 12 to the HTSUS. They, and they alone, are used to determine whether a product is "originating" and subject to duties when imported into another NAFTA country.

Separately, NAFTA Annex 311 directed the contracting parties to adopt "Marking Rules". These rules are **not** used to determine if a good is "originating", but rather whether it is entitled to be marked as a "good of a NAFTA party." The United States codified these marking rules at 19 C.F.R. Part 102.

Section 102.0 of the Customs Regulations, 19 C.F.R. §102.0, specifies the limited purposes for which the NAFTA Marking Rules are used:

**§ 102.0   Scope.**

With the exception of §§102.21 through 102.25, this part sets forth rules for determining the country of origin of imported goods for the purposes specified in paragraph 1 of Annex 311 of the North American Free Trade Agreement ("NAFTA"). These specific purposes are: country of origin marking; determining the rate of duty and staging category applicable to originating textile and apparel products as set out in Section 2 (Tariff Elimination) of Annex 300-B (Textile and Apparel Goods); and determining the rate of duty and staging category applicable to an originating good as set out in Annex 302.2 (Tariff Elimination)[9].

The product-specific NAFTA Marking Rules are codified at 19 C.F.R. §§102.20 and 102.21, and are distinct from the Article 401 "preference" rules of origin, which are used to decide whether goods are "originating" and entitled to preferential duty rates.

---

[9] When NAFTA originally entered into force, the United States and Canada already had virtually complete elimination of tariffs on each other's goods, resulting from the predecessor United States-Canada Free Trade Agreement, which reduced tariffs on "originating" goods in stages. When Mexico joined the NAFTA, many of its tariffs were reduced in stages. The NAFTA Marking Rules were used to determine the origin of goods for purposes of identifying the staging category; but the NAFTA 401 preference rules of origin, uniform to all countries, were used to determine whether the good was entitled to duty-free or reduced-duty treatment.

Indeed, where a good is NAFTA "originating" by operation of the Article 401/General Rule 12, HTSUS rules, the marking rules cease to operate. This is made clear by the so-called "NAFTA Preference Override" set out at 19 C.F.R. §102.19(a) which provides:

**§ 102.19   NAFTA preference override.**

(a) Except in the case of goods covered by paragraph (b) of this section, **if a good which is originating** within the meaning of §181.1(q)[10] of this chapter is not determined under §102.11(a) or (b) or §102.21 to be a good of a single NAFTA country, the country of origin of such good is the last NAFTA country in which that good underwent production other than minor processing, provided that a Certificate of Origin (see §181.11 of this chapter) has been completed and signed for the good.

In effect, this rule mandates that where a good qualifies as a NAFTA "originating" good, it will be deemed to be subject to marking as a NAFTA country good without regard to the NAFTA Marking Rules.

Thus, all that is needed for a product to qualify for duty-free entry as an "originating" good is that it satisfy the NAFTA Article 401 preference rules of origin codified at General Note 12, HTSUS. An "originating" article is perforce subject to marking as a "good of a NAFTA country" pursuant to 19 C.F.R. §102.19(a).[11]   The government's suggestion that a separate "marking" requirement must be met by a good which qualifies as "originating" under the preference rules of General Note 12, HTSUS, is incorrect.

---

[10] This definitional regulation provides:

(q) Originating. Originating, when used with regard to a good or a material, means a good or material which qualifies as originating in the United States, Canada and/or Mexico **under the rules set forth in General Note 12, HTSUS, and in the appendix to this part.** (Emphasis added).

[11] The NAFTA Marking Rules provide that where foreign components do not undergo the tariff shift requirements specified therein, they are "essential character" components, whose origin may drive the marking of an article. See 19 C.F.R. §102.11(b). This could lead to situations where a NAFTA "originating" article might be subject to marking as a product of a non-NAFTA country. The NAFTA Preference Override of 19 C.F.R. §102.19(a) prevents this from happening to a NAFTA "originating" good.

Interestingly, the United States-Canada-Mexico Agreement ("USMCA") which replaced the NAFTA effective July 1, 2020, does not contain "marking rules".

## <u>CONCLUSION</u>

For the reasons set forth herein, Plaintiff, Nature's Touch Frozen Foods (West) Inc., respectfully submits that summary judgment should be entered in its favor, classifying the subject frozen fruit mixtures under subheading 2106.90.98, HTSUS. We further submit that the goods should be reliquidated duty free, as NAFTA originating, to the extent timely claims for NAFTA treatment were filed.

Respectfully submitted,

<u>/s/ John M. Peterson     </u>
John M. Peterson
Patrick B. Klein
NEVILLE PETERSON LLP
*Counsel for Plaintiff*
One Exchange Plaza
55 Broadway, Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

Dated:  June 27, 2022

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: HON. STEPHEN A. VADEN**

--------------------------------------------------------------------- X

**NATURE'S TOUCH FROZEN FOODS (WEST)**
**INC.,**

       **Plaintiff,**

       *v.*                          **No. 20-cv-00131**

**UNITED STATES,**

       **Defendant.**

----------------------------------------------------------------- X

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to the U.S. Court of International Trade Standard Chambers Procedures, and in reliance upon the word count feature of the word processing program used to prepare the instant Memorandum, I, Patrick B. Klein, of Neville Peterson LLP, who is responsible for the instant Memorandum, certify that it contains 6,605 words.

                                    Respectfully submitted,

                                  /s/ Patrick B. Klein
                                     Patrick B. Klein