UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. STEPHEN ALEXANDER VADEN, JUDGE

_____
                                                    :
NATURE'S TOUCH FROZEN FOODS                         :
(WEST) INC.,                                        :
                                                    :
                              Plaintiff,            :         Court No. 20-00131
                                                    :
                    v.                              :
                                                    :
UNITED STATES,                                      :
                                                    :
                              Defendant.            :
_____            :

**REPLY MEMORANDUM IN FURTHER SUPPORT OF
DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

                         Respectfully submitted,
                         BRIAN M. BOYNTON
                         Principal Deputy Assistant Attorney
                         General

                         PATRICIA M. McCARTHY
                         Director

                         Justin R. Miller
                         Attorney-In-Charge
                         International Trade Field Office

                         JAMIE L. SHOOKMAN
                         Trial Attorney
                         Commercial Litigation Branch
                         Civil Division
Of Counsel:              Department of Justice
                         26 Federal Plaza
FARIHA B. KABIR          Suite 346
Office of the Assistant Chief Counsel    New York, NY 10273
International Trade Litigation            Tel: 212-264-2107
U.S. Customs and Border Protection       Fax: 212-264-1916


July 18, 2022            *Attorneys for Defendants*

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................ 1

1.    THE PRODUCTS AT ISSUE ARE PROPERLY CLASSIFIED
      IN HEADING 0811, HTSUS ................................................................3

      a.   Plaintiff Misinterprets The *Eo Nomine* Provision For Frozen "Fruit"
           In Heading 0811, HTSUS ..........................................................3

      b.   Plaintiff Misunderstands Our Application Of The General
           Rules Of Interpretation ...............................................................7

2.    THE PRODUCTS AT ISSUE ARE NOT "FOOD PREPARATIONS' ................9

      a.   Plaintiff Wrongly Suggests That Our Cited Authority Does
           Not Support Our Proffered Definition Of "Food Preparations" ......................9

      b.   Plaintiff's Other Objections To Our Interpretation Of "Food
           Preparations" Fail .....................................................................11

3.    The Imported Mixes Do Not Qualify For Duty-Free Treatment
      Under NAFTA .................................................................................16

CONCLUSION............................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Amer. Plywood Assn. v. United States*,
17 C.I.T. 613 (1993) ...............................................................................3, 4, 5

*Aromont USA Inc. v. United States*,
671 F.3d 1310 (Fed. Cir. 2012).................................................................14, 15

*CamelBak Products LLC v. United States*,
649 F.3d 1361 (Fed. Cir. 2011)...................................................................3, 8

*Int'l Bus. Machs. Corp. v. United States*,
152 F.3d 1332 (Fed. Cir. 1998)........................................................................15

*Mita Copystar Am. v. United States*,
21 F.3d 1079 (Fed. Cir. 1994)..........................................................................12

*Orlando Food Corp. v. United States*,
140 F.3d 1437 (Fed. Cir. 1998)........................................7, 9, 10, 12, 14

*R.T. Foods Inc. v. United States*,
757 F.3d  (Fed. Cir. 2014).............................................................10, 11, 12, 15

*R.T. Foods, Inc. v. United States*,
887 F. Supp. 2d 1351 (Ct. Int'l Trade 2012) ..................................................11

*Standard Chlorine Chem Co. v. United States*,
725 F. Supp. 539 (Ct. Int'l Trade 1989) ..........................................................5

*Value Vinyls, Inc. v. United States*,
568 F.3d 1374 (Fed. Cir. 2009).......................................................................10

**Harmonized Tariff Schedule Of The United States**

EN 21.06 .................................................................................................. 12, 14

GN 12 ............................................................................................................. 16

GRI 1.......................................................................................................... *passim*

GRI 3.......................................................................................................... 2, 6, 7, 8

GRI 3(b)...................................................................................................... 1, 2, 6

GRI 3(c)...................................................................................................... 1, 2, 6

GRI 6 ............................................................................................. 7, 8, 9

Heading 0710 ...................................................................................... 7

Heading 0811 .............................................................................. *passim*

    Subheading 0811.90.80 ..................................................................... 8

Heading 2103 .................................................................................... 10

Heading 2106 .............................................................................. *passim*

    Subheading 2106.90.48 ................................................................... 14

    Subheading 2106.90.52 ................................................................... 14

    Subheading 2106.90.54 ................................................................... 14

    Subheading 2106.90.58 ................................................................... 13

    Subheading 2106.90.62 ................................................................... 13

**<u>Other Statutes</u>**

Dictionary Act, 1 U.S.C. § 1 .................................................................. 4

**<u>Regulations</u>**

19 C.F.R. § 102 .................................................................................. 16

19 C.F.R. § 102.1(n) ........................................................................... 17

19 C.F.R. § 102.1(n)(6) ....................................................................... 17

19 C.F.R. § 102.1(n)(7) ....................................................................... 17

19 C.F.R. § 102.11 .............................................................................. 16

19 C.F.R. § 177.7(b) ............................................................................. 8

**<u>Other Authorities</u>**

HQ H307154, dated February 07, 2020 ................................................... 8

Merriam Webster definition of "gelatin," available at https://www.merriam-
    webster.com/dictionary/gelatin ..................................................... 13

Merriam-Webster definition of "fortify," available at https://www.merriam-
    webster.com/dictionary/fortify ...................................................... 14

Webster's New World Dictionary (Third College Edition 1988) definition of
  "fruit" .................................................................................................... 4, 5, 6

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HON. STEPHEN ALEXANDER VADEN, JUDGE

| | | |
|---|---|---|
| _____ | : | |
| NATURE'S TOUCH FROZEN FOODS | : | |
| (WEST) INC., | : | |
| | : | |
| Plaintiff, | : | Court No. 20-00131 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF
DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Defendant, the United States (the Government), respectfully submits this reply

memorandum in further support of our cross-motion for summary judgment.  For the

reasons stated below, and in our opening brief (Def. Br.), we respectfully request that the

Court grant defendant's cross-motion for summary judgment, deny plaintiff's competing

motion, and dismiss this action.

## <u>INTRODUCTION</u>

This case involves the tariff classification of various frozen mixes imported into

the United States from Canada.  In our opening brief, we demonstrated that the all-fruit

mixes at issue are classifiable under the *eo nomine* provision for frozen "[f]ruit" in

Heading 0811, HTSUS, pursuant to GRI 1.  For the frozen fruit and vegetable mixes at

issue, we demonstrated that the different components are *prima facie* classifiable in

different provisions, and that determining the appropriate heading therefore requires an

essential character analysis pursuant to GRI 3(b).  For all of the products at issue, GRI

3(c) determines the appropriate subheading, because no subheading covers all of the

individual ingredients (ruling out classification under GRI 1), and no ingredient imparts the mixes' essential character (ruling out classification under GRI 3(b)).

We also demonstrated in our opening brief that none of the products at issue constitute "food preparations" of Heading 2106, HTSUS. We explained that none of the ingredients undergo the level of processing that is typical of "food preparations," nor are the products destined for a specific use. Finally, we demonstrated that even if the Court finds that the products are properly classified in Heading 2106, HTSUS, they still would not qualify for duty-free treatment under NAFTA, because plaintiff has not demonstrated that the goods qualify to be marked, properly, as products of Canada.

In response, plaintiff argues that once the imported products' raw ingredients are mixed together, they no longer fall within the *eo nomine* provision for "[f]ruit," *see* Plaintiff's Reply Brief (Pl. Reply) at 8-11, and that GRI 3(b) and (c) also preclude interpreting this provision to cover "mixtures" of fruit. *Id.* at 9-10. Plaintiff also argues that resort to GRI 3 is "inappropriate," because classification in this case can be resolved pursuant to GRI 1. *Id.* at 1-2. In addition, plaintiff argues that nothing requires a food preparation to involve "significant processing beyond simply mixing fresh food ingredients," *see id.* at 14 (citing Def. Br. at 30), and that "food preparations" need not have "a *single* specific use." *Id.* at 13 (emphasis in original). Finally, plaintiff argues that if classification under Heading 2106, HTSUS is appropriate, its goods qualify for an exception to NAFTA's marking rules, and, as a result, for preferential duty-free treatment. *Id.* at 15-18.

For the reasons explained below, and in our opening brief, plaintiff misinterprets the plain meaning of the term "[f]ruit" in Heading 0811, HTSUS, which is an *eo nomine*

provision covering frozen fruits (both singular and plural), including the imported frozen

mixes of this case, and it oversimplifies the definition of "food preparations" in Heading

2106, HTSUS.  As a result, the Court should find that all of the products at issue are

properly classified in Heading 0811, HTSUS, grant our cross-motion for summary

judgment and dismiss this case.  Even if the Court finds that the products at issue are

properly classified in Heading 2106, HTSUS (it should not), the Court should find that

NAFTA's Preference Override rule does not apply, and that plaintiff's goods are not

eligible for duty-free treatment.

1.  **THE PRODUCTS AT ISSUE ARE PROPERLY CLASSIFIED IN
    HEADING 0811, HTSUS**

In our opening brief, we explained that the *eo nomine* provision for "fruit" in

Heading 0811, HTSUS covers all types of fruit, including frozen mixes.  Plaintiff raises

myriad arguments to the contrary, but none has merit.

a.  **Plaintiff Misinterprets The *Eo Nomine* Provision For Frozen "Fruit"
    In Heading 0811, HTSUS**

First, plaintiff argues that "once an article becomes a 'mixture' with something

else, it *ceases* to be covered by an *eo nomine* provision."  Pl. Reply at 8 (emphasis in

original).  While plaintiff acknowledges that *eo nomine* provisions include "all forms" of

the named article, *see id.* (quoting *Camelbak Products LLC v. United States*, 693 F.3d

1361, 1364-65 (Fed. Cir. 2011)), it argues that this rule "does not expand [the] tariff

provisions to include something mixed or joined with the named article, which is not that

named article."  *Id.* (citing *Amer. Plywood Assn. v. United States,* 17 C.I.T. 613 (1993)).

Here, nothing is "mixed or joined . . . which is not [the] named article."  *Id.*  Rather, all

the individual types of fruit in the imported mixes *are* the named article, *i.e.,* they are all, individually, "fruit." *See* Plaintiff's Rule 56.3 at ¶¶ 11-24; Heading 0811, HTSUS.

Moreover, plaintiff's argument runs counter to the common meaning of the term "fruit," which includes plural forms of the term. Def. Br. at 12-13 (quoting WEBSTER'S NEW WORLD DICTIONARY at p. 543, entry for "fruit" (Third College Edition 1988) (defining fruit, in relevant part, as "the edible plant structure of a mature ovary of a flowering plant, usually eaten raw: …," and indicating that the plural form of "fruit" is either "fruit" or "fruits.")). We also cited the Dictionary Act (1 U.S.C. § 1) to show that the tariff term for "fruit" covers the plural form of the word, *see* Def. Br. at 13, not that it must be "construed as meaning multiple, different types of fruit," as plaintiff claims. Pl. Reply at 5, fn 2. We therefore demonstrated that the broad language of Heading 0811, HTSUS and basic rules of statutory construction establish that the all-fruit mixes at issue meet the common meaning of "[f]ruit." Def. Br. at 12-13.

In addition, the present case differs from the *American Plywood* case cited by plaintiff. *See* Pl. Reply at 8-9 (citing *Amer. Plywood Assn. v. United States,* 17 C.I.T. 613 (1993)). In that case, the Court limited the *eo nominee* provision for plywood to "basic, fungible material," as plaintiff itself notes. *Id.* (citing *Amer. Plywood,* 17 C.I.T. at 616). The product at issue in *American Plywood*, however, had been processed through multiple steps that prepared it "solely for use as exterior siding." *Amer. Plywood Assn,* 17 C.I.T. at 617. As a result, the Court found that it was "advanced beyond the basic, fungible material known as plywood," and it was not classifiable in the *eo nomine* provision for that article. *Id.* Here, on the other hand, the imported fruit mixes are not advanced beyond the named article (frozen "fruit," *see* Heading 0811, HTSUS), nor are

they limited to a single use like the product at issue in *American Plywood*.  Rather, as we explained in our opening brief, the imported products may be widely used in everything from smoothies to sauces, or thawed and eaten directly, *see* Def Br. at 33 (citing Pl. Ex. A at 71:13-16; Pl. Ex. B at Response No. 5, 10), just like any frozen "fruit" of Heading 0811, HTSUS.

Plaintiff also relies on *Standard Chlorine Chem Co. v. United States*, 725 F. Supp. 539 (Ct. Int'l Trade 1989) to argue that "two differently classified items, when combined together, do not fall into a single *eo nomine* tariff provision."  Pl. Reply at 10.  This case, however, supports our interpretation of Heading 0811, HTSUS.  *Standard Chlorine* involved classification under the HTSUS's predecessor statute of a product consisting of two isomers of trichlorobenzene.  The Court found that because the product's "separate trichlorobenzene isomers are individually dutiable under a single *eo nomine* provision," the mixture of two isomers was "neither more nor less than what is described by the *eo nomine* tariff provision."  725 F. Supp. at 541.  Likewise, each separate fruit in the imported fruit mixes is classifiable in the *eo nominee* provision for frozen "fruit," and the mixes of multiple fruits are "neither more nor less" than the article described by this provision.  *Id.*

Although *Standard Chlorine* holds that "the rule of *eo nomine* classification [does] not extend to mixtures, if the items mixed, considered separately, fall in separate headings of the HTSUS," *see* Pl. Reply at 10, this holding is inapplicable here, because the individual fruits in the products at issue are all classified in Heading 0811, HTSUS. And, once again, to find otherwise would run counter to the common meaning of fruit.

*see* Def. Br. at 12-13 (WEBSTER'S NEW WORLD DICTIONARY at p. 543, entry for "fruit" (Third College Edition 1988)).

Next, plaintiff argues that GRI 3(b) and (c) preclude interpreting Heading 0811 to cover "mixtures" of fruit.  Specifically, plaintiff argues that "the HTSUS teaches that 'mixtures' are to be classified according to GRI 3(b), as if they consisted solely of that material or ingredient which imparts the mixture's 'essential character' or, failing that, under GRI 3(c), as though they consisted solely of that material or ingredient which occurs last in numerical order."  Pl. Reply at 9-10.  However, GRI 3 only applies to goods of more than one material or substance if they are "*prima facie* classifiable under two or more headings."  GRI 3.  In the case of the all-fruit mixes, all the individual fruits are classifiable under Heading 0811, HTSUS, and classification at the heading level can be resolved pursuant to GRI 1.

Finally, plaintiff uses a hypothetical to try and support its interpretation of Heading 0811, but it misses the mark.  Specifically, plaintiff states that "[a]n *eo nomine* provision for 'strawberries' will include all forms of strawberries – but it will not cover strawberries mixed with blueberries."  Pl. Reply at 9.  Plaintiff notes that strawberries and blueberries are classified in different subheadings of Heading 0811, HTSUS to argue that a single provision "would not cover a mixture of strawberries with blueberries.. ."  Pl. Reply at 11.  Here, however, plaintiff seeks to use the analysis of the subheadings at issue to limit the broad *eo nomine* provision for "fruit" in Heading 0811, HTSUS.  However, as we explain in our opening brief and in the next section, the analysis of the competing *headings* in this case is separate from the analysis of the competing *subheadings*.  *See* Def. Br. at 18, 25-26; *see also* GRI 1, 6.  The fact that no single subheading of Heading

0811 covers all the imported mixes' individual ingredients simply means that resort to GRI 3 is necessary to determine the appropriate subheading; it does not remove frozen "fruit" from the broad *eo nomine* provision in Heading 0811, HTSUS.

      **b.**  <u>**Plaintiff Misunderstands Our Application Of The General Rules Of Interpretation**</u>

Plaintiff challenges our application of the GRIs, claiming that resort to GRI 3 is "inappropriate" because classification in this case can be resolved pursuant to GRI 1.  Pl. Reply at 2.  Plaintiff never explains, however, how the fruit and vegetable mixes at issue can be classified pursuant to GRI 1.  As we explained in our opening brief, the fruit ingredients in these products are covered *eo nomine* by Heading 0811, HTSUS (which covers frozen "[f]ruit"), and the vegetable ingredients are covered *eo nomine* by Heading 0710, HTSUS (which covers "[v]egetables (uncooked or cooked by steaming or boiling in water), frozen.").  Def. Br. at 25-26.  Because multiple headings cover the separate ingredients in the fruit and vegetable mixes at issue, these products cannot be classified pursuant to GRI 1, and resort to the later GRIs is appropriate.

As for the all-fruit mixes, plaintiff incorrectly states that "none of [our] proposed classifications rely upon a GRI 1 reading of heading 0811, HTSUS."  Pl. Reply at 5.  In fact, we agree that GRI 1 determines classification of these products at the heading level, because they are covered by the *eo nomine* provision for frozen "fruit."  *See* Def. Br. at 12-17.

However, the GRI analysis restarts at the subheading level.  *See Orlando Food Corp.*, 140 F.3d 1437, 1400 (Fed. Cir. 1998) ("Only after determining that a product is classifiable under [an HTSUS] heading should the court look to the subheadings to find the correct classification for the merchandise."); *see also* GRI 6 (requiring that "the

classification of goods in the subheadings of a heading shall be determined according to the terms of those subheadings and any related subheading notes and, *mutatis mutandis*, to the above rules [GRI 1 to GRI 5], on the understanding that only subheadings at the same level are comparable.").  As we explained in our opening-motion, GRI 1 cannot resolve the present dispute at the subheading level, because no subheading describes the imported products "in whole."  Def. Br. at 18 (citing *CamelBak*, 649 F.3d at 1364).  Indeed, the subheadings of Heading 0811.90, HTSUS provide for individual types of fruit, and subheading 0811.90.80, HTSUS provides for "[o]ther," which covers individual types of fruit not enumerated in the preceding subheadings.  *Id.*

Because GRI 1 cannot resolve classification of the imported products at the subheading level, the Court must apply the remaining GRIs in order, despite plaintiff's arguments to the contrary.  We therefore properly rely on GRI 3 at the subheading level, as explained in our cross-motion.  Def. Br. at 18-19, 26.

In discussing classification at the subheading level, plaintiff also argues that it is bad faith to await the outcome of this case before revoking HQ H307154, because we acknowledge that this ruling employed incorrect reasoning, and it concerned products that are not at issue in this case.  Pl. Reply at 6.  Pursuant to 19 C.F.R. § 177.7(b), however, the relevant consideration is whether pending litigation implicates an "*issue*" pending before this Court, not an identical *product*.  Because the classification dispute in this case—in particular, the correct application of the GRIs—is directly at issue in HQ H307154, CBP cannot modify HQ H307154 while this issue is pending before the Court.

Finally, in another critique of our GRI analysis, plaintiff argues that interpreting "fruit" to cover plural forms of the word is directly contradictory to applying GRI 3 at the

subheading level.  Pl. Br. at 5, fn 2.  Plaintiff appears to be making the argument that a heading cannot cover mixes if its subheadings only cover single items.  *Id.* Here, however, plaintiff essentially urges the Court to use the language of Heading 0811 to interpret the subheadings below, instead of restarting the GRI analysis at the subheading level as the GRIs instruct.  *See* GRI 6; *see also Orlando Food Corp.*, 140 F.3d at 1400.

For these reasons, and those set forth in our opening brief, all of the products at issue are properly classified in Heading 0811, HTSUS, in the various subheadings we previously identified.  Def. Br. at 21-23, 28.

## 2.   THE PRODUCTS AT ISSUE ARE NOT "FOOD PREPARATIONS"

Plaintiff claims that the imported merchandise "unquestionably" qualifies as "food preparations' because "[t]hey are designed to be consumed as a food, have nutritional value, and are typically used as an ingredient in the making of other food products."  Pl. Reply at 2.  For the reasons below, plaintiff's arguments lack merit.

### a.   Plaintiff Wrongly Suggests That Our Cited Authority Does Not Support Our Proffered Definition Of "Food Preparations"

Plaintiff emphasizes in its opening brief, and in its reply, that the products at issue can be consumed as food.  *See, e.g.*, Pl. Br. at 16 (the products at issue "are designed to be consumed as a food"); *id.* at 17-18 (setting forth the definition of "food"); *id.* at 18, fn 10 ("As further evidence that the instant merchandise is 'food,' as required by law, all packages of the subject fruit products contain a disclosure of nutritional values."); *see also* Pl. Reply at 2 (the products at issue "are designed to be consumed as a food"); *id.* at 11 (the products at issue are "suitable for human consumption.").  That the products at issue constitute "food," however, is not in dispute.

Consequently, determining the meaning of "preparations" as it relates to the term "food preparations" is the critical inquiry for this case—not determining the meaning of "food." To that end, binding authority defining "preparations" is directly relevant to the Court's analysis. For this reason, our opening brief discussed *Orlando Food Corp.*, a case in which the Court of Appeals for the Federal Circuit ascertained the meaning of this term. 140 F.3d at 1441. Discussing *Orland Food Corp.* was not "disingenuous," *see* Pl. Reply at 12-13, even though it involves the phrase "sauces and preparations therefor" in Heading 2103, not Heading 2106, HTSUS. In fact, "the meaning of the same term used in different parts of the same statute is presumed to be the same." *Value Vinyls, Inc. v. United States*, 568 F.3d 1374, 1379 (Fed. Cir. 2009).[1] Plaintiff points to no reason why the meaning of "preparations" articulated in *Orlando Food Corp.* should not apply to both the "sauces and preparations" of Heading 2103 and the "food preparations" of Heading 2106.

Plaintiff also critiques what it calls our "substantial reliance" on *R.T. Foods, Inc. v. United States*, 757 F.3d 1349 (Fed. Cir. 2014). Pl. Reply at 4. As an initial matter, we relied on *R.T. Foods* because it is "particularly instructive to determining the scope of Heading 0811, HTSUS." Def. Br. at 15. Specifically, the Federal Circuit analyzed whether a product undergoes a substantial transformation to determine whether it falls within the scope of an *eo nomine* provision. *See* Def. Br. at 15 (discussing *R.T. Foods,*

---

[1] *But see Value Vinyls,* 568 F.3d at 1379-1380, in which the Court held that an earlier definition of an HTSUS provision is "not immune from review and reapplication for different HTSUS provisions and products," taking into account the "nature and structure of the statute, the provisions in which the term is used, the possibility of error in the prior construction, and any other relevant considerations in the particular case."

757 F.3d at 1356, which held that the product at issue did not possess "a unique identity substantial enough to justify removal from the scope of the *eo nomine* provision," and "[a]bsent such a substantial transformation," fell "within the scope of heading 2004."). We argued in our opening brief that because the raw fruit ingredients in the products at issue are simply cut and comingled—not substantially transformed—they fall within the scope of the *eo nomine* provision for "[f]ruit."  Def. Br. at 15-16.

Later in our brief, we also cite the trial court's decision in *R.T. Foods* to set forth the criteria for classification as a "food preparation" of Heading 2106.  Def. Br. at 29 (citing *R.T. Foods, Inc. v. United States*, 887 F. Supp. 2d 1351, 1358 (Ct. Int'l Trade 2012) (food preparations must (1) meet the definition of the term and (2) not be "elsewhere specified" in the tariff statute)).  Plaintiff attempts to distinguish *R.T. Foods* on the basis that the products at issue did not meet the second criteria, as they were "elsewhere specified" in the tariff statute.  Pl. Reply at 4.  That the specific products in *R.T. Foods* were "elsewhere specified" does not make the case's legal analysis any less relevant for determining the scope of the competing tariff provisions here.  Plaintiff's attempt to distance itself from this case is therefore without support.

### b. Plaintiff's Other Objections To Our Interpretation Of "Food Preparations" Fail

As a threshold argument, plaintiff says the substantial transformation test is "not relevant to determining whether an article is considered a 'preparation' for tariff classification purposes," and that it is typically used to determine country of origin for preferential tariff purposes.  Pl. Reply at 15.  However, we did not invoke the test typically used in country-of-origin determinations.  Rather, we argued that "[j]ust like the vegetable mixtures in *R.T. Foods,* none of their ingredients [in the frozen fruit mixes at

issue] are substantially transformed such that they are removed from the *eo nomine* provision for 'fruit,'" *see* Def. Br. at 37 (quoting *R.T. Foods*, 757 F.3d at 1349), and similarly, none of the ingredients undergo the level of processing typical of other food preparations.  Def. Br. at 38.

Plaintiff also argues that there is "no required, minimum or mandated type of 'preparation' required for a product to be classified under heading 2106."  Pl. Reply at 14-15.  While the tariff statute does not specify a "minimum" level of preparation for "food preparations" of Heading 2106, as we explained in our opening brief, the Explanatory Notes (ENs) and relevant case law provide an indication of its scope.  Def. Br. 29-37.  Specifically, *Orlando Food Corp.* establishes that "preparations," including food preparations, must be destined for a "*specific* use," *see* Def. Br. at 30 (quoting *Orlando Food Corp.*, 140 F.3d at 1441) (emphasis in Def. Br.), and the relevant ENs make clear that "food preparations" of Heading 2106, HTSUS require significant processing beyond simply mixing fresh food ingredients.  *See* Def. Br. at 30-32 (discussing EN 21.06).

Plaintiff tries to steer the Court away from the EN exemplars of "food preparations," cautioning against using the ENs to "define or limit the scope of a tariff heading."  Pl. Reply at 14.  However, clarifying the scope of a tariff heading is the exact purpose of the ENs.  *See Mita Copystar Am. v. United States*, 21 F.3d 1079, 1082 (Fed. Cir. 1994) ("[A] court may refer to the Explanatory Notes of a tariff subheading, which do not constitute controlling legislative history but nonetheless are *intended to clarify the scope of HTSUS subheadings* and to offer guidance in interpretating subheadings.") (emphasis added).

12

Plaintiff next takes issue with our assertion that food preparations "require significant processing beyond simply mixing fresh food ingredients," *see* Pl. Reply at 14 (citing Def. Br. at 30), claiming that Heading 2106, HTSUS "abounds with examples of natural products mixed together." Pl. Reply at 14. The so-called "examples" plaintiff cites, however, are tariff provisions, not EN exemplars, or examples of products that have actually been classified as "food preparations." *Id.* Even if the cited tariff provisions could be interpreted as examples of "food preparations," none actually refutes our interpretation of this term.

For example, plaintiff cites mixtures of sugar and gelatin (subheading 2106.90.58, HTSUS) and mixtures of gelatin and milk solids (subheading 2106.90.62, HTSUS). *Id.* at 14. However, gelatin is not natural in the same manner as fruit and vegetables. Rather, gelatin is defined, in relevant part, as: a "glutinous material obtained from animal tissues by boiling *especially*: a colloidal protein used as a food, in photography, and in medicine." *See Meriam Webster* definition of "gelatin," available at https://www.merriam-webster.com/dictionary/gelatin. Because animal tissue must be significantly processed to obtain gelatin, these examples do not demonstrate that "food preparations" can consist only of "natural products mixed together," as plaintiff claims. Pl. Reply at 14. Moreover, gelatin and other ingredients could react when mixed and, therefore, be transformed in the process. *See*, *e.g.* P.A. Williams & G.O. Phillips, GUMS AND STABILISERS FOR THE FOOD INDUSTRY 25-30 (2004) (describing properties of "gelling agents," including gelatin, and the interaction that may occur between gelling agents and products such as milk).

13

Similarly, plaintiff points to several subheadings under the provision for "[f]ruit or vegetable juices, fortified with vitamins or minerals." *Id.* (citing subheadings 2106.90.48, 2106.90.52, 2106.90.54, HTSUS). However, the very act of fortifying a juice with vitamins or minerals transforms it into something more than the combination of its fresh ingredients. *See Meriam Webster* definition of "fortify," available at https://www.merriam-webster.com/dictionary/fortify (definition d.2: "to enrich (food) by adding ingredients (such as vitamins or minerals) to improve the nutritional value"). In short, none of the processing of the goods within plaintiff's cited tariff provisions are comparable to the minimal a level of processing of the imported mixes, *i.e.*, cutting, freezing, and mixing fresh ingredients.

Plaintiff also argues that "food preparations" need not have "a *single* specific use." Pl. Reply at 13 (emphasis added). We never argue, however, that food preparations must have a "single" use. Rather, food preparations must be destined for a "*specific* use," as opposed to general use. Def. Br. at 30 (emphasis in original) (citing *Orlando Food Corp.*, 140 F.3d at 1441). Stated differently, a food preparation is prepared *for* something, not simply consumed generally as food. *See Orlando Food Corp.*, 140 F.3d at 1441 (food preparation "is destined for a specific use," and "specially prepared, or made up for its appropriate use or application . . ."). For example, "[f]lavouring powders for making beverages" are specifically prepared for beverages. EN 21.06. Likewise, in the *Aromont* case cited by plaintiff, *see* Pl. Reply at 13, the imported "finished flavoring products" were specifically prepared as flavoring for recipes. *Aromont USA Inc. v. United States*, 671 F.3d 1310 (Fed. Cir. 2012)). While the

14

recipe itself could vary, the role of the finished flavoring products—*i.e.*, as something to be "added in small amount[s] to enhance flavor"—did not change. *Id.* at 1315.

In the case of the imported mixes, on the other hand, the products are not destined for a *specific* use.  Rather, they may be used in everything from smoothies to sauces to yogurt topping.  Pl. Ex. B at Response No. 10.  Consumers can also "thaw the fruit and eat them directly," or develop entirely new applications.  Pl. A at 71:13-16, 124:20-125:12; Pl. Ex. B at Response No. 5.  In sum, the imported mixes are not destined for a specific use, as required for classification as a "food preparation."

Finally, as explained in our opening brief, a "food preparation" may only be classified in Heading 2106, HTSUS if it is "not elsewhere specified or included."  *R.T. Foods*, 757 F.3d at 1354 (quoting *Int'l Bus. Machs. Corp. v. United States,* 152 F.3d 1332, 1338 (Fed. Cir. 1998)).  Plaintiff claims that this second criteria is satisfied in the present case, because we have "not identified any other tariff provision which covers these mixtures."  Pl. Reply at 3.  To the contrary, as we explain above and in our opening brief, the all-fruit mixes are covered by the *eo nomine* provision for frozen "[f]ruit," pursuant to GRI 1.  *See supra* at 3-9; *see also* Def. Br. at 15-17.

However, the Court does not need to reach the second criteria for classification in Heading 2106 (*i.e.*, not specified "elsewhere" in the tariff statute), because the first criteria is not satisfied (*i.e.*, meeting the definition of a "food preparation").[2]  Indeed, for

---

[2] We note plaintiff's argument that even an overly broad interpretation of the term "food preparation" would not expand the reach of Heading 2106, HTSUS, as it is a basket provision that only covers merchandise not "elsewhere specified."  Pl. Reply at 5 (responding to our argument at Def. Br. at 36).  Nevertheless, plaintiff's interpretation of "food preparation" is wrong, for all the reasons explained herein.

all of the reasons explained above, and set forth in our opening brief, none of the products at issue are "[f]ood preparations" for tariff classification purposes. *See supra* at 10-16; Def. Br. at 29-37.

### 3. The Imported Mixes Do Not Qualify For Duty-Free Treatment Under NAFTA

We explained in our opening brief that even if the Court finds that the products at issue are classifiable in Heading 2106, HTSUS (it should not), and plaintiff demonstrates that the goods satisfy the tariff shift rule for origination set forth in General Note (GN) 12, they are still not eligible for duty-free treatment. Def. Br. at 39. In that case, plaintiff would still have the burden of satisfying NAFTA's marking requirements set forth in 19 C.F.R. § 102, as GN 12 also requires a good to qualify to be marked as a good of Canada to qualify for duty-free treatment. *Id.* (discussing General Note 12(a)(i) and (b)).

In response, plaintiff claims that NAFTA's marking requirements would not apply. Pl. Reply at 15-18. Specifically, plaintiff claims that pursuant to the NAFTA Preference Override rule, "where a good qualifies as a NAFTA 'originating' good, it will be deemed to be subject to marking as a NAFTA country good without regard to the NAFTA Marking Rules.[3]" Pl. Reply at 18. While the Preference Override rule does allow a good to be considered a good of a NAFTA country if it is considered originating,[4]

---

[3] Plaintiff incorrectly suggests that the Preference Override rule is separate from the NAFTA Marking Rules. The Preference Override rule is set forth in 19 C.F.R. § 102, and as such, is part of the NAFTA Marking Rules.

[4] In addition, upon making a NAFTA preference claim for duty-free treatment pursuant to the Preference Override rule, 19 C.F.R. § 102 instructs an importer to first demonstrate that it has not satisfied the Marking Rules under § 102.11 (a) or (b). Plaintiff has made no such demonstration, instead proceeding directly to the Preference Override rule.

plaintiff ignores the rule's threshold requirement, specifically, that it only applies if more than "minor processing" occurs in a NAFTA country, as defined in 19 C.F.R. § 102.1(n).[5]

Plaintiff has not, and cannot, demonstrate that "more than minor processing" occurs in a NAFTA country, *i.e.*, in Canada.  In fact, the definition of "minor processing" includes "sorting," "putting up in measured doses" and "packaging."  19 C.F.R. § 102.1(n)(6) and (7).  These are the exact type of processing steps undertaken in plaintiff's "packing facility" in Canada.  *See* Plaintiff's Rule 56.3 Statement at ¶¶ 4-7 (raw ingredients are sorted, combined in specific proportions and packaged in retail bags); *see also* Pl. Ex. A at 119:18-120:16123:1-21; Def. Ex. 1 at 3.

In sum, the Preference Override rule does not apply because only "minor processing" has occurred in Canada.  As a result, even if the Court were to find that the products at issue are classifiable in Heading 2106, HTSUS, plaintiff would still not qualify for duty-free treatment because it would not have met its burden to satisfy NAFTA's marking requirements.

---

[5] 19 C.F.R. § 102.1(n) defines "minor processing" as follows:

(1) Mere dilution with water or another substance that does not materially alter the characteristics of the good;
(2) Cleaning, including removal of rust, grease, paint, or other coatings;
(3) Application of preservative or decorative coatings, including lubricants, protective encapsulation, preservative or decorative paint, or metallic coatings;
(4) Trimming, filing or cutting off small amounts of excess materials;
(5) Unloading, reloading or any other operation necessary to maintain the good in good condition;
(6) Putting up in measured doses, packing, repacking, packaging, repackaging;
(7) Testing, marking, sorting, or grading;
(8) Ornamental or finishing operations incidental to textile good production designed to enhance the marketing appeal or the ease of care of the product, such as dyeing and printing, embroidery and appliques, pleating, hemstitching, stone or acid washing, permanent pressing, or the attachment of accessories notions, findings and trimmings; or
(9) Repairs and alterations, washing, laundering, or sterilizing.

**<u>CONCLUSION</u>**

For the foregoing reasons, this Court should grant the Government's cross-motion for summary judgment, deny plaintiff's motion for summary judgment, and dismiss this case.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

<u>/s/ Justin R. Miller</u>
By:    Justin R. Miller
       Attorney-In-Charge
       International Trade Field Office

<u>/s/ Jamie L. Shookman</u>
Jamie L. Shookman
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza – Suite 346
New York, New York 10278
(212) 264-2107
Attorneys for Defendant

Of Counsel:
FARIHA B. KABIR
Office of the Assistant Chief Counsel
International Trade Litigation
U.S. Customs and Border Protection

Dated: July 18, 2022

## **CERTIFICATE OF COMPLIANCE**

I, Jamie L. Shookman, an attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Brach, International Trade Field Office, who is responsible for the Government's reply memorandum in further support of our cross-motion for summary judgment, dated July 18, 2022, relying upon the word count feature of the word processing program used to prepare the memorandum, certify that this memorandum complies with the word count limitation under the Court's chambers procedures, and contains 5,074 words.

/s/ Jamie L. Shookman