# NEVILLE PETERSON LLP

### COUNSELLORS AT LAW

JOHN M. PETERSON (NY BAR)
RICHARD F. O'NEILL (WA & DC BARS)
MICHAEL K. TOMENGA (DC BAR)
LAWRENCE J. BOGARD (DC BAR)
JOHN A. DETZNER (DC & IL BARS)
JOHN B. TOTARO, JR. (DC BAR)
PATRICK B. KLEIN (NY BAR)

OF COUNSEL:
MARIA E. CELIS (NY & DC BARS)
JOHN P. DONOHUE (DC & PA BARS)
DONALD L. FISCHER (GA BAR)

ONE EXCHANGE PLAZA
55 BROADWAY, SUITE 2602
NEW YORK, NEW YORK 10006

——

T: (212) 635-2730 • F: (212) 635-0113
E: info@npwny.com

www.npllptradelaw.com

1310 L STREET, N.W., SUITE 300
WASHINGTON, DC 20005
T: (202) 861-2959

701 FIFTH AVE
SUITE 4200-2159
SEATTLE, WA 98104
T: (206) 905-3648

TWO LOGAN SQUARE
100 N. 18TH STREET, SUITE 333
PHILADELPHIA, PA 19103
T: (267) 850-8730

March 13, 2023

Our File: 3041-01

**BY CM/ECF**

The Honorable Stephen Alexander Vaden
United States Court of International Trade
One Federal Plaza
New York, New York 10007

Re:   *Nature's Touch Frozen Foods (West) Inc. v
      United States*, Court No. 20-00131

Dear Judge Vaden,

On behalf of Nature's Touch Frozen Foods (West) Inc. ("Nature's Touch"), the plaintiff in the above-referenced case, we submit this letter brief in response to the Court's Order of February 16, 2023. *See* ECF 42. In that order, the Court requested that the parties brief the question, "whether the merchandise at issue can or cannot be classified under 0811.90.80," Harmonized Tariff Schedule of the United States ("HTSUS"), assuming "that the merchandise has already been classified under heading 0811, HTSUS ("Fruit...frozen") and that the only task remaining before the Court is to select the proper six and eight-digit subheadings."

Plaintiff concurs with the defendant that subheading 0811.90.80, HTSUS does not cover the merchandise at issue in this case (various frozen food mixtures). We agree with defendant that subheading 0811.90.80, HTSUS which provides for "Other" frozen fruits, only encompasses individual types of fruit not enumerated in the subheadings which precede it.

Subheading 0811.90.80, HTSUS provides for:

0811            Fruit and nuts, uncooked or cooked by steaming or boiling in water, frozen, whether or not containing added sugar or other sweetening matter:

***

0811.90            Other:

0811.90.80            Other

The six-digit subheading 0811.90, HTSUS is preceded by two six-digit heading which describe particular fruits (e.g., subheading 0811.10, HTSUS "Strawberries", 0811.20, HTSUS "Raspberries, blackberries, mulberries, loganberries, black, white or red currants and gooseberries (other than kiwi fruit)." Frozen fruits not described in subheadings 0811.10 or 0811.20, HTSUS fall to be classified in the "Other" provision of subheading 0811.90, HTSUS.

Appearing under the six digit subheading 0811.90, HTSUS are various 8-digit "tariff rate" subheadings[1] which describe particular types of fruits not described in subheading 0811.10, HTSUS and 0811.20, HTSUS. These include, for example, subheadings 0811.90.10, HTSUS ("Bananas and plantains"), 0811.90.20, HTSUS ("Blueberries"), 0811.90.30, HTSUS ("Coconut meat"). The tariff rate subheadings specify duty rates for the items covered thereunder.

The provisions of the HTSUS are interpreted according to the General Rules of Interpretation ("GRIs"). The most important of these rules is GRI 1, which provides:

1.  The table of contents, alphabetical index, and titles of sections, chapters and sub-chapters are provided for ease of reference only; **for legal purposes,**

---

[1] The Harmonized System Nomenclature, on which the HTSUS is based, is developed and maintained by the World Customs Organization ("WCO") classifies goods to the six-digit "international level." All signatories to the international Harmonized System Convention agree to implement the nomenclature uniformly to the six-digit "international level," together with any changes the WCO may make as a result of 5-year review cycles. *See, e.g., Victoria's Secret Direct LLC v. United States,* 908 F. Supp. 2d 1332, 1245 (Ct. Int'l Tr. 2013).

Signatories to the Convention may subdivide the 6-digit subheadings into "tariff rate" subheadings, designed to identify particular goods and to assign tariff rates to them.

The Harmonized Tariff Code of the United States Annotated ("HTSUSA"), compiled by the United States International Trade Commission, further subdivides the eight-digit tariff rate subheadings into 10-digit "statistical" subheadings. The statistical subheadings are not part of the statutory text of the tariff. *See* 19 U.S.C. §3004(c).

**classification shall be determined according to the terms of the headings and any relative section or chapter notes** and, provided such headings or notes do not otherwise require, according to the following provisions:

If a product can be classified according to the terms of the headings and any relative section or chapter notes, **then it must be**. *See Lemans Corporation v. United States*, 660 F.3d 1311, 1316 (Fed. Cir. 2011); *Mita Copystar Am. v United States*, 160 F.3d 710, 712 (Fed. Cir. 1998). Resort to the subsequent GRIs is available only when goods are *prima facie* classifiable in two or more headings of the tariff. *Id.* That is not the case here.

GRI 2(a) is a "table-setter" provision which specifies that goods imported unassembled or incomplete, but having the essential character of the assembled or complete article are to be classified as the assembled or complete article. GRI 2(b), another table setter, specifies that tariff headings identifying a particular material or substance apply to goods made in part of that material or substance.

GRI 3 provides rules to be applied "[w]hen, by application of rule 2(b) or for any other reason, goods are, prima facie, classifiable under two or more headings." The government admits that it classified all of plaintiff's frozen fruit mixtures using GRIs 3(b) and (c). *See* ECF 44, at p. 7. This was incorrect, however, as there is a single tariff subheading which describes the goods completely and which can be used to effect classification under GRI 1 – subheading 2106.90.98, HTSUS for "Other food preparations, not elsewhere specified or included."

For tariff purposes a "mixture" is a combination of two or more articles which, had they been imported separately, would have been classified in different headings or subheadings of the tariff. Depending on circumstances, mixtures may be classifiable solely with reference to GRI 1,[2] or may be classified using the interpretive tools of GRI 3.

---

[2] Numerous types of "mixtures" are expressly deemed classifiable by application of GRI 1. *See, e.g., USR Optonix Inc. v. United States*, 362 F. Supp. 2d 1365, 1377-78 (Ct. Int'l Tr. 2005). At the same time, combinations of

In some cases, the drafters of the tariff have explicitly created headings or subheadings for particular "mixtures." Several examples of these "GRI 1 mixtures" are found in chapter 8 of the HTSUS. For example, subheading 0812.90.10, HTSUS provides for "fruit and nuts provisionally preserved, but unsuitable in that state for immediate consumption: Other [than cherries]; mixtures of two or more fruits." Subheading 0813.50.10, HTSUS covers "fruit, dried, other than that of headings 0801 to 0806; mixtures of nuts or dried fruits of this chapter: mixtures of nuts or dried fruits of this chapter." Where a heading or subheading of the HTSUS does not specifically provide for mixtures, then GRI 3(b) and (c) may come into play. The mixture will be classified as if it consisted *solely* of that single component which imparts the "essential character" to the mixture (GRI 3(b)) or, if no "essential character" component can be identified, according to the tariff provision providing for an individual component which occurs last in numerical nature in the tariff). Resort to GRI 3 to classify mixtures is disfavored, since the rule classifies such mixtures in a tariff provision covering only one of the ingredients. But the drafters of the tariff could not have envisioned every possible combination of goods, and so devised GRI 3 to deal with those they did not specifically envision.

Some HTSUS heading or subheadings describe two or more products. However, when two or more products covered by the same tariff provision are imported together, they do not constitute a "mixture." The Court's precedent which best illustrates this principle is *Standard Chlorine Chem. Co. v. United States*, 13 C.I.T. 198 (1989), which concerned the question of whether two isomers of trichlorobenzene, each individually classified in the same tariff heading providing *eo nomine* for trichlorobenzene, should be classified in that provision, or in a provision covering mixtures[3].

---

articles which do not meet GRI descriptions of "mixtures" are not classifiable as "mixtures" under GRI 1. *See, e.g., Rhodia Inc. v. United States,* 441 F. Supp. 2d 1368, 1376 (Ct. Int'l Tr. 2006).

[3] The *Standard Chlorine Chemical* case was decided under the prior Tariff Schedules of the United States ("TSUS"). While decisions under the TSUS are not controlling on HTSUS cases, they are considered persuasive when

The court noted that "mixtures" had historically been viewed as combinations of two or more goods which, if separately imported, would be classified in different tariff provisions. The tariff concept of "mixtures" did not apply where two or more items, classified in the *same* tariff provision, were imported together. Distinguishing other cases classifying goods as "mixtures," the court noted:

> The feature which distinguishes these cases, however, is that, unlike the case at bar where the separate trichlorobenzene isomers are individually dutiable under a single *eo nomine* provision, each of them pertained to a mixture of two or more separate and unique substances, each of which would have fallen under a separate and different *eo nomine* provision if imported alone. **The mixtures of them, as imported, were beyond the scope of those specific provisions, as opposed to the merchandise at bar, which is "neither more nor less than what is described by the *eo nomine* tariff provision"** . . . .

(emphasis added) *Id.* at 201 Thus, if bananas and plantains were imported together, they would not be considered a "mixture" for tariff purposes. They would simply be classified as goods provided for *eo nomine* in HTSUS subheading 0811.90.10. *See e.g., Border Brokerage Inc. v. United States,* 64 Cust. Ct. 331, 337 (1970); *Quong Yuen Shing Co. v. United States,* 31 C.C.P.A. 43, 48 (1943); *United States v. Lobsitz*, 16 Ct. Cust. 475, 477 (1929).

Precedent also establishes that when products classified in two or more tariff provisions are imported together, and are covered by a provision for "mixtures," they must be classified in that mixtures provision. They cannot be treated as "commingled" goods under General Note 3(f) of the HTSUS, and may not be constructively or actually segregated and assessed with duty under provisions covering the individual components of the mixture. *See Amoco Oil Company v. United States*, 749 F.2d 1576, 1580-81 (Fed. Cir. 1984).[4] In this regard, General Note 3(f)(v) of the

---

dealing with the interpretation of similar tariff terms. *See BASF Corporation v. United States*, 30 CIT 227 (2006); *E.M. Chems. Inc. v. United States*, 20 CIT 382, 386 n.5 (1996).

[4] General Note 3(f) to the HTSUS provides that where goods classified in two or more provisions are "commingled," they are subject to duty at the highest rate applicable to any of the commingled items. However, before

HTSUS provides that "The provisions of subdivision (f) of this note shall apply only in cases where the tariff schedule does not expressly provide a particular tariff treatment for commingled goods." In this case, the commingled goods answer to the description of "other" food preparations of HTSUS subheading 2106.90.98.[5]

Returning to the Court's initial inquiry which prompted supplemental briefing, HTSUS provisions naming two or more articles, such as HTSUS subheadings 0811.90.10 (covering "Bananas and plantains") and 0811.90.25 (covering "Cashew apples, mameyes colorados, sapodillas, soursops and sweetsops") are not "mixtures" provisions. They are merely provisions which *eo nomine* describe two or more items. Plaintiff concurs with defendant that HTSUS subheading 0811.90.80, covering "Other" frozen fruits, covers individual frozen fruits not mention in the eight-digit subheadings which preceded it. It follows that the frozen fruit mixtures at bar are not classifiable thereunder. As plaintiff has indicated, GRI 1 requires that the frozen fruit mixtures be classified under the only HTSUS provision which completely describes them, the subheading 2106.90.98, HTSUS provision for "Other" food preparations, not elsewhere specified or included."[6]

---

assessing duty in this way, Customs must provide the importer with a "notice of commingling" and give the importer the opportunity to actually or constructively segregate the commingled articles. *See* General Note 3(f)(i) and (ii), HTSUS.

[5] In *Customs Headquarters Ruling H307154 of February 7, 2020*, which was issued with respect to the products which are not the subject of this action – and which CBP has conceded was incorrectly decided – Customs said "mixtures of frozen fruits is mere commingling of frozen fruits classifiable in chapter 8, HTSUS. Such commingling does not render the product a food preparation. CBP got this analysis precisely wrong. Because the combined frozen fruits constitute a food preparation of subheading 2106.90.98, HTSUS. General Note 3(f)(v) to the HTSUS prohibits considering them as "commingled" goods.

[6] That subheading 2106.90.98 does not make specific reference to "fruits" or "frozen fruits" does not matter. The rule of "relative specificity" in GRI 3(a) only applies in cases where a product is *prima facie* described in two or more provisions of the tariff. That is not the case here, as defendant is able to point to no provision in HTSUS Chapter 8 which would cover the fruit mixtures at bar.

Undersigned counsel stand ready to provide any additional information or briefing which the Court may require relative to this issue.

Respectfully submitted,


/s/ John M. Peterson
John M. Peterson
Patrick B. Klein