Slip. Op. No. 23-82

# UNITED STATES COURT OF INTERNATIONAL TRADE

NATURE'S TOUCH FROZEN FOODS
(WEST) INC.,

<em>Plaintiff,</em>

v.

UNITED STATES,

<em>Defendant.</em>

Before: Stephen Alexander Vaden,
Judge

Court No. 1:20-cv-00131

## <u>OPINION</u>

Granting in-part and denying in-part Defendant's Cross-Motion for Summary Judgment and denying Plaintiff's Motion for Summary Judgment.

Dated: May 26, 2023

*John M. Peterson,* Neville Peterson LLP, of New York, NY for Plaintiff. With him on the brief were *Richard F. O'Neill* and *Patrick B. Klein.*

*Jamie L. Shookman*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant United States. With her on the brief were *Justin R. Miller*, Attorney-in-Charge, International Trade Field Office; *Brian M. Boynton*, Principal Deputy Assistant Attorney General; and *Patricia M. McCarthy*, Director, Commercial Litigation Branch. Of counsel on the brief was *Fariha B. Kabir*, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection.

**Vaden, Judge:** Plaintiff Nature's Touch Frozen Foods (West) Inc. (Plaintiff or Nature's Touch) brought this action contesting U.S. Customs and Border Protection's (Customs) tariff classification of the subject merchandise, which are mixtures of frozen fruit, some of which contain frozen vegetable ingredients. In cross-

motions for summary judgment, Nature's Touch argues that the merchandise should be classified under Harmonized Tariff Schedule of the United States (HTSUS) subheading 2106.90.98 as "[f]ood preparations not otherwise specified or included: Other: Other; Other; Other; Other; Other," while the United States (Defendant or the Government) argues for classification under various eight-digit provisions within HTSUS heading 0811 as "Fruit . . . frozen[.]"  For the reasons stated below, Nature's Touch's Motion for Summary Judgment is **DENIED** and the Government's Cross-Motion for Summary Judgment is **GRANTED IN-PART**.

**BACKGROUND**

**I.    Procedural Background**

This case concerns various frozen fruit mixture products that Nature's Touch imported into the United States from Canada between June 6, 2018, and November 21, 2018.  Summons at 3–4, ECF No. 1.  At liquidation, Customs classified the subject merchandise under heading 0811, HTSUS, which covers "Fruit and nuts, uncooked or cooked by steaming or boiling in water, frozen, whether or not containing added sugar or other sweetening matter."  0811, HTSUS; Pl.'s Statement of Undisputed Material Facts (Pl.'s Facts) ¶¶ 11–24, ECF No. 28.  Depending on the ingredients of the mixture, Customs classified the merchandise in liquidation under the following HTSUS subheadings:   0811.90.10 ("Bananas and plantains"), 0811.90.20

("Blueberries"), 0811.90.52 ("Mangoes"), and 0811.90.80 ("Other").[1]  Pl.'s Facts ¶¶ 11–

24, ECF No. 28; Def.'s Resp. to Pl.'s Statement of Undisputed Material Facts (Def.'s

Resp. Facts) ¶¶ 11–24, ECF No. 36.  The relevant provisions and duty rates of HTSUS

Chapter 8, which covers "Edible Fruit and Nuts; Peel of Citrus Fruit or Melons," read:

> **0811**: Fruit and nuts, uncooked or cooked by steaming or boiling in water, frozen, whether or not containing added sugar or other sweetening matter:
> **0811.10**: Strawberries: 11.2%
> **0811.20**: Raspberries, blackberries, mulberries…4.5–9%
> **0811.90**: Other:
>> **0811.90.10**: Bananas and plantains: 3.4%
>> **0811.90.20**: Blueberries: Free
>> **0811.90.52**: Mangoes: 10.9%
>> **0811.90.80**: Other: 14.5%

Nature's Touch timely protested on October 30, 2019, claiming that the frozen

fruit mixtures should instead be classified under subheading 2106.90.98, HTSUS, as

"Food preparations not elsewhere specified or included: Other: Other; Other; Other;

Other; Other."  2106.90.98, HTSUS; Summons at 1–2, ECF No. 1.  The relevant

---

[1] Although the Government in general argues in support of the HTSUS classifications used by Customs at liquidation, the Government seeks classification under a higher-duty provision than the one used at liquidation for two of Nature's Touch's products.  *See* Def.'s Br. at 23, 28, ECF No. 36.  These are Organic Triple Berry with Kale (liquidated in subheading 0811.90.52 at 10.9%, classification sought in 0811.90.80 at 14.5%) and a single entry of Blueberry Blitz in Entry No. MK8-5346590 (liquidated in subheading 0811.90.20 duty free, classification sought in 0811.90.80 at 14.5%).  The Government notes that "due to the procedural posture of this case," it will not seek to amend its answer to claim any duties owed; but rather it is "advancing the correct classification of [these products] in order to aid the Court in fulfilling its statutory mandate to classify the merchandise at issue under the correct provision of the tariff statute[.]"  *Id.* at 23–24, n.7.

provisions and duty rates of HTSUS Chapter 21, which covers "Miscellaneous Edible

Preparations," read:

> **2106**: Food preparations not elsewhere specified or included:
> > **2106.90**: Other:
> > > Other:
> > > > Other:
> > > > > Other:
> > > > > > Other:
> > > > **2106.90.98**:                              Other…6.4%

Nature's Touch's protest further claimed that the merchandise was eligible for duty-

free treatment under the North American Free Trade Agreement (NAFTA).

Summons at 2, ECF No. 1.

That protest was deemed denied on July 4, 2020, and Nature's Touch filed a

summons and complaint challenging Customs' classification on July 15, 2020. *Id.* at

1–2; Compl., ECF No. 5. Nature's Touch later moved for summary judgment with an

accompanying brief. *See* Pl.'s Memo in Supp. of Its Mot. for Summ. J. (Pl.'s Br.), ECF

No. 28. The Government filed a cross-motion for summary judgment. Def.'s Memo

in Opp'n to Pl.'s Mot. for Summ. J. and in Supp. of Def.'s Cross-Mot. for Summ. J.

(Def.'s Br.), ECF No. 36. Thereafter, Nature's Touch and the Government filed reply

briefs in support of their Motions. *See* Pl.'s Reply Br. in Supp. of Its Mot. for Summ.

J. (Pl.'s Reply), ECF No. 30; Def.'s Reply Memo in Furth. Supp. of Def.'s Cross-Mot.

for Summ. J. (Def.'s Reply), ECF No. 31.

The classification at issue was not the first time Customs had classified

Nature's Touch's mixture products. In a prior ruling, HQ H307154, dated February

7, 2020, Customs classified two such products, one consisting of 25% strawberry, 25% blueberry, 25% blackberry, and 25% raspberry and the other of 34% mango, 33% raspberry, and 33% cherry.  *See* HQ H307154 at 4; *see also* Def.'s Br. at 24, ECF No. 36.  There, Customs determined that both mixtures were described by HTSUS 0811.90.80, as "Fruit . . . frozen: Other: Other" applying HTSUS General Rule of Interpretation 1, which requires that "classification shall be determined according to the terms of the headings[.]"  *See* HQ H307154 at 4; GRI 1, HTSUS.

However, for the merchandise at issue here, Customs changed its position. Rather than classify all of the merchandise as "Fruit . . . frozen: Other: Other," Customs employed an alternative methodology and classified the mixtures into different subheadings depending on the ingredients in each mixture.  *See* Def.'s Br. at 1–2, ECF No. 36; *see also* Def.'s Resp. Facts ¶¶ 11–24, ECF No. 36.  In defending Customs' classification, the Government explained that none of heading 0811's subheadings described mixture products, including subheading 0811.90.80, HTSUS ("Fruit . . . frozen: Other: Other").  *See* Def.'s Br. at 18, 26, ECF No. 36.  The Government instead argues that each mixture should be classified by considering the subheadings that cover the mixture's specific fruit ingredients and choosing the subheading that comes last in numerical order, applying HTSUS General Rule of Interpretation 3(c).[2]  *See id.* at 20–21, 27.  The Government disavowed its prior

---

[2] That methodology still classified certain products into HTSUS 0811.90.80 ("Fruit . . . frozen: Other: Other") because, if a mixture contained an ingredient not enumerated by a

classification methodology and wrote that HQ H307154 "employed an incorrect reasoning" when it determined that frozen fruit mixtures could be classified under HTSUS 0811.90.80 as "Fruit . . . frozen: Other: Other."  Def.'s Br. at 24, ECF No. 36.  Nature's Touch rejected both of these methodologies and instead argues that all the mixtures are described by the terms of 2106.90.98, HTSUS, covering "Food preparations not elsewhere specified or included: Other: Other: Other: Other: Other: Other."  Pl.'s Br. at 2–3, ECF No. 28.

On February 16, 2023, the Court held a status conference and issued an Order requiring the parties to submit supplemental briefing.  *See* Order, ECF No. 42.  The Supplemental Briefing Order asked the parties to address whether all of the merchandise at issue could be classified under 0811.90.80, HTSUS ("Fruit . . . frozen: Other: Other").  The parties filed supplemental briefs in support of their positions, and both Nature's Touch and the Government continue to argue that subheading 0811.90.80, HTSUS, does not describe the mixtures.  *See* Def.'s Supplemental Brief, ECF No. 44; Pl.'s Supplemental Brief, ECF No. 46.

## II.   Description of Subject Merchandise

The following facts are taken from the parties' Statements of Undisputed Material Facts or are otherwise on the record and undisputed.  The subject merchandise consists of fourteen frozen fruit mixture products, five of which also

---

subheading, such as "peaches," then "Other" became the ingredient subheading that came last in numerical order.  *See* Def.'s Br. at 21, ECF No. 36.

contain frozen vegetable ingredients.  Pl.'s Facts ¶¶ 10–24, ECF No. 28; Def.'s Resp.

Facts ¶¶ 10–24, ECF No. 36.   Nature's Touch produces the mixtures by importing

fruits and vegetables from around the world to its Abbotsford, Canada facility, where

they are cleaned, combined, and packaged for export to the United States.  Pl.'s Facts

¶¶ 4–6, ECF No. 28; Def.'s Resp. Facts ¶¶ 4–6, ECF No. 36.  With the exception of

certain blueberries, all of the fruit and vegetables in the subject mixtures arrive at

Nature's Touch's facility already cut and frozen.  Defendant's Statement of Additional

Undisputed Material Facts ¶ 6, ECF No. 36; Plaintiff's Response to Defendant's 56.3

Statement (Pl.'s Resp. to Def.'s 56.3 Statement) ¶ 6, ECF No. 30.  Consumers use the

mixtures for a variety of purposes, such as to make smoothies, sauces, chutneys,

punches, dips, baked goods, and fruit salads; or they may thaw and eat the mixtures

directly.  Pl.'s Facts ¶¶ 34, 45, ECF No. 28; Def.'s Resp. Facts ¶¶ 34, 45, ECF No. 36.

However, "[n]ew applications for the products at issue may be developed based on

customer usage," and Nature's Touch "does not know how a customer will ultimately

use the products at issue."  Pl.'s Resp. to Def.'s 56.3 Statement, ¶¶ 12–13, ECF No.

30.

　　　　The mixtures contain no ingredients other than frozen fruit and vegetables,

and the specific combinations of fruit and vegetables within each product are as

follows:[3]

---

[3] *See* Defendant's Statement of Additional Undisputed Material Facts ¶¶ 3–5, ECF No. 36;
Pl.'s Resp. to Def.'s 56.3 Statement ¶¶ 3–5, ECF No. 30.  Plaintiff's Response accepts

Court No. 1:20-cv-00131                                                      Page 8

All-Fruit Mixtures:

     (1)     Frozen Strawberry/Banana: 52% strawberry, 48% banana

     (2)     Frozen Berry Mix:  22% blueberry, 32% strawberry, 28% blackberry, 18% raspberry

     (3)     Frozen Triple Berry: 34% blueberry, 33% blackberry, 33% raspberry

     (4)     Organic Mixed Berry: 35% strawberry, 25% blackberry, 25% blueberry, 15% raspberry

     (5)     Organic Very Berry Burst:  30% strawberry, 30% blackberry, 30% blueberry, 10% raspberry

     (6)     Organic Strawberry/Blueberry/Mango: 34% strawberry, 33% blueberry, 33% mango

     (7)     Organic Tropical Blend: 34% strawberry, 33% mango, 33% pineapple

     (8)     Antioxidant Blend Frozen:  30% strawberry, 20% cherry, 20% pomegranate, 15% blueberry, 15% raspberry

     (9)     Frozen Medley Mixed Fruit:  35% strawberry, 25% peach, 15% pineapple, 15% mango, 10% grapes

Fruit-and-Vegetable Mixtures:

     (10)    Organic Green Mango Medley:  18% strawberry, 25% banana, 35% mango, 22% kale

     (11)    Organic Tropical Fruit and Greens: 46% pineapple, 37% mango, 8.5% spinach, 8.5% kale

     (12)    Organic Strawberry/Cherry/Kale:  34% strawberry, 33% cherry, 33% kale

     (13)    Organic Triple Berry with Kale: 27% blueberry, 20% blackberry, 23% apple, 15% raspberry, 15% kale

---

Defendant's statement of ingredient proportions for each product and notes that "proportions of products in mixtures are subject to occasional variations." *Id.* ¶¶ 3-4.

(14)   Blueberry Blitz:   40% blueberry, 20% blackberry, 25% apple, 15% butternut squash

## JURISDICTION AND STANDARD OF REVIEW

The parties have not disputed Nature's Touch's fulfillment of the prerequisites for initiating this action.  *See* 28 U.S.C. § 2637(a).  Because Nature's Touch contests Customs' denial of its protests against the tariff classification of its merchandise, jurisdiction is proper pursuant to 28 U.S.C. § 1581(a) ("The Court of International Trade shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest, in whole or in part …").  The Court reviews Customs' denial of Nature's Touch's protest *de novo*.  *See Rheem Metalurgica S/A v. United States*, 951 F. Supp. 241, 246 (CIT 1996), *aff'd*, 160 F.3d 1357 (Fed. Cir. 1998).  Although Customs' decision is presumed correct and "[t]he burden of proving otherwise shall rest upon the party challenging such decision," the Court's "duty is to find the *correct* result."  28 U.S.C. § 2639(a)(1); *Jarvis Clark Co. v. United States*, 733 F.2d 873, 878 (Fed. Cir. 1984) (Wisdom, J.).

Rule 56 of the United States Court of International Trade provides that summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  USCIT Rule 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (interpreting the analogous provision of the Federal Rules

of Civil Procedure).   In a tariff classification dispute, summary judgment is appropriate where "there is no genuine dispute as to the nature of the merchandise and the classification turns on the proper meaning and scope of the relevant tariff provisions." *Deckers Outdoor Corp. v. United States*, 714 F.3d 1363, 1371 (Fed. Cir. 2013) (citing *Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363, 1366 (Fed. Cir. 1998)).   In ascertaining whether a genuine, material issue of fact exists, a Court reviews evidence submitted, in this case from the Statements of Undisputed Material Facts, drawing all inferences against the moving party.  *See Matsushita Elecs. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The movant bears the burden of demonstrating that there exists no genuine issue of material fact that would warrant a trial.  *See, e.g.*, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  At summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986); *see also Ford Motor Co. v. United States*, 157 F.3d 849, 854 (Fed. Cir. 1998).

## DISCUSSION

### I.    Legal Framework for Tariff Classification Under the HTSUS

The HTSUS is organized into headings, each of which contains one or more subheadings.  The headings describe general categories of merchandise, and the subheadings "provide a more particularized segregation of goods within each category." *Orlando Food Corp. v. United States*, 140 F.3d 1437, 1439 (Fed. Cir. 1998).

The Court follows a strict order of operations when deciding HTSUS classification cases, which is set out in the General Rules of Interpretation (GRIs) of the HTSUS. The first task is to classify the merchandise into the correct HTSUS heading by construing the language of the headings. *Id.* at 1440. This is done by applying GRI 1, which provides that "classification shall be determined according to the terms of the headings and any relative section or chapter notes." GRI 1, HTSUS. A product is classifiable under GRI 1 if it "is described in whole by a single classification heading" of the HTSUS. *La Crosse Tech., Ltd. v. United States*, 723 F.3d 1353, 1358 (Fed. Cir. 2013) (quoting *CamelBak Prods., LLC v. United States*, 649 F.3d 1361, 1364 (Fed. Cir. 2011)). If no heading describes the product in whole, the Court may proceed to GRIs 2 through 5, in order, only proceeding to the next GRI if the previous GRI cannot classify the product. *See Mita Copystar Am. v. United States*, 160 F.3d 710, 712 (Fed. Cir. 1998); *Wilton Indus. v. United States*, 741 F.3d 1263, 1266 (Fed. Cir. 2013). "[I]f the proper heading can be determined under GRI 1, the court is not to look to the subsequent GRIs." *R.T. Foods, Inc. v. United States*, 757 F.3d 1349, 1353 (Fed. Cir. 2014).

GRI 2 provides that the classification of "goods consisting of more than one material or substance" shall be according to the principles of GRI 3. GRI 2, HTSUS. Under GRI 3(a), goods are classified into "[t]he heading which provides the most specific description"; but if multiple headings "each refer to part only of the materials or substances contained in [a mixed good]," they are regarded as equally specific and

the Court moves to GRI 3(b) by classifying the good according to the material that gives the good its "essential character." GRI 3, HTSUS. If no essential character can be found, then the good is classified pursuant to GRI 3(c), "under the heading which occurs last in numerical order among those which equally merit consideration." *Id.* After using the GRIs to determine the correct heading, the Court determines the correct HTSUS subheading using GRI 6, which directs that GRIs 1 through 5 be re-applied at the subheading level. GRI 6, HTSUS. "Only after determining that a product is classifiable under the heading should the court look to the subheadings to find the correct classification for the merchandise." *Orlando Food*, 140 F.3d at 1440.

"Absent contrary legislative intent, HTSUS terms are to be construed according to their common and commercial meanings, which are presumed to be the same." *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999). The common meaning of a tariff term is a question of law to be decided by the Court. *E.M. Chems. v. United States*, 920 F.2d 910, 912 (Fed. Cir. 1990) (citing *Stewart-Warner Corp. v. United States*, 748 F.2d 663, 664–65 (Fed. Cir. 1984)). When a tariff term is not clearly defined, the Court "may consult lexicographic and scientific authorities, dictionaries, and other reliable information" or may rely on its "own understanding of the terms used." *Baxter Healthcare Corp. v. United States*, 182 F.3d 1333, 1337–38 (Fed. Cir. 1999). The Court may also consult the Explanatory Notes for the Harmonized Commodity Description and Coding System, which are maintained by the World Customs Organization. Although not legally binding, the Explanatory

Notes "are generally indicative of the proper interpretation of a tariff provision." *Degussa Corp. v. United States*, 508 F.3d 1044, 1047 (Fed. Cir. 2007) (citing *Motorola Inc. v. United States*, 436 F.3d 1357, 1361 (Fed. Cir. 2006)).

## II.    Classification of the Subject Merchandise

### A.    Summary

The nine all-fruit mixtures are properly classified into heading 0811, HTSUS pursuant to GRI 1 because the term "Fruit . . . frozen" describes these products in whole. The common meaning of "fruit" includes mixed fruit — as in the phrase "a bowl of fruit" — so that it is unnecessary for the heading to enumerate fruit mixtures in order to cover them. Nature's Touch's arguments to the contrary are improper because they require inferring from the lack of a *subheading* enumerating mixtures within 0811 that the *heading* does not cover mixtures, in violation of binding precedent that subheadings may not be considered until after the proper heading is chosen.

However, the term "Fruit . . . frozen" does not describe the five mixtures that contain vegetable ingredients because these products contain features substantially in excess of those within the common meaning of the term. This requires the Court to consider whether Nature's Touch's preferred heading, 2106, HTSUS ("Food preparations not otherwise specified or included") describes the fruit-and-vegetable mixtures pursuant to GRI 1. The Court concludes that it does not. It first finds that food preparations must undergo processing additional to what is already inherent to

the term "food" to avoid rendering "preparations" mere surplusage.  The Court then considers whether cutting, freezing, and combining fruits and vegetables is sufficient to turn these ingredients into food preparations.   It holds that these steps are insufficient because the Explanatory Note to heading 2106, HTSUS operates to exclude mixtures of cut fruits and vegetables from the heading if they are consumed as such and because both case law and the structure of the HTSUS distinguish between freezing and preparation.  Having eliminated the candidate GRI 1 headings, the Court instead classifies the fruit-and-vegetable mixtures into heading 0811 under GRI 3(b) because it finds that the fruit content predominates and supplies the essential character of these mixtures.

Finally, all of the subject mixtures are properly classified into the basket subheading 0811.90.80, "Other," pursuant to GRI 1.  The Court rejects the arguments of both parties that the subheading excludes mixtures because it does not explicitly enumerate them and instead finds that the plain meaning of "Other" describes products, including the subject merchandise, that cannot be described in whole by the terms of the other subheadings within the proper heading.   In seeking to require that basket subheadings specifically enumerate mixtures in order to include them, the Government adopts an interpretive method at odds with both the plain meaning of "Other" and with its own position that such enumeration is unnecessary for heading 0811 to cover mixtures.  The Court declines the parties' invitation to read exclusions

into tariff provisions that are absent from their text or to apply different interpretive rules when construing subheadings rather than headings.

## B.    Application of the GRIs to Determine the Correct Heading

The threshold issue in this case is whether the merchandise is properly classified in HTSUS heading 0811 as "Fruit . . . frozen," because Nature's Touch's proposed alternative classification, HTSUS heading 2106, is a basket provision that applies to "Food preparations *not elsewhere specified or included*."  2106, HTSUS (emphasis added).  Classification of imported merchandise in a basket provision, like 2106, "is only appropriate if there is no tariff category that covers the merchandise more specifically."  *R.T. Foods,* 757 F.3d at 1354 (quoting *Rollerblade, Inc. v. United States*, 116 F. Supp. 2d 1247, 1251 (CIT 2000), *aff'd*, 282 F.3d 1349 (Fed. Cir. 2002)).  Therefore, the Court first will apply GRI 1 to determine whether the merchandise can be classified as "Fruit . . . frozen" under heading 0811.  The Court considers the nine all-fruit mixtures separately from the five fruit-and-vegetable mixtures.

### 1.    The All-Fruit Mixtures

Under GRI 1, the Court first asks whether the nine all-fruit mixtures are "described in whole" by the terms of heading 0811 — that is, whether they are "Fruit . . . frozen[.]"  *CamelBak Prods.*, 649 F.3d at 1364; *see* 0811, HTSUS.  Nature's Touch claims that they are not because the term "fruit," as used in the heading, should be read to refer only to individual types of fruit and to exclude mixed fruits.  *See* Pl.'s Br. at 12, ECF No. 28.  Nature's Touch concedes that heading 0811, taken by itself, could

potentially classify the mixtures.  Oral Arg. Tr. 17:18–19, ECF No. 39 (Peterson: "I mean, we concede that 0811 is potentially applicable to our product.").  However, Nature's Touch claims that the heading should be construed in light of its subheadings, which do not specifically provide for mixtures and list only individual types of fruit, such as "Blueberries" or "Mangoes."  *See* Pl.'s Br. at 11–12, ECF No. 28; *see also* Oral Arg. Tr. 7:4–8, ECF No. 39 (Peterson: "[I]f you look at heading 0811, you will see that they provide for fruits.  And they provide in various eight-digit subheadings for individually named fruit.  At no point does that provision contain a mixtures provision.").  Nature's Touch contrasts this with other HTSUS headings and subheadings that expressly cover "mixtures" and infers that the omission of the term "mixtures" from heading 0811 and its subheadings must be read as intentional.  *See* Pl.'s Br. at 13–14, ECF No. 28.  For example, Nature's Touch cites several subheadings in Chapter 7 HTSUS that specifically provide for vegetable mixtures.  *See Id.* at 13 (noting, among others, subheading 0710.90 providing for "[m]ixtures of vegetables.").  Nature's Touch therefore concludes that, "[w]here the HTSUS intends to include mixtures of frozen food in tariff classifications, the plain language of the headings clearly provides for mixtures" and that "frozen fruit mixtures do not meet the plain language requirements for classification in Heading 0811, HTSUS."  *Id*. at 12-13.

The Government, however, argues that heading 0811 is an *eo nomine* provision
— that is, one that "describes the merchandise by name, not by use."[4] *Carl Zeiss,* 195
F.3d at 1379. Under well-established case law, *eo nomine* provisions are interpreted
to "include[] all forms of the named article, even improved forms," and as long as the
product does not "possess features substantially in excess of those within the common
meaning of the term," it will be covered by the provision that names it. *CamelBak
Prods.*, 649 F.3d at 1364–65 (citing *Casio, Inc. v. United States*, 73 F.3d 1095, 1098
(Fed. Cir. 1996)) (internal quotation marks omitted). The Government notes that the
common meaning of the term "fruit" includes mixtures of different fruits, as in the
phrase "a bowl of fruit." Def.'s Br. at 13, ECF No. 36. The Government therefore
concludes that the term "Fruit . . . frozen" describes the all-fruit mixtures in whole.

The Government is correct. Heading 0811 is an *eo nomine* provision that
describes frozen fruit by name and includes mixtures of frozen fruit. Although the
term "fruit" is not discussed in either the HTSUS chapter notes or the Explanatory
Notes, the common meaning of the term "fruit" embraces mixed fruits and does not
imply a limitation to individual types of fruit. That fact should be plain to anyone

---

[4] Nature's Touch's briefs do not dispute that heading 0811 is an *eo nomine* provision. *See,
e.g.*, Pl.'s Resp. at 8, ECF No. 30 (arguing that "[a]n *eo nomine* tariff classification does not
embrace mixtures."). At oral argument, Nature's Touch abandoned this posture and
attempted to argue that the term "fruit" in heading 0811 was not an *eo nomine* term but
rather a "general description term." Oral Arg. Tr. 14:14–15, ECF No. 39. Because Nature's
Touch failed to raise this issue in its briefs, the argument is forfeited. *See McIntosh v.
Department of Defense*, 53 F.4th 630, 641 (Fed. Cir. 2022). Were it not forfeited, the Court,
as stated above, confirms the provision is an *eo nomine* term.

who has kept a "bowl of fruit" in their kitchen, ordered a "fruit plate" in a restaurant, or navigated to the "frozen fruit" aisle in a grocery store and selected one of Nature's Touch's mixtures. Dictionary definitions of "fruit" confirm that the term has a plural meaning that denotes, roughly, "fruits in general." *See, e.g.*, *Fruit, Oxford English Dictionary* (2d ed. 1989) ("Vegetable products in general, that are fit to be used as food by men and animals."); *Fruit,* CollinsDictionary.com, https://www.collinsdictionary.com/us/dictionary/english/fruit (last visited May 8, 2023) (noting that "[t]he plural form is usually fruit, but can also be fruits"); *Fruit*, *American Heritage Dictionary* (3d ed. 1996) (plural "fruit or fruits"); *Fruit, Webster's New International Dictionary* (2d ed. 1956) ("Collectively, a dish, a selection, a diet, of fruits"). The Court concludes that the common meaning of the term "fruit," as used in heading 0811, refers generally to fruit of all kinds and is not limited to individual fruit. It therefore includes mixed fruit.

Nature's Touch's method of construing the language of the heading in light of its subheadings impermissibly scrambles the order of operations for tariff classification. The Court must determine the correct heading "without reference to [its] subheadings . . . ." *R.T. Foods*, 757 F.3d at 1353; *see also Orlando Food*, 140 F.3d at 1440 ("Only after determining that a product is classifiable under the heading should the court look to the subheadings to find the correct classification for the merchandise."). Once the correct heading has been determined, the Court continues its analysis by choosing a subheading contained within that heading. It may not hop

out of the heading and restart the process because it believes the available subheadings are inadequate, as Nature's Touch suggests. *See* Oral Arg. Tr. 22:22–23:2, ECF No. 39 (Peterson: "Now, let's say we've gone through 0811.  There is no provision in there prescribing a rate of duty for mixtures of frozen fruit . . . you are commanded by [GRI 1] to see if there is any other way, any other provision that classifies these goods at the GRI 1 level.").  Rather, "[o]nce the Court chooses the proper heading, the Court is limited to choosing a subheading only from within the proper heading, i.e., the subheadings appearing under other headings become irrelevant for the classification of the merchandise at issue." *Witex, U.S.A., Inc. v. United States*, 353 F. Supp. 2d 1310, 1315-16 (CIT 2004).

Nature's Touch argues that, unless the plain language of the heading specifically provides for mixtures, the heading cannot cover them.  Pl.'s Br. at 13, ECF No. 28.  This interpretive method requires ignoring binding precedent that headings must be chosen without any reference to subheadings.  To take Nature's Touch's own example, subheading 0710.90, providing for frozen mixed vegetables, is contained within heading 0710, which itself makes no mention of mixtures and provides only for "Vegetables . . . frozen."  0710, HTSUS.   They are organized in the HTSUS as:

> **0710**: Vegetables (uncooked or cooked by steaming or boiling in water), frozen:
>> **0710.90**: Mixtures of vegetables

Because the subheading cannot inform the interpretation of the heading, a frozen mixed vegetable product could only be properly classified in heading 0710 if it is

interpreted to include mixtures despite its text not expressly providing for them.
Nature's Touch is therefore incorrect when it states that "[w]here the HTSUS intends
to include mixtures of frozen food in tariff classifications, the plain language of the
headings clearly provides for mixtures."  Pl.'s Br. at 13, ECF No. 28.  Rather, as the
Government correctly argues, "a broad *eo nomine* term can cover mixtures, even if
not explicitly stated in the text."  Def.'s Br. at 16, ECF No. 36.

Nature's Touch contends that an *eo nomine* provision cannot be expanded "to
include something mixed or joined with the named article, which is not that named
article," noting that an *eo nomine* provision for strawberries will include all forms of
strawberries but not a mixture of strawberries and blueberries.  Pl.'s Reply at 8, 9,
ECF No. 30.  This argument is unavailing where all of the articles are themselves
frozen fruit.  A mixture of frozen strawberries and frozen blueberries does not
"possess features substantially in excess of those within the common meaning" of the
terms of heading 0811 — it is frozen fruit.  *Casio,* 73 F.3d at 1098 (quoting *United
Carr Fastener Corp. v. United States*, 54 CCPA 89, 91 (1967)) (internal quotation
marks omitted).  Because the nine all-fruit frozen mixture products are described in
whole by the term "Fruit . . . frozen," they are classified in heading 0811 by operation
of GRI 1.

### 2.      The Fruit-and-Vegetable Mixtures

### (a)   Application of GRI 1

The Court next must determine whether the remaining five mixture products, which contain both fruit and vegetable ingredients, are described in whole by the term "Fruit . . . frozen[.]"  Pl.'s Facts ¶¶ 11–24, ECF No. 28; Def.'s Resp. Facts ¶¶ 11–24, ECF No. 36.  The Court finds that they are not; therefore, GRI 1 cannot classify them into heading 0811.  The Court is mindful that a product may contain materials that are not named by an *eo nomine* provision and still be classified into that provision under GRI 1 as long as those materials do not trigger a "change in identity" of the product.  *CamelBak Prods.*, 649 F.3d at 1365.  To determine whether a change in identity has occurred, the Court asks whether the product contains features substantially in excess of those within the common meaning of the term "Fruit . . . frozen."  *See Casio*, 73 F.3d at 1098.  The Court may look to a variety of factors, including commercial factors such as the marketing of the product in question.  *See CamelBak Prods.*, 649 F.3d at 1369 (finding that the products contained features substantially in excess of "backpacks," in part, because they "are commercially known, advertised and sold as 'hydration packs.'").

Here, the Court finds that the fruit-and-vegetable mixtures contain features substantially in excess of frozen fruit.  In addition to comprising between 15% and 33% of the mixtures' total content by weight, the vegetable content of these mixtures forms a significant part of the products' commercial identity.  Nature's Touch

references the vegetable ingredients in the names of four of the five products and prominently features vegetables on the packaging of at least four of those products. Pl.'s Facts ¶¶ 14, 16, 19, 21, ECF No. 28; Def.'s Resp. Facts ¶¶ 14, 16, 19, 21, ECF No. 36 (referencing product names "Organic Green Mango Medley," "Organic Tropical Fruit and Greens," "Organic Strawberry/Cherry/Kale," and "Organic Triple Berry with Kale");[5] Pl.'s Br. at Ex. D, ECF No. 28 (depicting the retail packaging for all products except "Organic Tropical Fruit and Greens").[6] The vegetable ingredients are therefore substantially in excess of frozen fruit, and the mixtures are not classifiable through GRI 1 into an *eo nomine* provision for "Fruit . . . frozen[.]"

At this point, the Government argues that the fruit-and-vegetable mixtures should be classified as "Fruit . . . frozen" using a GRI 3(b) essential character analysis. *See* Def.'s Br. at 25–26, ECF No. 36. But GRI 3 may only be reached if the terms of all available headings do not describe the product, eliminating all GRI 1 possibilities. *See Mita Copystar*, 160 F.3d at 712 ("As GRI 1 expressly provides, the other GRI provisions may be consulted only if the headings and notes 'do not otherwise require'

---

[5] Plaintiff and Defendant both reference a "Blueberry Blitz" product containing 15% butternut squash, a vegetable ingredient. Pl.'s Facts ¶ 15, ECF No. 28; Def.'s Resp. Facts ¶ 15, ECF No. 36. Although the vegetable content is not referenced in the name of the product, the Court nonetheless finds that this content is prominently displayed in the product's marketing and is significant enough to render the ingredients substantially in excess of fruit. *See* Pl.'s Br. at Ex. D, ECF No. 28 (demonstrating that butternut squash is featured on the product's packaging).

[6] At oral argument, the parties stipulated that Exhibit D was an accurate reflection of the products' retail packaging. Oral Arg. Tr. 5:16–6:2, ECF No. 39; s*ee also* Def.'s Resp. Facts ¶ 7, ECF No. 36 (accepting same).

a particular classification.") (quoting GRI 1, HTSUS).  The Court must therefore ask whether these mixtures are described by the terms of heading 2106, "Food preparations not otherwise specified or included."  2106, HTSUS.  The Court holds that they are not.

Because it is undisputed that the mixtures at issue are "food," the Court's inquiry turns on the meaning of "preparations" as used in heading 2106.  "The term 'preparation' is not defined in the HTSUS or the General Rules of Interpretation." *BASF Corp. v. United States*, 29 C.I.T. 681, 691 (2005).  The Federal Circuit has found that "[i]nherent in the term 'preparation' is the notion that the object involved is destined for a specific use."  *Orlando Food*, 140 F.3d at 1441 (citing the *Oxford English Dictionary* (2d ed. 1989) definition of "preparation" as "a substance specially prepared, or made up for its appropriate use or application, e.g. as food or medicine, or in the arts or sciences.").  However, for the purposes of the HTSUS, use as food is not, by itself, sufficient to turn a product into a "food preparation."  "Products are not classifiable under heading 2106, HTSUS, merely because they are specifically made for use in food."  *Mondelez Global LLC v. United States*, 253 F. Supp. 3d 1329, 1332 (CIT 2017) (finding that an article must be *both* "food" *and* a "preparation").  For a product to qualify as a "food preparation," it must undergo processing additional to what is already inherent in the term "food," otherwise the term "preparation" would become mere surplusage.  "It is our duty 'to give effect, if possible, to every clause and word of a statute[.]'"  *United States v. Menasche*, 348 U.S. 528, 538–39 (1955) (quoting

*Montclair v. Ramsdell*, 107 U.S. 147, 152 (1883)).   Nature's Touch is therefore incorrect when it argues that the mixtures are food preparations because they are "specially prepared for multiple appropriate uses and applications as food."  Pl.'s Br. at 18, ECF No. 28.   Nature's Touch is also incorrect when it attempts to read "preparation" out of the heading entirely by arguing that "[t]here is no required, minimum or mandated type of 'preparation' required for a product to be classified under heading 2106, HTSUS."  Pl.'s Reply at 14–15, ECF No. 30.  The Court declines to read "food preparation" as "food."

Nature's Touch emphasizes the many processing operations it performs on the mixtures, describing such activities as recipe design, cleaning, sorting, inspection, packaging, and readying for importation and sale as "preparation."  Pl.'s Br. at 5, 19–21, ECF No. 28.  Yet recipe design is product development, not a step to prepare or process food.  *See* Def.'s Br. at 36–37, ECF No. 36.  The other operations are common to all commercial food products, which must necessarily be cleaned, sorted, inspected, packed, and readied for sale.  *See id.* at 34.  Because the Court is compelled to read "preparation" as requiring more than what is already inherent to "food," these steps are insufficient to turn Nature's Touch's mixtures into food preparations.  Rather, fruit and vegetable ingredients undergo three processing steps that turn them into Nature's Touch's unique products:  cutting,[7] freezing, and combining.  *See* Pl.'s Br. at

---

[7] Nature's Touch refers to ingredients being "reduced in size" and offers the example of "chopped pineapples or melons."  Pl.'s Br. at 4, ECF No. 28; *see also* Pl.'s Resp. to Def.'s 56.3

4–5, ECF No. 28; Def.'s Resp. Facts ¶ 5–6, ECF No. 36; *see also* Pl.'s Resp. to Def.'s

56.3 Statement ¶ 5–8, ECF No. 30 (recounting processing steps and agreeing that

"[o]nce frozen, the individual pieces of fruit in the products undergo no further change

in character prior to the products' retail sale."). The Court therefore considers

whether these operations are sufficient to create a "food preparation" within the

meaning of HTSUS heading 2106.

The Government argues that they are not, pointing out that the Explanatory

Note to heading 2106 lists exemplar products that "require significant processing

beyond simply mixing fresh food ingredients." Def.'s Br. at 30, ECF No. 36. Although

the Explanatory Note does not expressly define "preparation," it does list exemplars

of "food preparations" that fall within the heading.[8] *See* Explanatory Note 21.06 –

Food preparations not elsewhere specified or included. The qualities shared by such

exemplar products may be used by courts to derive the meaning of the HTSUS

heading. *See, e.g.*, *Schlumberger Tech. Corp. v. United States*, 845 F.3d 1158, 1165-

_____

Statement ¶ 6, ECF No. 30 (agreeing that "all of the fruit and vegetables in the products at
issue arrive at plaintiff's packaging facility already cut and frozen.").

[8] Explanatory Note 21.06 sets forth two categories of food preparations covered by heading
2106, but neither supplies a definition of the term "preparation." They are:

    (A) Preparations for use, either directly or after processing (such as cooking, dissolving
        or boiling in water, milk, etc.), for human consumption.

    (B) Preparations consisting wholly or partly of foodstuffs, used in the making of
        beverages or food preparations for human consumption. The heading includes
        preparations consisting of mixtures of chemicals (organic acids, calcium salts, etc.)
        with foodstuffs (flour, sugar, milk powder, etc.), for incorporation in food
        preparations either as ingredients or to improve some of their characteristics
        (appearance, keeping qualities, etc.)

66 (Fed. Cir. 2017) (finding that the products listed by the Explanatory Note for a heading covering "ceramic wares" all had "definite forms" and because the granulated bauxite in question "does not have a definite form, it cannot fall within that Heading's terms."). The Government is correct that most of these exemplar products require significant processing, such as "Flavouring powders for making beverages," "Protein hydrolysates consisting mainly of a mixture of amino-acids and sodium chloride," and "Edible tablets with a basis of natural or artificial perfumes." Explanatory Note 21.06 (2), (6), (8). However, certain exemplar products do not indicate on their face whether or not they require significant processing. *See, e.g.*, Explanatory Note 21.06 (5) (listing "Natural honey enriched with bees' royal jelly"). The Court therefore will not attempt a nebulous inquiry into the intensity or significance of the processing a product must undergo to become a food preparation but rather will look to the way the processing steps specific to Nature's Touch's products — cutting, freezing, and combining fruits and vegetables — are treated in the HTSUS, the Explanatory Notes, and case law.

The Explanatory Note to heading 2106 excludes mixtures of cut fruits and vegetables from heading 2106 if they are fit for consumption "as such." Explanatory Note 21.06 (15) describes an exemplar food preparation consisting of:

> Mixtures of plants, parts of plants, seeds or fruit (whole, cut, crushed, ground or powdered) of species falling in different Chapters (e.g. Chapters 7, 9, 11, 12) or of different species falling in heading 12.11, *not consumed as such*, but

> of a kind used either directly for flavouring beverages or for
> preparing extracts for the manufacture of beverages.

Explanatory Note 21.06 (15) (emphasis added).  The Explanatory Note's exclusion of plant or fruit mixtures that can be consumed independently reflects a specific intent to remove products similar to the mixtures at issue from heading 2106.  *See* Pl.'s Resp. to Def.'s 56.3 Statement ¶ 11, ECF No. 30 (agreeing that consumers "eat [the mixtures] directly").  The Court therefore concludes that cutting and combining fruits and vegetables is insufficient to turn these ingredients into a "food preparation."  If it were, the drafters of the Explanatory Notes would not have bothered to insert language prohibiting the application of heading 2106 to such mixtures.

The Court is left to determine whether freezing an otherwise excluded mixture of cut fruits and vegetables turns it into a "food preparation."  The Court is unpersuaded.  Case law and the HTSUS distinguish between "prepared" foods and "frozen" foods.  In *Frosted Fruit Products Co. v. United States*, 18 Cust. Ct. 119 (1947), the Customs Court held that frozen guavas that had been trimmed, cleaned, and packed in boxes "are not 'prepared,' in a tariff sense" and declined to classify them as "guavas prepared or preserved."  *Id.* at 121.  That holding has been repeatedly extended.  *See Interocean Chem. & Minerals Corp. v. United States*, 13 C.I.T. 449, 453 (1989) ("[I]t has been held that freezing, being a temporary preservation[,] is neither a preparation nor a preservation for tariff purposes."); *see also Crawfish Processors Alliance v. United States*, 30 C.I.T. 639, 645 (2006) (noting that "*Frosted Fruit* made

it clear that more is necessary than freezing to make something prepared or preserved."). This is reflected in the structure of the HTSUS. For example, Chapter 20, HTSUS covers "Preparations of vegetables, fruit, nuts or other parts of plants." The chapter excludes fruits and vegetables that have been "prepared or preserved by the processes specified in chapter 7, 8, or 11." Ch. 20, Note 1(a), HTSUS. Chapters 7 and 8 contain frozen fruit and vegetables; therefore, Chapter 20 should exclude them if the HTSUS considers freezing a process to prepare or preserve. Yet Chapter 20 is filled with frozen products — for instance heading 2008, which covers "Other vegetables prepared or preserved otherwise than by vinegar or acetic acid, frozen[.]" 2008, HTSUS. The HTSUS therefore considers whether a product is frozen to be separate from whether it is prepared or preserved. *See R.T. Foods*, 757 F.3d at 1356–57 (making the same observation concerning vegetables of Chapter 7).

Nor do the fruit-and-vegetable mixtures satisfy the test offered by *Orlando Food*, which found that "[i]nherent in the term 'preparation' is the notion that the object involved is destined for a specific use." 140 F.3d at 1441 (classifying tomato sauce base in heading for "sauces and preparations therefor"). The parties' Statements of Undisputed Material Facts, which bind the Court on summary judgment, provide that (1) all of the products at issue "can be used for many purposes" and may be "eat[en] directly," (2) "[n]ew applications for the products at issue may be developed based on customer usage," and (3) Nature's Touch "seeks to provide customers with a wide range of possible end uses for its products" but "does not know

how a customer will ultimately use the products at issue." Pl.'s Resp. to Def.'s 56.3 Statement, ¶¶ 9–13, ECF No. 30. Products that "can be used for many purposes" are not "destined for a specific use." *See Orlando Food*, 140 F.3d at 1441.

The fruit-and-vegetable mixtures therefore cannot be described as "food preparations" within the meaning of the HTSUS, the Explanatory Notes, or case law. Because fruit-and-vegetable mixtures that are consumed as such are excluded from heading 2106 by Explanatory Note 21.06 (15) and because freezing is distinguished from preparation by both the HTSUS and case law, the Court holds that Nature's Touch's mixtures of frozen fruits and vegetables are not "food preparations" within the meaning of heading 2106.

### (b)   Application of GRI 3

Having established that neither of the candidate HTSUS headings describe the fruit-and-vegetable mixtures in whole under GRI 1, the Court moves sequentially to the next applicable General Rule of Interpretation, GRI 3(a), in order to classify the mixtures.[9] GRI 3(a) provides that the heading "which provides the most specific description" shall be preferred over headings providing "a more general description." GRI 3(a), HTSUS. However, when two headings each refer to only part of the materials contained in mixed goods, they are regarded as equally specific under GRI 3(a); and the court must move to a GRI 3(b) essential character analysis to resolve

---

[9] GRI 2(a), which applies to incomplete and unfinished products, is inapplicable. *See* GRI 2(a), HTSUS. GRI 2(b) provides that "[t]he classification of goods consisting of more than one material or substance shall be according to the principles of rule 3." GRI 2(b), HTSUS.

the classification.  GRI 3(a), HTSUS.  In this case, heading 0811 (providing for "Fruit

. . . frozen") and heading 0710 (providing for "Vegetables . . . frozen") each "refer to

part only" of the fruit-and-vegetable mixtures.  GRI 3(a), HTSUS.  The Court will

therefore pick between these two headings by conducting an essential character

analysis under GRI 3(b), which provides that mixtures that cannot be classified by

GRI 3(a) "shall be classified as if they consisted of the material or component which

gives them their essential character, insofar as this criterion is applicable."  GRI 3(b),

HTSUS.

   The Court conducts an essential character analysis by "'isolat[ing] the most

outstanding and distinctive characteristic of the article'" through a fact-based

analysis that "consider[s] the totality of the evidence."  *Structural Indus., Inc. v.*

*United States*, 29 C.I.T. 180, 185 (2005) (quoting *Canadian Vinyl Indus., Inc. v.*

*United States*, 408 F. Supp. 1377, 1378 (Cust. Ct. 1976)).  Put simply, the Court asks

what component "predominate[s]" over the others.  *See La Crosse Tech.* 723 F.3d at

1360.  Because the fruit-and-vegetable mixtures contain between 67% and 85% frozen

fruit ingredients by weight, the Court finds that the fruit ingredients predominate

and impart the essential character of these mixtures.  *See* Pl.'s Resp. to Def.'s 56.3

Statement ¶ 4, ECF No. 30; *see also Home Depot U.S.A., Inc. v. U.S.*, 491 F.3d 1334,

1336 (Fed. Cir. 2007) (quoting Explanatory Note VIII for GRI 3(b), explaining that

essential character may be determined by "the nature of the material or component,

its bulk, quantity, weight or value").  Nature's Touch apparently agrees because it

refers to the fruit-and-vegetable mixtures as "fruit mixtures" in its Statement of Undisputed Material Facts. *See, e.g.*, Pl.'s Facts ¶¶ 14, 15, 19, 21, ECF No. 28. The fruit-and-vegetable mixtures are therefore properly classified into heading 0811 under GRI 3(b).

### C.    Application of the GRIs to Determine the Correct Subheading

With all the merchandise classified into heading 0811, the Court next determines the correct subheading within heading 0811 by reapplying the GRIs sequentially. *See* GRI 6, HTSUS. The Court first applies GRI 1 and asks whether the mixtures are described in whole by the terms of any of the three available six-digit subheadings: 0811.10 ("Strawberries"); 0811.20 ("Raspberries, blackberries, mulberries, loganberries, black, white or red currants and gooseberries (other than kiwi fruit)"); and a basket or residual subheading, 0811.90 ("Other"). Subheading 0811.90, "Other," contains additional eight-digit subheadings that include, among others, 0811.90.10 ("Bananas and plantains"); 0811.90.20 ("Blueberries"); 0811.90.52 ("Mangoes"); and, finally, 0811.90.80 ("Other"). *See supra at* I. The Court applies the GRIs once at the six-digit subheading level and again, separately, at the eight-digit level. *See* GRI 6, HTSUS (providing that "only subheadings at the same level are comparable").

One of the few issues that the parties agree on is that subheadings 0811.90 and 0811.90.80, "Other," do not describe the mixtures under GRI 1. Nature's Touch argues that, "[s]ince the various subheadings of Heading 0811, HTSUS include only

single fruits, 'other' frozen fruits of subheading 0811.90.80, HTSUS, similarly fails to

describe the instant goods . . . this Court should use [*noscitur a sociis*] and examine

the word 'other' in Subheading 0811.90.80, HTSUS, as only encompassing a signal

[*sic*] fruit not previously or specifically mentioned."  Pl.'s Br. at 12–13, ECF No. 28.

The Government largely agrees.  Casting aside Customs' prior contrary ruling in HQ

H307154, the Government now writes that:

> [T]he subheadings of Heading 0811, HTSUS provide for
> individual types of fruit . . . . Whereas certain subheadings
> under other headings in Chapter 8 cover mixtures of fruit
> . . . subheading 0811.90.80, HTSUS simply says 'other'
> without any reference to mixtures, and therefore can be
> read to provide just for individual types of fruit not
> enumerated in the preceding subheadings of 0811.90,
> HTSUS.

Def.'s Br. at 18, ECF No. 36.  The parties therefore agree that, because the

subheadings under heading 0811, HTSUS contain only single fruits, a subheading

providing for "other" fruit must be interpreted to mean other single fruits not

otherwise enumerated and cannot include mixed fruit.

On that basis, the Government believes that the mixtures cannot be classified

into any subheading under GRI 1.  Nor, in the Government's view, can a GRI 3(b)

essential character analysis be performed because "no one ingredient imparts the

essential character of these mixes."  Def.'s Br. at 27, ECF No. 36.  Instead, the

Government currently believes that each mixture product should be classified by

applying GRI 3(c) and choosing the subheading that occurs last in numerical order

among those that equally merit consideration.  *Id.* at 20, 27; *see also* GRI 3(c), HTSUS.

In this case, the Government would classify each mixture into the subheading that

comes last in numerical order among those subheadings that describe individual

types of fruit included in the mixture.  *See* Def.'s Br. at 20, 27, ECF No. 36.

The Court was skeptical of the parties' theories regarding subheadings 0811.90

and 0811.90.80, "Other."  In its Supplemental Briefing Order, the Court asked the

parties to address the fact that many subheadings of heading 0811 contain multiple

fruits.   *See, e.g.,* 0811.20, HTSUS (providing for "Raspberries, blackberries,

mulberries, loganberries, black, white or red currants and gooseberries"); 0811.90.10,

HTSUS ("Bananas and plantains"); 0811.90.25, HTSUS ("Cashew apples, mameyes

colorados, sapodillas, soursops and sweetsops").  The Court noted that these multiple-

fruit subheadings would appear to include mixtures of the named fruits.   For

example, if Nature's Touch imported a mixture of frozen bananas and plantains, that

product would be "described in whole" by the term "Bananas and plantains."  *Cf.*

*CamelBak Prods.*, 649 F.3d at 1364.   The Court therefore questioned why

subheadings 0811.90 and 0811.90.80, "Other," should be interpreted to mean "other

single fruits" and exclude mixtures when the term is surrounded by multiple-fruit

subheadings that include mixtures of those fruits.  *See* Supplemental Briefing Order,

ECF No. 42.

In its supplemental brief, the Government repeated its new litigation position

that the mixtures could not be classified as "Other" because the term "only

encompasses individual types of fruit not enumerated in the subheadings that precede it." Def.'s Supplemental Brief at 2, ECF No. 44. The Government asked that the term "Other" be read "in its context and with a view to its place with the other subheadings of 0811.90," and warned of "unintended consequences" if the term was interpreted to include mixtures. *Id.* at 3, 5. For example, the Government noted that blueberries and cranberries, both of which are duty-free, would become dutiable at 14.5% if imported in a mixture, a result it described, without citation to any authority, as "counterintuitive." *Id.* at 5. The Government instead argued that "Other" should be read to exclude mixtures that contain products enumerated in the other subheadings. Otherwise, mixtures containing ingredients provided for *eo nomine* by other HTSUS provisions would fall into "Other," which, in the Government's view, "is not what we believe the HTSUS drafters intended." *Id.* at 6. Nature's Touch agreed with the Government and denied that the multiple-fruit subheadings suggested that the "Other" subheading could include mixtures. Citing *Standard Chlorine Chem. Co. v. United States*, 13 C.I.T. 198 (1989), Nature's Touch argued that the multiple-fruit subheadings "are not 'mixtures' provisions. They are merely provisions which *eo nomine* describe two or more items." Pl.'s Supplemental Brief at 6, ECF No. 46. On that basis, Nature's Touch concluded that "subheading 0811.90.80, covering 'Other' frozen fruits, covers individual frozen fruits not mention [*sic*] in the eight-digit subheadings which preceded it." *Id.*

These arguments ignore something important:  the plain meaning of "other." *Cf. Carl Zeiss,* 195 F.3d at 1379 ("HTSUS terms are to be construed according to their common and commercial meanings, which are presumed to be the same.").  "Other" means "none of the above."  Under GRI 1 (and GRI 6, for subheadings), if a product is not described in whole by any named subheading, it falls into the residual or basket subheading "Other."  *See, e.g., DMV USA, Inc. v. United States*, 25 C.I.T. 970, 972 (2001) ("In the event that merchandise is not found to be classifiable under a specific subheading, it is then classified as 'other.'"); *Cargill, Inc. v. United States*, 318 F. Supp. 2d 1279, 1290 (CIT 2004) ("Since the merchandise does not fit under a named provision, it must be classified elsewhere, under the basket provision[.]").

Both Nature's Touch and the Government seek to prevent this by reading "Other" narrowly, using canons of construction and concerns about duty rates to defeat the plain meaning.  But canons and duty rates do not control classification — the text of the headings and subheadings do.  *See* GRI 6, HTSUS (providing that "classification shall be determined according to the terms of [the] subheadings.").  Indeed, soon after arguing that it "seems illogical" to tax a mixture at 14.5% when its individual ingredients would be subject to lesser rates if imported alone, the Government concedes that "duty rates apply based on the correct classification" — not the reverse.  Def.'s Supplemental Brief at 5, ECF No. 44.

When interpreting the text of basket subheadings like "Other," the Federal Circuit has ruled that the term should be read *broadly*.  *See Rollerblade, Inc. v. United*

*States*, 282 F.3d 1349, 1354 (Fed. Cir. 2002) (stating that residual subheadings such as "other [sports equipment]" are "'intended as a *broad catch-all* to encompass the classification of articles for which there is not a more specifically applicable subheading'") (quoting *EM Indus. v. United States*, 22 C.I.T. 156, 165 (1998)) (emphasis added). This comports with the structure of the HTSUS, which "is designed so that most classification questions can be answered by GRI 1, so that there would be no need to delve into the less precise inquiries presented by GRI 3." *Telebrands Corp. v. United States*, 36 C.I.T. 1231, 1235 (2012), *aff'd*, 522 Fed. Appx. 915 (Fed. Cir. 2013).[10] Attempts to narrow the meaning of "Other" are therefore inappropriate. It is the proper classification for a product not described in whole by the named subheadings within the correct heading.

Both parties argue that the lack of express language providing for mixtures in the "Other" subheadings should be interpreted to mean that the subheadings cannot cover mixtures under GRI 1. *See* Pl.'s Supplemental Brief at 4, ECF No. 46; Def.'s Br. at 18, ECF No. 36 ("Whereas certain subheadings under other headings in Chapter 8 cover mixtures of fruit . . . subheading 0811.90.80, HTSUS simply says

---

[10] The Government worries that using a basket provision to classify mixtures "would render GRI 3 meaningless." Def.'s Supplemental Brief at 6, ECF No. 44. The Court's recourse to GRI 3 in this very case obviates the Government's fear. *See supra* at II.B.2.b. Regardless, the Court cannot reach the later GRIs if classification under GRI 1 is possible. *See R.T. Foods*, 757 F.3d at 1353 ("If the proper heading can be determined under GRI 1, the court is not to look to the subsequent GRIs."); *see also Telebrands Corp.*, 36 C.I.T. at 1235 n.5 (noting that proposal to require consideration of GRIs 2–6 concurrently with GRI 1 in certain circumstances was rejected by the Harmonized System Committee).

'other' without any reference to mixtures, and therefore can be read to provide just for individual types of fruit not enumerated in the preceding subheadings of 0811.90, HTSUS."). It is surprising that the Government would here require a tariff provision to specifically enumerate mixtures in order to cover them — after all, the Government argued precisely the opposite when it urged the Court to classify mixtures in heading 0811 despite the absence of "mixtures" from its text. *Cf.* Def.'s Br. at 8–9, ECF No. 36 ("Plaintiff argues that Heading 0811, HTSUS does not cover the products at issue because it does not specifically enumerate 'mixtures.' However, this argument contradicts the broad, plain language of the heading . . . ."); *id.* at 16 ("[T]he fact that 'mixtures' of fruit are not explicitly enumerated in Heading 0811, HTSUS is not determinative. Limiting this heading to single types of fruit, when its express language contains no such limitation, would contradict well-settled jurisprudence."). The Government's eagerness to arrive at its now preferred result has led it to demand that subheading 0811.90.80, "Other," be "limit[ed] . . . to single types of fruit, when its express language contains no such limitation" — a startling contradiction. *Id.* Rather than allow the Government to switch between two different interpretive rules at its pleasure, the Court simply adopts the consistent principle that it is improper to infer a mixtures exclusion where none is present in the plain text of heading 0811 or subheading 0811.90.80, "Other."

Regardless of the Government's situational ethics, the structure of heading 0811 forecloses its latest interpretation. Heading 0811 covers "Fruit and *nuts* . . .

frozen." 0811, HTSUS (emphasis added). Because none of the heading's subheadings mention nuts, all frozen nut products, including mixtures of frozen nuts and mixtures of frozen fruit and nuts, must fall under subheading 0811.90.80, "Other." The subheading necessarily embraces mixtures. The Court therefore declines to apply one rule to heading 0811 and another to subheading 0811.90.80 and instead finds that it is unnecessary for either provision to enumerate mixtures in order to cover them.

The Government believes that subheading 0811.90.80, "Other," should be read to exclude products that contain fruits enumerated by heading 0811's other subheadings, writing without citation to authority that "classification of a mix of blueberries and cranberries under the provision for 'Other,' meaning in part, 'other than blueberries and cranberries,' seems illogical." Def.'s Supplemental Brief at 5, ECF No. 44. Yet that was the logic of the Federal Circuit in *R.T. Foods*. There, the court affirmed the Government's classification of a tempura vegetable mixture consisting, among other ingredients, of "three pieces of carrot, three pieces of wing bean [and] three pieces of long or green bean" into heading 2004, HTSUS, covering "Other vegetables prepared or preserved otherwise than by vinegar or acetic acid, frozen[.]" *R.T. Foods*, 757 F.3d at 1351. This heading is itself a broad "Other" provision that does not enumerate mixtures. The court then classified the product into six-digit subheading 2004.90, covering "Other vegetables and mixtures of vegetables." The court finally had to choose an eight-digit subheading, picking

between 2004.90.10 ("Antipasto"), 2004.90.80 ("Beans"), and 2004.90.85 ("Other").

The Government argued for "Other," and the court agreed even though the

merchandise at issue contained beans. *See id.* at 1351, 1357. The Federal Circuit did

not read "Other" narrowly to mean "products containing no antipasto or beans." Nor

did it resort to GRI 3. Instead, it asked whether the terms "antipasto" or "beans"

described the product. "[B]ecause the subject merchandise is not 'antipasto' or

'beans,' it is properly classified under subheading 2004.90.85[.]"[11]  *Id.* at 1357. A

mixture product may therefore be classified into a residual or basket subheading even

if it contains ingredients enumerated by other subheadings within the proper

heading.

The Government's sole substantive case citation, *Pillowtex Corp. v. United

States*, 171 F.3d 1370 (Fed. Cir. 1999) supports, rather than contradicts, the principle

that a mixture product may be classified into a basket subheading even if it contains

materials enumerated by other subheadings within the proper heading. In *Pillowtex*,

the court classified comforters consisting of down filling in a cotton shell. *Id.* at 1372.

The dispute centered around whether the cotton and down comforters were

---

[11] It is true that, in *R.T. Foods*, the residual subheading at issue, 2004.90.85, "Other,"
contained a ten-digit statistical subheading at 2004.90.85.95 providing for "Other, including
mixtures." Of course, so does the residual subheading at issue in this case. *See*
0811.90.80.85, HTSUS (providing for "Frozen mixes only of combinations of strawberries,
blueberries, red raspberries or blackberries."). Because the ten-digit statistical subheadings
are not part of the statutory language of the HTSUS, the Court will consider neither the
statistical subheading involved in *R.T. Foods* nor the statistical subheading present in this
case. *Cf. Chemtall, Inc. v. United States*, 878 F.3d 1012, 1026 (Fed. Cir. 2017) (establishing
that "[t]he tenth-digit statistical suffixes . . . are not statutory.").

classifiable in a subheading for bedding articles "Of cotton" or, alternatively, a subheading for "Other" bedding articles. *Id.* at 1375. In its GRI 1 analysis, the court struggled to determine how much cotton an article needed to contain before it could be described as "of cotton," and concluded that the language of the heading, subheading, and Explanatory Notes did not "provide any insight into the meaning of the term 'of cotton' as it relates to comforters." *Id.* at 1374. The court concluded that *both* "Of cotton" and "Other" described the goods *prima facie*: "The cotton outer shell part of the subject comforters allow the comforters to fall under ['Of cotton'], whereas the down filling part of the subject comforters allow them to fall under ['Other']." *Id.* at 1375–76. The court broke the tie by conducting an essential character analysis under GRI 3(b) and classified the product into "Other" on the basis of its down filling. *Id.* at 1376.

Here, there is no interpretive difficulty under GRI 1 where multiple subheadings describe the goods. The named subheadings under heading 0811 do not say, for example, "of strawberries," "containing strawberries," or "made from strawberries." They simply say "Strawberries," classifying products that can be described, in whole, as strawberries. *See CamelBak Prods.*, 649 F.3d at 1364 ("We apply GRI 1 as a substantive rule of interpretation, such that when an imported article is described in whole by a single classification heading or subheading, then that single classification applies, and the succeeding GRIs are inoperative."). Mixture products containing strawberries cannot be classified under an *eo nomine* subheading

for "Strawberries" because "'when an article "is in character or function something other than as described by a specific statutory provision — either more limited or more diversified — and the difference is significant," it is not properly classified within an *eo nomine* provision.'" *R.T. Foods*, 757 F.3d at 1354 (quoting *CamelBak Prods.*, 649 F.3d at 1365) (citation omitted).  In the absence of a need for any inquiry into the proportion of strawberries a product must contain before it can be classified as "Strawberries," the Court is left with "Other" as the only subheading that describes the products — which *Pillowtex* affirms it does when it determined that down and cotton comforters could be described by "Other" even though the comforters contained cotton.  *See Pillowtex*, 171 F.3d at 1375.

The Court will follow the same procedure the Federal Circuit employed in *R.T. Foods* and that Customs followed in its prior ruling, HQ H307154.  At the six-digit level, the Court asks if any of the mixtures are described in whole by the term "Strawberries" and concludes that they are not, ruling out 0811.10.  It similarly concludes that none of the mixtures are described in whole by the term "Raspberries, blackberries, mulberries, loganberries, black, white or red currants and gooseberries (other than kiwi fruit)," ruling out 0811.20.  Subheading 0811.90, "Other," describes all of the mixtures because they are not described in whole by the terms of any other six-digit subheading within the correct heading, 0811.  The Court then re-applies GRI 1 at the eight-digit subheading level.  It similarly finds that, because the mixtures are not described in whole by the terms of any of the eight-digit subheadings that

enumerate fruits, they fall into the residual subheading 0811.90.80, "Other," dutiable at 14.5% *ad valorem*.

Although this produces the same result that the Government sought for five of the mixture products (Antioxidant Blend Frozen, Frozen Medley Mixed Fruit, Blueberry Blitz, Organic Strawberry/Cherry/Kale, and Organic Triple Berry with Kale), for the other nine products this classification results in a higher duty rate than the Government seeks. The Court is required to classify the merchandise into the correct HTSUS provision independent of the parties' arguments and the Government's prior classification. *See Jarvis Clark*, 733 F.2d at 878 (holding that "the court's duty is to find the *correct* result, by whatever procedure is best suited to the case at hand") (emphasis in original). However, because the Government makes no claim for additional duties as to these nine products, this Court will not order reliquidation and grant the Government relief it did not seek. *See* Answer, ECF No. 15. Nature's Touch is therefore not required to pay the difference in duties that results from the Court's reclassification of the nine products for which the Government did not seek classification into 0811.90.80, HTSUS. *See Mitsubishi Intern. Corp. v. United States*, 22 C.I.T. 324, 357 (1998) (finding that, because the Government did not request as a remedy that Customs reliquidate entries into the correct subheading, "plaintiff is not required to pay the difference in duties as a result of the reclassification[.]"), *aff'd*, 182 F.3d 884 (Fed. Cir. 1999); *see also* Def.'s Br. at 23

n.7, ECF No. 36 (conceding the necessity of counterclaims for collection of excess duties from Nature's Touch).

Accordingly, though the Court differs with the Government's legal rationale, the Court **GRANTS IN-PART** the Government's Motion as to the classification of Antioxidant Blend Frozen, Frozen Medley Mixed Fruit, Blueberry Blitz, Organic Strawberry/Cherry/Kale, and Organic Triple Berry with Kale and **DENIES IN-PART** the Government's Motion as to the classification of the remaining nine products and orders Customs to reclassify all of the products into 0811.90.80, HTSUS. Nature's Touch's Motion is **DENIED**.

### D.     Eligibility for Duty-Free Treatment under NAFTA

The parties do not dispute that the North American Free Trade Agreement (NAFTA) was in force at the time the subject merchandise was imported.  *See* Pl.'s Br. at 23 n.13, ECF No. 28; Def.'s Br. at 38, ECF No. 36.  Under the United States' tariff laws, products that "'originate in the territory of a NAFTA party' are entitled to preferential duty treatment." *Cummins Inc. v. United States*, 454 F.3d 1361, 1361–62 (Fed. Cir. 2006) (quoting General Note 12(a)(ii), HTSUS).  One way that a product may so originate is if it is transformed in the territory of a NAFTA party, and one manner of transformation is undergoing a shift in tariff classification as specifically provided for in General Note 12 of the HTSUS.  Nature's Touch argues that its merchandise qualifies for duty-free treatment under NAFTA because the products originate in Canada.  Specifically, Nature's Touch invokes the so-called tariff-shift

rule by claiming that the imported ingredients "undergo a change from Chapter 8, HTSUS, classifications to Heading 2106, HTSUS" when they are mixed at Nature's Touch's Canadian facility.  Pl.'s Br. at 24, ECF No. 28.  Because the Court finds that no shift into heading 2106 from another HTSUS chapter occurs, Nature's Touch's arguments concerning duty-free treatment under NAFTA are meritless.

## CONCLUSION

Although the purpose of the tariff schedules is to implement the nation's customs regime, the tax rates specified therein do not govern the tariff schedules' interpretation — their text and the ordered rules established in the General Rules of Interpretation do.  To find fully in favor of either the Government or Nature's Touch would require the Court to discard these principles of interpretation and to disregard Federal Circuit precedent so as to engage in a results-oriented inquiry.  This the Court cannot do.  In consideration of the foregoing, the Court **GRANTS IN-PART** and **DENIES IN-PART** the Government's Cross-Motion for Summary Judgment; **DENIES** Nature's Touch's Motion for Summary Judgment; and holds that the subject merchandise is properly classified in 0811.90.80, HTSUS, dutiable at 14.5% *ad valorem*.  Judgment is entered ordering Customs to reclassify *all* the merchandise but to reliquidate *only* the following products:  Antioxidant Blend Frozen, Frozen Medley Mixed Fruit, Blueberry Blitz, Organic Strawberry/Cherry/Kale, and Organic Triple Berry with Kale.  Such reliquidation shall also *not* include entries of Organic Triple Berry with Kale originally liquidated in subheading 0811.90.52 at 10.9% and

Court No. 1:20-cv-00131                                                    Page 45

the single entry of Blueberry Blitz at Entry No. MK8-5346590 that was liquidated in

subheading 0811.90.20 duty free, for which the Government does not claim duties

owed.  *See* Def.'s Br. at 23, 29, ECF No. 36.  No other products shall be reliquidated,

as the Government has made no claim for excess duties that would result from their

proper reclassification into 0811.90.80, HTSUS.


                                              /s/ **Stephen Alexander Vaden**
                                                        Judge

Dated: May 26, 2023
          New York, New York